**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ ) | | |
| INTERNATIONAL BROTHERHOOD ) | Case No.: _____ | |
| OF TEAMSTERS, AIRLINE ) | | |
| DIVISION, ) | | |
| 25 Louisiana Avenue NW ) | | |
| Washington, DC 20001 ) | Hon. _____ | |
| ) | | |
| and ) | | |
| ) | | |
| AIRLINE PROFESSIONALS ASSOC. ) | | |
| OF THE INTERNATIONAL ) | | |
| BROTHERHOOD OF TEAMSTERS, ) | | |
| LOCAL UNION NO. 1224 ) | | |
| 2754 Old State Route 73 ) | | |
| Wilmington, OH 45177 ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ATLAS AIR, INC. ) | | |
| 2000 Westchester Avenue ) | | |
| Purchase, NY 10577-2543 ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

**PLAINTIFFS' COMPLAINT AND PETITION
TO VACATE ARBITRATION AWARD**

Plaintiffs International Brotherhood of Teamsters, Airline Division ("IBT") and Airline

Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224

("Local 1224") (collectively, "Plaintiffs" or the "Union"), bring this action against Defendant

Atlas Air, Inc. ("Defendant" or "Atlas Air") pursuant to Section 3 First (q) of the Railway Labor

Act ("RLA"), 45 U.S.C. § 151, *et seq*., to review and set aside an arbitration award ("Decision" or

"Award") issued on August 26, 2019. The Award is invalid and unenforceable because it fails to comply with the requirements of the RLA, deprives the Union and those it represents of their rights under the McCaskill-Bond Amendment, fails to conform, or confine itself, to matters within the scope and authority of the System Board's jurisdiction, fails to meet due process requirements, does not draw its essence from the applicable collective bargaining agreement, and improperly rests on the arbitrator's notions of industrial justice informed by considerations outside of the express or implied terms of the applicable collective bargaining agreement. Additionally, the Union seeks preliminary and permanent injunctive relief, a declaratory judgment and other appropriate relief brought pursuant to the RLA, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to prohibit the Company from seeking to enforce the Award.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 45 U.S.C. § 153 First (q), which empowers federal district courts to review and set aside arbitration awards under the RLA. This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1337. Jurisdiction is appropriate under 28 U.S.C. § 1331 because this matter arises under the laws of the United States, specifically the RLA and the McCaskill-Bond Amendment. Jurisdiction is likewise appropriate under 28 U.S.C. § 1337, which provides that federal district courts shall have jurisdiction over proceedings arising under any act of Congress, such as the RLA, that regulates commerce. Furthermore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      Personal jurisdiction over Defendant exists because Defendant regularly conducts business and maintains substantial contacts within this judicial district.

3.      Venue is proper in this judicial district pursuant to 45 U.S.C. § 153, First (p) and (q), and 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendant resides in and regularly conducts

substantial operations in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in or relate to operations within this judicial district.

## PARTIES

4.      Plaintiff IBT is an unincorporated labor organization and is the exclusive bargaining representative, as such term is defined by 45 U.S.C. § 151, Sixth, of the flight deck crewmembers, *i.e.*, pilots, employed by Defendant Atlas Air and who fly aircraft for and on behalf of Atlas Air. The IBT is headquartered at 25 Louisiana Avenue, N.W., Washington, D.C. 20001. This action is brought by the IBT on its own behalf and for and in the interests of all IBT-represented pilots employed in the service of Defendant as well as on behalf of the IBT-represented pilots employed by a separate carrier, Southern Air, Inc. ("Southern"), whose interests have been adversely impaired by the Award. The IBT is certified by the National Mediation Board ("NMB") as the representative of the pilots employed by Defendant pursuant to a certification dated December 22, 2008.

5.      Plaintiff Local 1224 is an unincorporated labor organization headquartered at 2754 Old State Route 73, Wilmington, Ohio 45177. It is a chartered local union affiliate of the IBT. The IBT has delegated to IBT Local 1224 the exclusive responsibility of providing day-to-day representation to the IBT-represented pilots employed by Defendant.

6.      Defendant Atlas Air is an air carrier within the meaning of the RLA, 45 U.S.C. § 181. Defendant engages in world-wide cargo operations for various customers, including DHL, operating a fleet consisting of Boeing 767 and 747 aircraft.

# FACTS

## *Summary of Relevant Provisions Contained in the 2011 Atlas-Polar CBA*

7.     The recognition clause set forth in Section 1.A of the parties' 2011 collective bargaining agreement ("the 2011 Atlas-Polar CBA") defines the term "Company" exclusively as "Atlas Air Inc. and Polar Air Cargo Worldwide, Inc. (a single Air Carrier collectively referred to as the 'Company')."

8.     Section 1.F.2 of the 2011 Atlas-Polar CBA states as follows:

> In the event (i) the Company acquires another air carrier and the Company decides there will be a complete operational merger between the Company and such other air carrier, or if the Company notifies the Union of its intent to integrate the Crewmembers seniority lists of the respective carriers, or (ii) in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the Company and an affiliated air carrier, the following shall apply . . .

9.     Section 1.F.2(b)(iii) states as follows:

> If the crewmembers of the acquired carrier are represented by the Union, then the parties shall timely begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement.  If a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list that complies with the provisions of this paragraph F.2, the parties shall jointly submit the outstanding issues to binding interest arbitration.  The interest arbitration shall commence within thirty (30) days from the conclusion of negotiations contemplated by this paragraph, and a final decision shall be issued within sixty (60) days after the commencement of the arbitration.

10.     Section 1.H.1 of the 2011 Atlas-Polar CBA states as follows:

> Any grievance filed by the Company or Union alleging a violation of Section 1 shall bypass the initial steps of the grievance process and shall be submitted, heard, and resolved through binding arbitration on an expedited basis directly before the Atlas Crewmembers' System Board of Adjustment sitting with a neutral arbitrator. The dispute shall be heard as soon as possible after submission to the System Board and decided no later than thirty (30) days after the close of the hearing, unless the parties agree otherwise in writing.

11.     Section 20.D of the 2011 Atlas-Polar CBA states in relevant part as follows:

> In the case of a grievance initiated by the Company (a "Company grievance"), the Company shall submit the Grievance to the Union in writing or by electronic mail. . . .

12.     Section 21.B.1, 2 and 3 of the 2011 Atlas-Polar CBA states as follows:

> 1.     As provided by the Railway Labor Act, as amended, the [System] Board [of Adjustment] shall have jurisdiction over all disputes between a Crewmember and the Company, or between the Company and the Union, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto.
>
> 2.     The Board's jurisdiction shall not extend to any proposed changes in rates of pay, rules or working condition. The Board shall not have any jurisdiction to add to, subtract from, modify or amend any of the terms of this Agreement.
>
> 3.     In cases arising under Section 20, the Board's jurisdiction shall be limited to a consideration of the issue(s) addressed in the written grievance filed pursuant to Section 20 and any issues arising from the subsequent processing of the grievance.

### ***The Commencement of RLA Section 6 Negotiations to Amend the 2011 Atlas-Polar CBA***

13.     Pursuant to Section 34 of the 2011 Atlas-Polar CBA, effective on September 8, 2011, the 2011 Atlas-Polar CBA became amendable in September 2016, but was subject to reopener negotiations under RLA Section 6 "no more than two hundred and seventy (270) days prior to" the amendable date.

14.     In November 2015, the Union notified Atlas Air and Polar of its desire to reopen the 2011 Atlas-Polar CBA and commence immediate negotiations to amend the 2011 Atlas-Polar CBA. In December 2015 representatives from the Union, Atlas Air, Polar and AAWW met in Miami on December 11, 2015, and again on December 17, 2015. At that second meeting, the Union, Atlas Air and Polar scheduled RLA Section 6 reopener negotiations for three days in January 2016, three days in February 2016, and three days in March, 2016. The bargaining parties

first met to negotiate on January 19, 2016, and achieved three tentative agreements during their January negotiations.

### *AAWW's 2016 Acquisition of SAHI after the Parties' Negotiations Had Begun to Amend the 2011 Atlas-Polar CBA*

15.     On January 19, 2016, shortly before the first formal negotiation session between the Union and Atlas Air and Polar to amend the 2011 Atlas-Polar CBA was scheduled to begin, AAWW announced that it had entered into an agreement to acquire Southern Air Holdings, Inc. ("SAHI"), "the parent company of Worldwide Air Logistics Group and its two operating subsidiaries," Southern and Florida West International Airways, Inc. ("Florida West" or "FWIA"), in a transaction that it "expected to close in the next few months." The acquisition was approved by the respective companies' shareholders on or about April 7, 2019.

16.     Southern is an air cargo carrier which operates Boeing 777 and B-737 aircraft on behalf of its primary customer, DHL. The Southern pilots, also represented by the Union, work under a collective bargaining agreement separate from the 2011 Atlas-Polar CBA that covers the Atlas Air and Polar pilots. The current Southern contract became effective in September 2012 and became amendable in November 2016 (the "2012 Southern CBA"). The 2012 Southern CBA is a concessionary contract that was negotiated during Southern's 2012 bankruptcy in order to avoid even more drastic contract cuts from being imposed by the bankruptcy court.  Similar to the 2011 Atlas-Polar CBA, the 2012 Southern CBA contains a re-opener clause permitting one or both parties to reopen the agreement pursuant to RLA Section 6 any time within 365 days prior to its amendable date. The Union notified Southern of its intent to reopen the Southern CBA in November 2015, and the parties arranged to commence negotiations in early 2016. The Union

memorialized the parties' agreement to amend the 2012 Southern CBA in 2016, prior to the April 9, 2016 corporate/shareholder ratification of AAWW-SAHI transaction.

17.     Upon announcing its intent to acquire SAHI, but several months prior to initiating the necessary regulatory processes to effect it, AAWW announced its intent to operationally merge Southern into Atlas Air while leaving Polar and FWIA as separate carriers under the AAWW corporate umbrella. Based on that pronouncement, AAWW, a non-party to both the 2012 Southern CBA and the 2011 Atlas-Polar CBA, demanded that the Union and the Southern and Atlas-Polar pilot groups cease RLA negotiations to amend their respective collective bargaining agreements. AAWW insisted that both pilot groups instead commence negotiations to merge the two pre-existing agreements into one. In so doing, AAWW sought to circumvent arms-length negotiations under the RLA by forcing the Union and its separate pilot groups to submit to binding arbitration, the purpose of which is to impose terms not agreed upon by the parties through negotiations to merge the 2011 Atlas-Polar CBA and 2012 Southern CBA into one. Recognizing that the "merger negotiation" provisions contained in the 2012 Southern CBA and the 2011 Atlas-Polar CBA are triggered only after the presentation to the respective carriers of a single seniority list agreed upon by the two pilot groups, *i.e.*, the Atlas-Polar pilot group on the one hand and the Southern pilot group on the other, AAWW also insisted that the Union and the respective pilot groups immediately commence seniority integration negotiations.

18.     Neither AAWW, Atlas Air, Polar, nor Southern has any authority to dictate to the Union and the respective pilot groups when and how such a seniority integration process should proceed. Those matters are entirely within the Union's province, and not management's affair. Neither CBA contains any temporal limitation or procedural restriction on the Union's seniority integration process, as confirmed by the carriers' senior executives and management.

19.     The Union and the Atlas-Polar and Southern pilot groups refused AAWW's demand that they abandon their respective RLA Section 6 negotiations to amend their collective bargaining agreements. In March and April, 2016, respectively, Atlas Air, Polar and Southern refused to engage in further RLA Section 6 negotiations to amend their respective agreements and insisted that the Union and the Atlas-Polar and Southern pilot groups instead commence negotiations not to amend, but rather to merge those separate agreements into one.

20.     On April 13, 2016, pursuant to RLA Section 5, 45 U.S.C. § 155, the Union filed an application with the NMB seeking the agency's mediation services to facilitate its negotiations with Atlas Air to amend the 2011 Atlas-Polar CBA.

21.     On April 14, 2016, Atlas Air filed a management grievance ("the Atlas Grievance") against the Union, alleging that the Union had violated Section 1.F.2.b.iii of the Atlas-Polar CBA by refusing to engage in negotiations for a joint collective bargaining agreement. By letter dated April 20, 2016, the Union informed Atlas Air that it was not required to arbitrate the Atlas Grievance because, among other reasons, RLA Section 6 negotiations had already begun, and therefore the Union would not arbitrate the grievance.

22.     By letter dated January 24, 2017, Southern purported to submit a grievance ("the Southern Grievance") against the Union for hearing before the System Board of Adjustment established under the 2012 Southern CBA. In the Southern Grievance, Southern alleged that the Union had violated Section 1.B.3 of the 2012 Southern CBA by refusing to engage in negotiations for a joint collective bargaining agreement that would cover both the Southern and Atlas pilots. In a February 8, 2017 letter responding to the purported Southern Grievance, the Union advised Southern that the Southern Grievance was invalid and that therefore the Union would not arbitrate it.

23.     On February 7, 2017, without waiting for a response from the Union, Southern joined Atlas Air in filing suit against the Union in the United States District Court for the Southern District of New York to compel the Union to arbitrate their respective management grievances.

24.     On March 13, 2018, in *Atlas Air, Inc. and Southern Air, Inc. v. International Brotherhood of Teamsters,* 293 F. Supp. 3d 457 (S.D.N.Y.) ("the March 2018 Decision"), Judge Katherine B. Forrest ruled that the parties' disputes must be resolved by the respective System Boards of Adjustment under the 2011 Atlas-Polar CBA and the 2012 Southern CBA. The Union appealed that decision to the United States Court of Appeals for the Second Circuit and a decision on that case is pending. If the Second Circuit reverses the district court's decision, then the two resulting, separate arbitrations discussed below that were conducted by the Southern and Atlas System Boards of Adjustment, as well as any and all rulings issued by the district court, will be null and void.

### *The Southern Grievance Arbitration Proceedings and Opinion*

25.     Southern's purported Grievance was heard by a three-person System Board of Adjustment ("the Southern System Board") on October 16, 17, and 18, 2018, in New York, New York. Arbitrator Richard I. Bloch ("Arbitrator Bloch") served as the Neutral Member on the Southern System Board.

26.     On June 6, 2019, Arbitrator Bloch issued his Opinion and Award ruling in favor of Southern. Arbitrator Bloch also ordered the Union to produce an integrated seniority list combining the seniority lists of the Southern pilots with those of the Atlas Air-Polar pilots within forty-five (45) days. In contriving this remedy, Arbitrator Bloch ignored the fact that the Atlas-Polar pilot group was not a party to the proceedings, and that the 2011 Atlas-Polar CBA was not within the purview of the Southern System Board. Arbitrator Bloch also ignored the fact that the

Atlas-Polar pilot group's seniority and other rights and responsibilities are determined by their own collective bargaining agreement. On June 27, 2019, the Union filed suit in this Court petitioning to vacate Arbitrator Bloch's award. *See International Brotherhood of Teamsters, Airline Division, et al. v. Southern Air, Inc.,* 1-19-CV-01948-CRC (D.D.C., June 27, 2019) (the "Southern case"). The Union submits this Complaint as a related case to the Southern case.

### *The Atlas Air Grievance Arbitration Proceedings*

27.    The Atlas Grievance was heard by the three-person Atlas System Board of Adjustment (the "Atlas System Board") on October 24, 25, and 26, 2018, in New York City, New York. Arbitrator George Nicolau served as Neutral Member of the Atlas System Board.

28.    The Atlas System Board was tasked with adjudicating the Atlas Grievance referenced in paragraph 21, above. In that grievance, Atlas Air proffered the following issue for adjudication:

> Is IBT and/or Airline Professionals Association, Teamsters Local Union No. 1224 violating Section 1.F.2.b.iii of the Atlas-IBT CBA by refusing to engage in negotiations for a joint collective bargaining agreement pursuant to the terms and conditions set forth therein in light of the announced operational merger of Atlas and Southern Air, Inc.?

As set forth in the grievance, Atlas Air requested the following remedy:

> Atlas respectfully requests that the System Board engage in the Expedited Arbitration process described in Section 1.H of the Atlas-IBT CBA and order that the IBT and its Local 1224 comply with the terms of Section 1.F.2.b.iii. of the Atlas-IBT CBA by (1) bargaining with Atlas and Southern for a JCBA on the terms set forth in Section 1.F.2.b.iii. of the Atlas-IBT CBA and (2) providing Atlas with an integrated seniority list on a prompt basis.

29.    In its grievance, Atlas Air relied upon and cited only one of the several activating events identified in Section 1.F.2 of the 2011 Atlas-Polar CBA that, it claimed, triggered an obligation by the Union to develop and present a single, *i.e.*, integrated, seniority list consisting of both the Atlas-Polar and the Southern pilots, and to then commence negotiations to merge the 2011

Atlas-Polar CBA and 2012 Southern CBA into one. Specifically, Atlas Air relied exclusively on Section 1.F.2(i) as the basis for its grievance, thereby waiving reliance upon the other activating events identified in Section 1.F.2(i) and Section 1.F.2(ii) of the 2011 Atlas-Polar CBA.

30.     Section 1.F.2(i) and 1.F.2.b.iii of the 2011 Atlas-Polar CBA provide:

> In the event (i) the Company acquires another air carrier and the Company decides there will be a complete operational merger… the following shall apply:
>
> . . .
> (iii) If the crewmembers of the acquired carrier are represented by the Union [IBT], then the parties shall, on a timely basis, begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement. If a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list… the parties shall jointly submit the outstanding issues to binding interest arbitration.

The ellipses contained in the above quote were contained in the Atlas Grievance.

31.     In its grievance, Atlas Air summarized the nature of its dispute in relevant part as follows:

> Summary of the Dispute
>
> Atlas' parent company, Atlas Air Worldwide Holdings, Inc. ("AAWH"), has acquired Southern Air Holdings, Inc., the parent of Worldwide Air Logistics Group ("WALG"), which in turn owns two subsidiary air carriers: Southern Air, Inc. ("Southern Air") and Florida West International Airways ("Florida West"). The crewmembers of Southern Air, like those of Atlas, are represented by the IBT, and its designated Airline Professionals Association | Teamsters Local Union No. 1224 (for ease of reference, Local Union No. 1224 may herein be referred to as "IBT"). Upon announcing the transaction, Atlas immediately notified IBT that there will be a complete operational merger of Atlas and Southern Air, and has provided IBT with information and updates regarding its progress towards this operational merger.
>
> Section 1.F.2.b.iii of the Atlas-IBT CBA requires that, in such circumstances, IBT must negotiate with the carriers "to merge the two pre-integration collective bargaining agreements into one agreement," and, if no such joint collective bargaining agreement ("JCBA") is executed within nine months of the date the IBT presents Atlas with a merged seniority list, any outstanding issues regarding the merged agreement must be jointly submitted to binding interest arbitration. Similarly, Section 1.B.3 of the Southern Air-IBT CBA governing the

Crewmembers of Southern Air provides that the Southern Air-IBT CBA "shall be merged with the merging air carrier's crewmember collective bargaining agreement [and] if such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration."

32.     At the arbitration hearing, Atlas Air substantively changed the contractual basis of its grievance and, at the same time, changed the issue for resolution by the Atlas System Board chaired by Arbitrator Nicolau and added a second issue for resolution by the Board. In so doing, Atlas Air abandoned its reliance on Section 1.F.2(i) of the 2011 Atlas-Polar CBA, claiming that that provision was a "red herring," and shifted to a new-found and hitherto undisclosed reliance on Section 1.F.2(ii) of the 2011 Atlas-Polar CBA. The conditions and triggering obligations set forth in Section 1.F.2(i) and Section 1.F.2(ii) differ substantially from one another. Section 1.F.2(i), the provision relied upon by Atlas Air in its written grievance, requires that "the Company," *i.e.*, Atlas Air and Polar, must have acquired Southern. Section 1.F.2(ii) does not contain that condition. Atlas Air and Polar, *i.e*., the "Company" as defined in the 2011 Atlas-Polar CBA, did not acquire Southern; AAWW acquired Southern through its acquisition of SAHI.

33.     The 2011 Atlas-Polar CBA limits the jurisdiction of the Atlas System Boards of Adjustment to consider and address only the issue proffered in the written grievance itself, as well as any issues arising from the subsequent processing of the grievance. Management grievances involving disputes relating to Section 1 of the 2011 Atlas-Polar CBA, such as the Atlas Grievance, are not subject to "subsequent processing," and are instead submitted directly to the System Board of Adjustment.

### The August 26, 2019 Atlas System Board Award

34.     On August 26, 2019, a majority of the Atlas System Board of Adjustment chaired by Arbitrator Nicolau issued its Decision and Award upholding the Atlas Grievance. A true and

correct copy of the Decision and Award, including the dissenting opinion, is attached hereto as

Exhibit A.

**A.** ***The Atlas System Board Exceeded its Jurisdiction by Ignoring the Issue Presented to it by the Company in the Company's Written Grievance and Deciding the Grievance on Grounds not presented by the Company in that Grievance.***

35. As set forth in the majority opinion, the Atlas System Board sustained the Atlas

Grievance because the "the Company did make it clear that a merger was planned." The majority

reasoned:

> Thus, while Captain Carlson stated in his declaration filed with the United States District Court for the Southern District of New York that "AAW[W] has further announced that it intends to merge the operations of Atlas and Southern Air," as it did in its January 19th, 2016 press release, that has no impact on whether the Company itself also decided that there would be a complete operational merger between the Company and an affiliate. The CEOs of Atlas, Polar and Southern, with guidance of AAWW, have the authority to determine whether to merge the carriers from a labor perspective. AAWW's decision to merge the operations of the two carriers did not preclude the Company from also deciding, as it did in the labor context, that there would be a complete operational merger between the Company and Southern.

The majority opinion did not address the fact AAWW, not "the Company" as defined in the 2011

Atlas-Polar CBA, *i.e.*, Atlas Air and Polar together, not only had to have decided to operationally

merge Southern into their operations, but that they also both had to have "acquired" Southern. The

Atlas System Board was mandated to make this determination regarding the acquisition of

Southern by "the Company." That mandate arises pursuant to Section 21.B.3 and Section 1.F.2(i)

of the 2011 Atlas-Polar CBA. The Atlas System Board majority ignored this mandate and instead

upheld the Atlas Grievance based on an issue that was not submitted to it for resolution.

**B.** ***The Atlas System Board Exceeded Its Jurisdiction by Imposing a Remedy Not Allowed by the 2011 Atlas-Polar CBA, Adding to and Subtracting From the Terms of the 2011 Atlas-Polar CBA, and by Interpreting a Federal Statute rather than the 2011 Atlas-Polar CBA.***

36. The Atlas System Board ordered the Union:

to comply with the merger provisions of Section 1.F.2 of the CBA, including promptly submitting an ISL, negotiating for a JCBA, and submitting unresolved bargaining issues to binding interest arbitration if a JCBA has not been executed within nine (9) months.

The Atlas System Board also directed that the Union submit an integrated seniority list to the Company within forty-five days, "at which point the provisions of Section 1.F.2.b.iii are to be followed." In this regard, the Atlas System Board majority further stated:

> The Award defines "promptly" as 45 days, based on the Chairman's experience in these matters and the particular circumstances of this situation, including the size of the pilot units and the time that has passed since the original announcement, the 45 day period is both timely and sufficient to deliver the ISL to the Company. To conclude Allegheny-Mohawk is not required in this case.

37.    Section 1.F.2.b.iii of the 2011 Atlas-Polar CBA does not specify any deadline by which it is required to present an integrated seniority list to the Company. Section 1.F.2.b.iii instead provides that "if the crewmembers of an acquired carrier are represented by the Union, then the parties shall on a timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement." Moreover, Section 1.F.2.b.iii's timely basis bargaining requirement commences only after the presentation of an integrated seniority list to the Company that satisfies certain specified conditions. Section 1.F.2.b.iii does not set the deadline by which an integrated seniority list must be integrated and developed. By imposing a specific deadline by which the Union must, within forty-five (45) days, present an integrated seniority list that must be developed by the Atlas-Polar pilot group on the one side and the Southern pilot group on the other, the Atlas System Board improperly and in excess of its jurisdiction prescribed by Section 21.B.2, added to, subtracted from, modified, and amended the terms of the 2011 Atlas-Polar CBA.

38.    The IBT adopted an airline division merger/seniority integration policy in October 2017. In so doing, the IBT directed that its policy apply only prospectively, such that it does not

apply to any airline merger/consolidation transaction that had been announced prior to the adoption of the policy. Because AAWW's acquisition of Southern was announced in 2016, therefore, the IBT's airline division merger/seniority integration policy does not apply with respect to the process by which the Atlas-Polar and the Southern pilot groups' seniority lists are integrated into a single seniority list.

39.     The process by which the Atlas-Polar and the Southern pilot groups' seniority lists must be integrated into a single seniority list is governed by the McCaskill-Bond statute, 49 U.S.C. § 42112. The McCaskill-Bond statute requires that with respect to transactions such as AAWW's acquisition of Southern, sections 3 and 13 of the labor protective provisions ("LPPs") imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers. These Allegheny-Mohawk LPPs require that the affected work groups' seniority lists be integrated in a "fair and equitable manner" through negotiations and binding arbitration.

40.     The LPPs prescribed by the McCaskill-Bond statute are federally-protected rights guaranteed to the affected airline employees to ensure that one carrier's work group does not, through its larger numbers, greater political clout or any other reason, unfairly take advantage of the other affected carrier(s)' work groups involved in the integration process. In directing that "Allegheny-Mohawk is not required in this case," the Atlas System Board exceeded its jurisdiction by purporting to interpret a federal statute and not the terms of the 2011 Atlas-Polar CBA.

41.     In directing that "Allegheny-Mohawk is not required in this case," the Atlas System Board's majority decision also deprives the Atlas-Polar pilots and the Southern pilot groups of their federally-protected rights afforded to them by the McCaskill-Bond statute. This is because it is utterly impossible to complete a fair and equitable seniority integration of the Atlas-Polar and

Southern pilots within the allotted 45-day period of time. For example, in order to commence a fair and equitable seniority integration, each pilot group affected by the Decision, i.e., the Atlas-Polar pilot group and the Southern pilot group, must obtain verifiable seniority lists from their respective carriers. In their respective collective bargaining agreements, Atlas Air, Polar and Southern are required to publish and post their pilot groups' respective seniority lists each August 15th and September 1st. The next publication and posting therefore, is due on September 1, 2019. Upon publication and posting of the seniority lists, the pilots working under the 2011 Atlas-Polar CBA and the 2012 Southern CBA are afforded a forty-five (45) day period in which to protest the accuracy of their seniority list. Unresolved seniority protest disputes are then subject to final and binding arbitration. Moreover, the Union, Atlas Air and Polar have been involved in a dispute regarding the accuracy of the Atlas-Polar pilot group's seniority list. That dispute is awaiting a decision from an arbitrator. There is no way to determine when that decision will issue. Furthermore, because the Union separately represents the Atlas-Air-Polar pilot group and the Southern pilot group, it owes each of those pilot groups separate duties of fair representation. In this situation, if the Union institutionally constructed a fairly and equitably integrated seniority list and imposed it on those two work groups, it would face a significant risk of liability for breaching its duty of fair representation to one or both groups.

42.      To avoid conflicts of interest and potential breach(es) of its duty of fair representation such as are present here, where the Union represents the pilot groups on both sides of a seniority integration, the affected work groups themselves form their own seniority integration committees and then directly negotiate with each other to attempt to reach an integrated list without resort to binding arbitration. Those work groups, however, have the federally-protected right to seek binding arbitration to resolve disputes over the development of such an integrated seniority

list. Based on these facts alone, and notwithstanding the other fatal flaws concerning the Atlas System Board's majority decision, the directive that an integrated seniority list be completed and presented to the Company within forty-five (45) days from the date of the decision is thoroughly divorced from reality, wholly arbitrary and lacking any contractual foundation, and improperly deprives the Union and the pilots it represents of their rights under the McCaskill-Bond statute.

### C. *Summary of the Atlas System Board's Fatal Errors Warranting Vacatur*

43. The Atlas System Board's August 26, 2019 Decision and Award is arbitrary and it fails to draw its essence from the 2011 Atlas-Polar CBA.

44. The Atlas System Board's August 26, 2019 Decision and Award is null and void because the Board exceeded its jurisdiction under the 2011 Atlas-Polar CBA, sought to interpret federal law rather than the terms of the 2011 Atlas-Polar CBA, and because it erroneously interpreted the RLA and the McCaskill-Bond statute..

45. The Atlas System Board's August 26, 2019 Decision and Award improperly adds to, subtracts from and amends the terms of the 2011 Atlas-Polar CBA.


### CAUSES OF ACTION

### COUNT I

46. Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 45 of this Complaint, pursuant to Fed. R. Civ. P. Rule 10(c).

47. The Atlas System Board's August 26, 2019 Decision and Award is arbitrary and fails to conform with, and/or confine itself to, matters within the scope of the System Board's jurisdiction.

**COUNT II**

48.     Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 47 of this Complaint, pursuant to Fed. R. Civ. P. Rule 10(c).

49.     The Atlas System Board's August 26, 2019 Decision and Award directing the Union to complete and present an integrated seniority list to Atlas Air violates federal law, including the McCaskill-Bond statute and the Railway Labor Act.

**COUNT III**

50.     Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 49 of this Complaint, pursuant to Fed. R. Civ. P. Rule 10(c).

51.     The Union, as representative of the Southern pilot group, and the Southern pilot group itself are not subject to the jurisdiction of the Atlas System Board of Adjustment and the Atlas System Board's August 26, 2019 Decision and Award does not apply to them with respect to their obligations under the 2012 Southern CBA.

**COUNT IV**

52.     Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 49 of this Complaint, pursuant to Fed. R. Civ. P. Rule 10(c).

53.     The Atlas System Board's August 26, 2019 Decision and Award and any effort by the Company to impose and enforce the Decision and Award's remedy upon the Atlas-Polar pilot group and the Southern pilot group violates RLA Section 204, 45, U.S.C. § 184, as well as the status quo procedures of RLA Sections 2, First, Seventh and Section 6 of the RLA, 45 U.S.C. § 152, First, 152, Seventh, and § 156. The status quo violations at issue in this action include the arbitrary and frivolous addition, subtraction and amendment of substantive terms of the 2011 Atlas-Polar CBA, as well as the directive that the Union cease RLA Section 6 negotiations

involving both the Atlas-Polar pilot group and Southern pilot group based upon a transaction that occurred after those negotiations had already commenced. As such, there is no obligation on the part of Union to show irreparable injury because courts may enjoin a violation of the status quo pending completion of the required RLA Section 6 procedures, without the customary showing of irreparable injury.

54.     In addition to the irreparable injury to the statutory purposes and machinery of the RLA, any attempted enforcement of the Atlas System Board's August 26, 2019 Decision and Award will injure the Union and the Atlas-Polar and Southern pilot groups it separately represents in ways that cannot be measured accurately in terms of money, either as to extent or amount.

55.     Any effort to enforce the Atlas System Board's August 26, 2019 Decision and Award will have the proximate effect of compelling the Union to extinguish the contractual rights of the Atlas-Polar pilot group regarding a dispute with their company over whether they are required to engage in contractual merger negotiations for a joint collective bargaining agreement with the Southern pilot group and engage in seniority integration negotiations with the Southern pilot group, thereby undermining the Union's status as both pilot groups' collective bargaining representative and subjecting the Union to potential liability for breaching its duty of fair representation to both pilot groups. Any such effort to enforce the Atlas System Board's August 26, 2019 Decision, moreover, is contrary to the public interest in stable labor relations and the maintenance of agreements.

56.     The injury that would be suffered by the public, the Union and both the Atlas-Polar and Southern pilot groups would be irreparable and could not be recovered in an action at law or in administrative or contractual proceedings.

57.     For all the foregoing reasons, Plaintiffs are without an adequate remedy at law and will suffer serious, substantial and irreparable injury unless enforcement of the Atlas System Board's August 26, 2019 Decision and Award is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

58.     Atlas Air will not be injured by the grant of injunctive relief in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

A.     Vacating, setting aside, and declaring null and void the Decision and Award of the August 26, 2019 Atlas System Board chaired by Arbitrator Nicolau.

B.     To the extent required, issuing such orders to the Atlas System Board chaired by Arbitrator Nicolau and Atlas Air as may be necessary to effectuate the Court's remedy.

C.     Declaring that the Union in its capacity as the exclusive representative of the Southern pilot group and the Southern pilot group itself, legally need not abide by or implement the remedy set forth in the August 26, 2019 Atlas System Board Decision and Award because the Atlas System Board of Adjustment does not have jurisdiction over the Southern pilot group with respect to their rights and obligations under the 2012 Southern CBA, and the August 26, 2019 Atlas System Board of Adjustment Decision and Award improperly imposes obligations on them that arise, if at all, only from their own collective bargaining agreement, *i.e.*, the 2012 Southern CBA;

D.     Granting preliminary and permanent injunctive relief prohibiting Atlas Air from enforcing the August 26, 2019 Atlas System Board Decision and Award against the

Southern pilot group and Union in its capacity as the exclusive representative of

the Southern pilot group;

E.     Declaring that the August 26, 2019 Atlas System Board's Decision and Award

violates the McCaskill-Bond statue and the Railway Labor Act, including its status

quo obligations and related provision as set forth in RLA Sections 2, First, 2,

Seventh, and 6.  45 U.S.C. §§ 152, First, 156, 152, Seventh, and 156, placing the

Union in an untenable and improper position of having to comply with the Decision

and Award and violating its separate duties of fair representation owed to the Atlas-

Polar and the Southern pilot groups;

F.     Awarding costs and fees to Plaintiffs; and

G.     Granting the Union such other and further relief as the Court deems just and proper.


Dated:  September 11, 2019


_____/s/_____
Edward M. Gleason                                          Gillian Costello
(D.C. Bar No. 429325)                                     SPIVAK LIPTION LLP
LAW OFFICE OF                                             1700 Broadway, 21st Floor
  EDWARD GLEASON, PLLC                                    New York, New York 10019
910 17th Street, N.W., Suite 800                          Ph: (212) 765-2100
Washington, DC 20006                                      gcostello@spivaklipton.com
Ph: (703) 703-608-7880 - mobile
egleason@gleasonlawdc.com

Stephanie Spanja
DOLL, JANSEN & FORD
111 West First Street, Suite 1100
Dayton, Ohio 45402
Ph: (937) 461-5310
sspanja@djflawfirm.com


*Counsel for Plaintiffs*

21