## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AIRLINE DIVISION and
AIRLINE PROFESSIONALS ASSOC. OF
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL UNION NO.
1224,

               Plaintiffs,

    v.

ATLAS AIR, INC.,

               Defendant.

Civil Action No. 1:19-cv-02723-CRC

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 6

ARGUMENT ........................................................................................................................ 10

    I.      COUNT I MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.......................................................................................................................... 13

    II.     COUNT II MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.......................................................................................................................... 18

    III.    COUNT III MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.......................................................................................................................... 21

    IV.    COUNT IV MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.......................................................................................................................... 23

CONCLUSION ...................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney,*
230 F.3d 569 (2d Cir. 2000) ............................................................................................ 18

*Air Line Pilots Ass'n v. Trans World Airlines, Inc.,*
729 F. Supp. 888 (D.D.C. 1989)..................................................................... 5, 13, 28

*Am. Train Dispatchers Ass'n v. Burlington N. R.R. Co.,*
784 F. Supp. 899 (D.D.C. 1992)............................................................................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................... 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................... 10

*Brewery & Beverage Drivers Local 67 v. Canada Dry Potomac Corp.,*
628 F. Supp. 73 (D.D.C. 1986)................................................................................. 22

*Dexter Axle Co. v. Intl. Ass'n. of Machinists Workers, Dist. 90, Lodge 1315,*
418 F.3d 762 (7th Cir. 2005) .................................................................................... 17

*Ibrahim v. Mid-Atlantic Air of DC, LLC,*
802 F. Supp. 2d 73 (D.D.C. 2011)............................................................................ 10

*Lyons v. Norfolk & W. Ry. Co.,*
163 F.3d 466 (7th Cir. 1999) .................................................................................... 12

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau,*
785 F.3d 684 (D.C. Cir. 2015)............................................................................ 26, 27

*Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189,*
855 F.3d 335 (D.C. Cir. 2017)............................................................................ 12, 26

*Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,*
808 F.2d 76 (D.C. Cir. 1987).............................................................................. passim

*Pan Am. Airways Corp., v. Air Line Pilots Ass'n,*
206 F. Supp. 2d 12 (D.D.C. 2002)...................................................................... 12, 17

*Sottera, Inc. v. Food & Drug Admin.,*
627 F.3d 891 (D.C. Cir. 2010)............................................................................ 26, 27

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Spiller v. District of Columbia*,
    2019 WL 689778 (D.D.C. Feb. 19, 2019) ................................................................. 10

*Union Pac. R.R. Co. v. Sheehan*,
    439 U.S. 89 (1978) ......................................................................................... passim

*United Transportation Union v. Nat'l R.R. Passenger Corp. (Amtrak)*,
    588 F.3d 805 (2d Cir. 2009) .............................................................................. 12

*Vaca v. Sipes*,
    386 U.S. 171 (1967) .......................................................................................... 21

*Wright v. Nat'l R.R. Passenger Corp.*,
    330 F. Supp. 3d 463 (D.D.C. 2018) ................................................................... 21

**Statutes**

45 U.S.C. § 153 First (q) ........................................................................................ 4, 11

45 U.S.C. § 184 ................................................................................................. 3, 19, 21

## PRELIMINARY STATEMENT

The Atlas Air System Board of Adjustment ("System Board"), chaired by neutral arbitrator George Nicolau and convened pursuant to the mandate of the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.* ("RLA"), conducted a three-day hearing on a collective bargaining agreement ("Atlas CBA") grievance filed by Atlas Air, Inc. ("Atlas") challenging the refusal of the International Brotherhood of Teamsters, Airline Division and the Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 (collectively, the "IBT") to abide by the Atlas CBA's merger provisions following a merger between Atlas and an affiliated air carrier, Southern Air Inc. ("Southern").  After extensive briefing by both parties, Arbitrator Nicolau issued a written opinion and an award (collectively, the "Decision and Award")[1] that granted Atlas' grievance and ordered the IBT promptly to comply with the merger provisions of the Atlas CBA.  Under the RLA, this Decision and Award is final and binding on the parties and not subject to review by a court absent extraordinary circumstances that are not present here.  *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93-94 (1978) (per curiam); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 80 (D.C. Cir. 1987).

Atlas' grievance arose out of the IBT's refusal to comply with Section 1.F.2.b.iii of the Atlas CBA, which requires that, following a merger between Atlas and another air carrier, the parties must engage in negotiations, and interest arbitration if necessary, to establish the terms of a joint collective bargaining agreement ("JCBA") covering the pilots employed by the two carriers.  Under this provision, the interest arbitration on unresolved JCBA issues is to commence nine months after the IBT provides Atlas with an Integrated Seniority List ("ISL"), and under Section 1.F.2.a.i of the Atlas CBA, the "Union's Merger Policy shall be utilized to

---

[1] The Decision and Award is attached to Plaintiffs' Complaint as Exhibit A.

integrate the two seniority lists."  Pursuant to Section 1.F.2(ii) of the Atlas CBA, the IBT's

obligation to provide an ISL and engage in the procedures for formulation of a JCBA is triggered

"in the event the Company decides there will be a complete operational merger between the

Company and an affiliated air carrier, or if the Company notifies the Union of its intent to

integrate the Crewmember seniority lists of the Company and an affiliated air carrier."

   In his Decision and Award, Arbitrator Nicolau expressly considered these Atlas CBA

provisions and the parties' respective arguments regarding their meaning.  Upon doing so,

Arbitrator Nicolau determined – as asserted by Atlas – that the triggering events in

Section 1.F.2(ii) occurred in this case:  Atlas decided and communicated that there would be a

complete operational merger with an affiliated air carrier (Southern, which was commonly

owned by Atlas' parent company).  Arbitrator Nicolau accordingly determined that the IBT

violated Section 1.F.2.b.iii of the Atlas CBA by refusing to produce the ISL and engage in the

process for formulation of the JCBA.  As a remedy for this contractual violation, Arbitrator

Nicolau ordered the IBT to produce the ISL within 45 days, and thereupon commence the nine-

month period for negotiation of a JCBA and eventual interest arbitration on unresolved

bargaining issues if needed.

   In the current complaint seeking to vacate Arbitrator Nicolau's Decision and Award, the

IBT repeats (at paragraphs 29-33) an allegation it unsuccessfully made to Arbitrator Nicolau –

that Atlas' grievance somehow waived the Section 1.F.2(ii) trigger for application of the Atlas

CBA's merger procedures, and thus Atlas was only permitted to invoke a different trigger in

Section 1.F.2(i) of the Atlas CBA, which was not satisfied here because Atlas' parent company,

rather than Atlas, acquired Southern.  The record in the arbitration demonstrated that this

argument is utterly unsupportable – the grievance broadly alleged a violation of the contractual

merger procedures in Section 1.F.2.b.iii of the Atlas CBA without limiting which contractual

trigger for those procedures was applicable.  And in the subsequent processing of the grievance,

including federal court litigation to compel the IBT to submit the grievance to arbitration before

the Atlas System Board, Atlas expressly cited to the Section 1.F.2(ii) trigger as a basis for its

grievance.  (Declaration of Rachel S. Janger ("Janger Declaration") ¶ 6, Exs. H, I, J (Co. Exs. 60,

64 and 65).)

        In any event, most importantly for purposes of this case, it is clear that Arbitrator Nicolau

expressly considered the IBT's "waiver" argument – noting the IBT contended that there was no

applicable trigger for the merger procedures because the parent company, not Atlas, purchased

Southern – but then rejected that contention.  In doing so, and in ruling in favor of Atlas,

Arbitrator Nicolau decided to rely upon the Section 1.F.2(ii) triggering factors, holding that

"[t]he facts show that the Company did make it clear that a merger was planned," that Atlas

decided "there would be a complete operational merger between the Company and Southern,"

and that the IBT's arguments "do not alter the fact the Company, Atlas, complied with the

provisions of the CBA."  Moreover, this decision regarding the applicability of Section 1.F.2(ii)

of the Atlas CBA, even if incorrect, is not reviewable in federal court.  *Lyons v Norfolk & W. Ry.

Co.,* 163 F.3d 466, 470 (7th Cir. 1999) ("the question [in] federal court . . . is not whether the

arbitrator erred in interpreting the contract; . . . it is whether . . . [the arbitrator] interpreted the

contract.")  And, contrary to the IBT's allegations in the complaint (at paragraph 33), there can

be no doubt that Arbitrator Nicolau and the Atlas System Board had exclusive jurisdiction under

the Atlas CBA (and the applicable federal law, the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*)

to interpret and apply the trigger provisions of the CBA's merger procedures, including Section

1.F.2(ii), in this manner.  45 U.S.C. § 184; (Janger Declaration ¶ 2, Ex. A at § 21.B.1) ("As

provided by the Railway Labor Act, as amended, the [Atlas System] Board shall have

jurisdiction over all disputes between a Crewmember and the Company, or between the

Company and the Union, growing out of the interpretation or application of any of the terms of

this Agreement or amendments thereto.").[2]

 The IBT also challenges the portion of the remedy issued by Arbitrator Nicolau that requires

the IBT to provide the ISL within 45 days of the Decision and Award in order promptly to begin the

process for formulating the JCBA.  In doing so, the IBT alleges that the 45-day period is not

specifically required by the CBA, is not a sufficient period of time to produce the ISL, and will

deprive pilots of rights to a more lengthy seniority integration process set forth in Sections 3 and 13

of the Allegheny-Mohawk Labor Protective Provisions as adopted by the federal McCaskill-Bond

statute, 49 U.S.C. § 42112, Note 117.  None of these allegations are plausible.  First, while the 45-

day period is not specified in the Atlas CBA, Section 1.F.2.b.iii expressly requires that the JCBA

negotiation process commence on a "timely" basis after the operational merger is announced, and

Arbitrator Nicolau had considerable discretion under the Atlas CBA (and the RLA) to fashion an

appropriate remedy to enforce that requirement – particularly given the undue delay caused by the

IBT's violation of the Atlas CBA.  Second, the IBT relies on a demonstrably inaccurate interpretation

of McCaskill-Bond which ignores an express provision of the statute allowing the IBT to provide an

ISL pursuant to its own merger policy without use of the Allegheny-Mohawk process – a point

acknowledged by an IBT witness at the hearing when he testified that the IBT could provide a

"shortcut procedure" for an ISL if Atlas were willing, as urged by the Union, to forego the Atlas

---

[2] Arbitrator Nicolau's rejection of IBT's "waiver" argument is consistent with the high bar for
waiver of contract terms in cases involving commercial contracts.  *See, e.g., Beth Israel Med.
Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006)
("[W]aiver of a contract right must be proved to be intentional, [and] the defense of waiver
requires a clear manifestation of an intent by plaintiff to relinquish her known right and mere
silence, oversight or thoughtlessness in failing to object to a breach of the contract will not
support a finding of waiver.") (internal quotation marks omitted).

CBA's process for formulating a JCBA under Section 1.F of the Atlas CBA.  (Janger Decl. ¶ 3, Ex. D at Tr. 710-11.)  And the IBT mischaracterizes (at paragraph 40 of the complaint) Arbitrator Nicolau's accurate statement that "Allegheny-Mohawk is not required in this case."  Contrary to the IBT's allegation, Arbitrator Nicolau was not interpreting a federal statute (a subject not argued to him during the arbitration or in the briefs), but rather was interpreting Section 1.F.2.a.i of the Atlas CBA, which plainly does not require use of Allegheny-Mohawk procedures and instead expressly specifies use of the IBT's merger policy – a process that the IBT's witness conceded during the arbitration "could produce a seniority list on very short order."  (Janger Decl. ¶ 3, Ex. D at Tr. 282-83.)

The IBT's allegations ignore that, under the RLA, Arbitrator Nicolau and the Atlas System Board of Adjustment that he chaired had exclusive jurisdiction to interpret the Atlas CBA, resolve disputes regarding its meaning, and issue a remedy that rectifies any breach of the Atlas CBA.  *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Air Line Pilots Ass'n v. Trans World Airlines, Inc.*, 729 F. Supp. 888, 890 (D.D.C. 1989). The scope of a federal court's review of a system board's decision under the RLA is one of the narrowest known to law, *Sheehan*, 439 U.S. at 93-94, and an award can be vacated only on extremely limited grounds: (a) failure to comply with the requirements of the RLA, (b) lack of jurisdiction on the arbitrator's part, or (c) fraud or corruption by the arbitrator.  45 U.S.C. § 153, First (q).  Pursuant to case law, system board decisions may also be subject to review for compliance with law and public policy.  *Nat'l R.R. Passenger Corp. v. Fraternal Order of Police*, *Lodge 189*, 855 F.3d 335, 338 (D.C. Cir. 2017).

The IBT does not plausibly allege facts supporting any of these grounds.  Arbitrator Nicolau's Decision and Award plainly draws its essence from the Atlas CBA, having fully described and considered the triggers and merger obligations in Section 1.F.2 of the Atlas CBA,

as well as the parties' arguments regarding the meaning of those Atlas CBA provisions.  The IBT

is not permitted under the RLA to re-litigate in this Court Arbitrator Nicolau's interpretation of

the meaning of those provisions.  *See Nw. Airlines, Inc.*, 808 F.2d at 78.  And the remedy

imposed by the Decision and Award – requiring the IBT to "promptly" comply with Section

1.F.2 of the CBA by submitting an ISL within 45 days, by "negotiating for a JCBA, and by

submitting unresolved bargaining issues to binding interest arbitration if a JCBA has not been

executed within nine (9) months" – merely enforces the Atlas CBA and falls well within the

jurisdiction of the Atlas System Board.  *See Enter. Wheel & Car Corp.*, 363 U.S. at 597.

Because Arbitrator Nicolau and the Atlas System Board fully complied with their

obligations under the RLA, the IBT's complaint should be dismissed under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Atlas and the IBT are parties to the Atlas CBA covering IBT-represented pilots employed

by Atlas and Polar Air Cargo Worldwide, Inc. (collectively, the "Atlas pilots").  (Complaint

("Compl.") ¶¶ 4, 7, 13; Decision and Award at 4.)  Section 1.F.2(ii) provides that "in the event

the Company decides there will be a complete operational merger between the Company and an

affiliated air carrier, or if the Company notifies the Union of its intent to integrate the

Crewmember seniority lists of the Company and an affiliated air carrier, the following shall

apply . . . ."[3]  (Compl. ¶ 8; Decision and Award at 5.)  Once one of the Section 1.F.2.(ii) triggers

is met, and where, as here, the pilots of the acquired carrier also are represented by the IBT,

"then the parties shall timely begin negotiations to merge the two pre-integration collective

bargaining agreements into one agreement."  (Compl. ¶ 9; Decision and Award at 5-6.)  Any

---

[3] A "complete operational merger" is defined in the CBA as "the combination of all or
substantially all of the assets of the two carriers."  (Decision and Award at 6.)

unresolved collective bargaining issues must be submitted to "binding interest arbitration" within

"nine (9) months from the date that the Union presents to the Company a merged seniority list

that complies with the provisions of this paragraph F.2" (*Id*.)

On January 19, 2016, AAWW, the parent corporation of Atlas, issued a press release

announcing its agreement to acquire Southern, subject to the approval of the Department of

Transportation. (Decision and Award at 1.) As Arbitrator Nicolau found, immediately prior to

this press release, Atlas "advised the IBT, and subsequently the FAA [Federal Aviation

Administration] and the NMB [National Mediation Board], that, following the closing, the

carrier's operations and seniority lists would be in agreement." (Decision and Award at 1-2.)

Arbitrator Nicolau also noted:

> The Company maintains they have repeatedly told the Union that the Company
> decided there would be a complete operational merger with Southern and that the
> Company intended to integrate the carriers' crewmember seniority lists. On
> February 4th, 2016, and on March 15th it passed a Transition Agreement to the
> Union informing it, "Atlas Air has decided there will be a complete operational
> merger," and "and has notified the Union of its intent to integrate the
> crewmember list of the two carriers."

(Decision and Award at 10.) Arbitrator Nicolau went on to find: "The facts show that the

Company did make it clear that a merger was planned. The company also made it clear after the

announcement of the merger that the provisions of the JCBA now prevailed and Section 6

negotiation and any of its requirement were no longer applicable." (*Id,* at 11; *see also* Compl.

¶ 8, 9, 19.) And, as Arbitrator Nicolau further noted, the evidence presented by Atlas at the

arbitration indicated that after the transaction closed, the assets of Atlas and Southern were, in

fact, combined: "[S]hortly after the Southern transaction closed on April 7th, 2016, ownership

of all of Southern's operating physical assets were transferred from Southern to Atlas, . . . as of

June 30th, 2018, Atlas, Polar and Southern had already combined their total assets of $3,589.6

million, such that Atlas held $3,341.2 million, while Polar held only $134.8 million and Southern

held only $113.6 million, [and] [r]eal estate is combined, . . . [and] [e]mployees have been

combined." (Decision and Award at 10 (citations omitted).)

Notwithstanding repeated requests by Atlas, the IBT refused to provide the ISL and

commence negotiations for a JCBA as required by the Atlas CBA's merger provisions, and thus

on April 14, 2016 and January 24, 2017, respectively, Atlas and Southern submitted grievances

against the IBT requesting arbitration hearings before the System Boards of Adjustment at each

carrier. (Compl. ¶¶ 21-22.) The IBT responded by refusing to arbitrate either grievance. (*Id.*)

Atlas and Southern therefore brought a lawsuit in the U.S. District Court for the Southern

District of New York to compel arbitration of their grievances pursuant to the mandate of the

RLA. (*Id.* ¶ 23.) On March 13, 2018, U.S. District Court Judge Katherine B. Forrest ruled in

favor of Atlas and Southern and compelled arbitration of the two grievances before the

respective System Boards. (*Id.* ¶ 24; *Atlas Air, Inc .v. Int'l Bhd. of Teamsters*, 293 F. Supp. 3d

457 (S.D.N.Y 2018).) The IBT's appeal from that ruling is pending before the U.S. Court of

Appeals for the Second Circuit.[4]

The Southern grievance was heard by the Southern System Board over three days in

October 2018, before Arbitrator Richard I. Bloch. (Compl. ¶ 25.) On June 6, 2019, Arbitrator

Bloch issued his Opinion and Award ruling in favor of Southern, and ordered the IBT to produce

an ISL combining the Southern and Atlas pilot seniority lists within 45 days. (Compl. ¶ 26.)

---

[4] The IBT incorrectly alleges that if the Second Circuit reverses the district court's ruling, the
decisions of the Southern and Atlas System Boards of Adjustment regarding the management
grievances "will be null and void." (Compl. ¶ 24.) As a matter of law, any dispute about the
continuing validity of the System Board decisions and awards in those two grievances would
themselves be subject to the jurisdiction of the respective System Boards because such dispute
will require interpretation or application of the parties' collectively bargained agreements.
*Consol. Rail Corp. v. Ry. Labor Execs' Ass'n,* 491 U.S. 299, 303-04 (1989).

The IBT filed a lawsuit seeking to vacate Arbitrator Bloch's decision, Southern filed a motion to dismiss that lawsuit, and that motion is currently pending before this Court.  *See* Mot. to Dismiss Pls.' Compl. and Pet. to Vacate Arbitration Award, *Int'l Bhd. of Teamsters, Airline Div., et al. v. Southern Air, Inc.*, 1-19-CV-01948-CRC, Dkt. 4 (D.D.C. June 26, 2019).

The Atlas grievance was heard by the Atlas System Board over three days in October 2018 before Arbitrator Nicolau, during which "counsel submitted a total of 174 exhibits and, on March 1st, 2019, filed 80+ page briefs, at which point the Record was closed."[5]  (Decision and Award at 3; Compl. ¶ 27.)  Arbitrator Nicolau issued the Decision and Award of the System Board over the dissent of the IBT-appointed member of the Board.[6]  In the Decision, Arbitrator Nicolau, after describing the parties' positions and arguments, concluded that the IBT's "other arguments, no matter how compelling, do not alter the fact the Company, Atlas, complied with the provisions of the CBA.  Therefore, this Board grants the management grievance in its entirety." (Decision and Award at 12.)  In so doing, he held that because Atlas complied with the provisions of the CBA by "mak[ing] it clear that a merger was planned," the IBT was now required "to comply with the merger provisions of Section 1.F.2 of the CBA, including promptly submitting an ISL, negotiating for a JCBA, and submitting unresolved bargaining issues to binding interest arbitration if a JCBA has not been executed within nine (9) months."  (*Id.*)  The Award defined "promptly" as "45 days," which, as Arbitrator Nicolau wrote, was based on his

[5] Arbitrator Nicolau was mutually-selected by Atlas and the IBT pursuant to Section 21.C.3 of the CBA from a standing panel of arbitrators.  (Janger Decl. ¶ 2, Ex. A at 125-26.)  Arbitrator Nicolau is a highly acclaimed labor arbitrator with decades of experience in the airline industry, and previously served as President of the National Academy of Arbitrators.  *See generally*, https://mulaw.missouri.edu/arbitrationinfo/2016/10/12/naa-presents-special-award-to-arbitrator-george-nicolau/; https://arbitrationlaw.com/profile/george-nicolau.

[6]  The IBT-appointed System Board member, Daniel M. Katz, is an attorney who represents the IBT in other matters.  *See, e.g., ABX Air, Inc., v. Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters, Local Union No. 1224, AFL–CIO,* 266 F.3d 392 (6th Cir. 2001).

"experience in these matters and the particular circumstances of this situation, including the size of the pilot units and the time that has passed since the original announcement, the 45 day period is both timely and sufficient to deliver the ISL to the Company."  (*Id.*)  The IBT has subsequently filed the instant complaint, requesting this Court to vacate Arbitrator Nicolau's Award.  (*See generally*, Compl.)

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Spiller v. District of Columbia*, 2019 WL 689778, at *2 (D.D.C. Feb. 19, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Ibrahim v. Mid-Atlantic Air of DC, LLC*, 802 F. Supp. 2d 73, 75 (D.D.C. 2011).  In addition to the complaint, exhibits to the complaint, and matters of public record, in deciding a motion to dismiss, a "court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims."  *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 153 (D.D.C. 2018); *see also Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include . . . documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss") (internal quotation marks omitted).  Additional "documents or information in defendant's motion papers [may be considered without converting the motion to one for summary judgment] if plaintiff has

knowledge or possession of the material and relied on it in framing the complaint." *Smith v. Am. Eagle Airlines, Inc.*, 2008 WL 2600857, at *2 (E.D.N.Y. July 1, 2008) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

In the context of a motion to dismiss a complaint to vacate an arbitration award, the underlying arbitration record has been accepted by courts without converting the motion into a motion for summary judgment. *See Gottlieb v. Janney Montgomery Scott LLC*, No. 06-80941-CIV, 2007 WL 9701991, at *2 (S.D. Fla. Apr. 23, 2007) (considering arbitration transcript and noting "[i]n his response to Defendant's motion, Plaintiff argues that I may not review the underlying arbitration record, and review is limited to the four corners of his 'complaint.' This argument has no merit. Courts have the authority to review the underlying arbitration record in ruling on petitions to enforce or vacate awards."); *Sladek v. Nw. Airlines, Inc.*, No. 01-70 JRT/FLN, 2001 WL 1640054, at *2 (D. Minn. Sept. 21, 2001) ("Defendant's attachment of the transcript of the arbitration hearing does not require the Court to convert defendant's motion to dismiss to a motion for summary judgment. A court may take judicial notice of the transcript as a public record and may rely on that record in determining a motion to dismiss."). Thus, in deciding this motion to dismiss, it is appropriate for this Court to consider the transcript and exhibits of the underlying arbitration proceeding, and the briefs submitted by the parties to Arbitrator Nicolau. (See Compl. ¶ 32; Janger Decl. ¶¶ 3, 5, Exs. B, C, D, F, G.).

The scope of judicial review of arbitration awards under the RLA is "among the narrowest known to the law." *Sheehan*, 439 U.S. at 91; *see also Nw. Airlines, Inc.*, 808 F.2d at 80. Accordingly, pursuant to the RLA, a district court may only vacate a system board's award on narrow grounds: (a) the arbitrator's failure "to comply with the requirements of this chapter" regarding the arbitration process, (b) lack of jurisdiction on the arbitrator's part, or (c) "fraud or

corruption" by an arbitrator.  45 U.S.C. § 153, First (q); *see also Sheehan*, 439 U.S. at 93-94.  In this Circuit, arbitration decisions are also subject to review for compliance with law and public policy.  *Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 855 F.3d 335, 338 (D.C. Cir. 2017); *Nw. Airlines, Inc.*, 808 F.2d at 83 (review on public policy grounds, like review under the RLA's explicit provisions, is narrow).

Given this standard, "the question for a federal court asked to set aside an arbitration award . . . is not whether the arbitrator erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Lyons v. Norfolk & W. Ry. Co.*, 163 F.3d 466, 470 (7th Cir. 1999) (omission in original).  "Indeed, perhaps review is a misnomer; where fraud is not an issue [as here] we ask only whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *United Transp. Union v. Nat'l R.R. Passenger Corp. (Amtrak)*, 588 F.3d 805, 810 (2d Cir. 2009) (citation omitted).  Thus, courts "lack jurisdiction even when we are convinced that the arbitrator 'committed serious error.'" *Nat'l R.R. Passenger Corp.*, 855 F.3d at 341; *see also Nw. Airlines, Inc.*, 808 F.2d at 78 ("[T]he District Court [has] no authority to substitute its judgment for that" of the parties' lawfully designated arbitration panel."); *Pan Am. Airways Corp. v. Air Line Pilots Ass'n*, 206 F. Supp. 2d 12, 19 (D.D.C. 2002) ("A federal court does not have authority to adopt a different interpretation or choose a competing construction from that of the arbitrator"); *Am. Train Dispatchers Ass'n v. Burlington N. R.R. Co.*, 784 F. Supp. 899, 905 (D.D.C. 1992) ("[W]here two interpretations of arbitrators' decisions are possible, one within their clear discretion, and one that could be predicated on another theory, the Supreme Court has indicated that the proper approach is to credit the arbitrators' exercise of discretion.") (citation omitted).

The rationale underlying such limited judicial review is Congress' intent for arbitration to be the exclusive and final venue for settling disputes under collective bargaining agreements. *See Air Line Pilots Ass'n*, 729 F. Supp. at 890.  Permitting courts to have the final say on the merits of arbitration awards would undermine this federal policy.  *See id.*; *see also, Sheehan*, 439 U.S. at 94 ("Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts").

The IBT here purports to assert four causes of action seeking to vacate the Decision and Award, each of which fails to state a claim upon which relief can be granted.

## I. COUNT I MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

In Count I, the IBT asserts that "[t]he Atlas System Board's August 26, 2019 Decision and Award is arbitrary and fails to conform with, and/or confine itself to, matters within the scope of the System Board's jurisdiction." (Compl. ¶ 47.)  The apparent basis for this claim is the IBT's argument that "Atlas Air relied exclusively on Section 1.F.2(i) [which only applies if a specific predicate is met: the Company acquires another air carrier] as the basis for its grievance, thereby waiving reliance upon the other activating events identified in Section 1.F.2(i) and Section 1.F.2(ii) of the 2011 Atlas-Polar CBA," but that "[a]t the arbitration hearing, Atlas Air substantively changed the contractual basis of its grievance," by relying on Section 1.F.2(ii) of the CBA, which triggers the IBT's obligations under Section 1.F.2.b.iii when there is integration between the Company and an affiliated carrier, *e.g.*, a carrier commonly-owned by AAWW regardless of which entity acquires the affiliated carrier.  (Compl. ¶¶ 29-32.)  The IBT alleges that Arbitrator Nicolau "did not address the fact AAWW, not 'the Company' as defined in the 2011 Atlas-Polar CBA, i.e., Atlas Air and Polar together, not only had to have decided to operationally merge Southern into their operations, but that they also both had to have 'acquired' Southern." (Compl. ¶ 35.)  The IBT claims that Arbitrator Nicolau allegedly did not "make this

determination regarding the acquisition of Southern by 'the Company,'" and instead upheld the grievance on a "contractual basis" that the IBT claims was beyond the jurisdiction of the Atlas System Board to decide because Atlas only "shifted to" that basis at the arbitration hearing itself. (Compl. ¶¶ 32, 35.)

Contrary to the IBT's allegation, Arbitrator Nicolau and the Atlas System Board plainly had the jurisdiction – indeed, the exclusive jurisdiction – to consider and reject the IBT's argument that the Section 1.F.2(ii) trigger had been waived. *See, e.g., Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 722-23 (1945); *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963). While the IBT contended in the arbitration and post-hearing briefing that Atlas' grievance somehow waived the Section 1.F.2(ii) triggers, Arbitrator Nicolau considered and did not accept that argument, and instead relied on the factors in Section 1.F.2(ii) – i.e., Atlas' decision that there would be a complete operational merger with Southern, an affiliated carrier commonly owned by Atlas' parent company – in ruling in favor of Atlas. (*See* Janger Decl. ¶ 5, Ex. G at 61-66, Ex. F at 59-63.)

Arbitrator Nicolau's holding is consistent with significant evidence before the System Board that Atlas did not waive its reliance on the Section 1.F.2(ii) triggers. Atlas' grievance broadly alleged that the IBT violated the merger procedures in Section 1.F.2.b.iii for formulating a JCBA – procedures that were expressly triggered by *either* Section 1.F.2(i) (addressing an acquisition by Atlas of another carrier) *or* Section 1.F.2(ii) (addressing Atlas' decision to merge with an affiliated carrier commonly owned by Atlas' parent company, such as Southern). The circumstances described in Section 1.F.2(ii) that trigger the Section 1.F.2.b.iii merger procedures were specifically addressed by Atlas in the written grievance itself, and in an attached March 15, 2016 Transition Agreement proposal which stated that "WHEREAS, as Atlas Air has decided

there will be a complete operational merger between Atlas Air and Southern Air and has notified the Union of its intent to integrate the crew member seniority lists of the two carriers. . . ." (Janger Decl. ¶ 4, Ex. E (Jt. Ex. 1 at 5 (¶ 8); Jt. Ex. 1 at Ex. 6, 1 (attached Transition Agreement proposal).)  As Atlas further argued to Arbitrator Nicolau, Section 21.B.3 of the Atlas CBA states that the Atlas System Board has jurisdiction over "the issue(s) addressed in the written grievance filed pursuant to Section 20 and any issues arising from the subsequent processing of the grievance."  (Janger Decl. ¶ 2, Ex. A (Atlas CBA) § 21.B.3.)  Atlas' reliance on the Section 1.F.2(ii) triggers was made clear during the processing of the grievance, including in the federal court complaint and briefing to Judge Forrest (Janger Decl. ¶ 6, Exs. H at ¶ 17, I at 22 n.4, J at 7 n.4 (Co. Exs. 60, 64 and 65)), and during the arbitration hearing (Janger Decl. ¶ 3, Ex. B at Tr. 101-04, 108-09, 129-32).

Arbitrator Nicolau's holdings also acknowledge the IBT's arguments and recognize the distinction the IBT sought to make between the terms Atlas, "the Company," and AAWW.  For instance, he used carefully selected words in holding that "The CEOs of *Atlas, Polar and Southern*, with guidance of AAWW, have the authority to determine whether to merge the carriers from a labor perspective.  AAWW's decision to merge the operations of the two carriers did not preclude *the Company* from also deciding, as it did in the labor context, that there would be a complete operational merger between *the Company* and Southern."  (Decision and Award at 12 (emphasis added).)  Thus, he found, the "Company," defined in the Atlas CBA as Atlas and Polar, made the triggering decisions under Section 1.F.2(ii).  Arbitrator Nicolau went on to hold that "[t]he [IBT's] other arguments, no matter how compelling, do not alter the fact the Company, Atlas, complied with the provisions of the CBA."  (*Id*.)  After acknowledging that the Company was relying on the Section 1.F.2.(ii) trigger, as well as the IBT's argument that Polar

had not notified the IBT of its intent to integrate, and recognizing the distinction between Atlas,

AAWW and the "Company," Arbitrator Nicolau concluded that the IBT's obligations under

Section 1.F.2.b.iii had been triggered.  (*Id.*)

While the IBT alleges that Arbitrator Nicolau did not fully address all of its arguments,

there is no legal requirement that an arbitrator specifically address each (or any) of a parties'

arguments in rendering his ultimate decision.  *See U.S. Airline Pilots Ass'n v. U.S. Airways, Inc.*,

604 F. App'x 142, 147 n.10 (3d Cir. 2015) ("To the extent that USAPA challenges the

Arbitrator's failure to specifically 'cite or discuss' the 'full force and effect' language of LOA 93

in the Award, . . . '[w]e note that 'arbitrators have no obligation to the court to give their reasons

for an award.'"); *Affymax, Inc. v. Ortho-McNeil-Jannssen Pharm., Inc.*, 660 F.3d 281, 285 (7th

Cir. 2011) ("No rule of law requires arbitrators to render opinions—or, having chosen to write an

opinion, to discuss every issue that the parties contested. . . . Many an arbitration ends with an

award saying who won but omitting reasons."); *Elam v. Nat'l R.R. Passenger Corp.*, 220 F.

Supp. 3d 996, 1002 (N.D. Cal. 2016) ("[A]rbitrators are not required to make the sorts of explicit

or exhaustive 'findings of fact' and the reasons for arbitral rulings need not be spelled out in

detail.  Indeed, [a]rbitrators have no obligation . . . to give their reasons for an award at all." )

(internal quotations and citations omitted); *Dietrich v. Soo Line R.R. Co.*, No. CV 15-1875

(PJS/BRT), 2016 WL 1169557, at *9 (D. Minn. Mar. 4, 2016) ("While the NRAB is required to

interpret and apply the relevant collective bargaining agreement, this Court cannot presume that

it shirked that responsibility from its failure to make explicit findings in support of its

conclusions that Dietrich's claims were 'without merit.' . . . To conclude otherwise would

eviscerate the rule that [a]rbitrators have no obligation . . . to give their reasons for an award by

effectively requiring them do just that under pain of having their awards reversed.") (internal

quotations and citations omitted); *United Transp. Union v. BNSF Ry. Co.*, No. C10-5808RBL, 2015 WL 6121564, at *9 (W.D. Wash. Sept. 24, 2015) ("Arbitrators are not required to give their reasons for an award, and so certainly are not required to address every argument made by a party."). Even though the IBT disagrees with Arbitrator Nicolau's decision that the IBT's arguments were insufficient to avoid application of Section 1.F.2.b.iii, "[a] federal court does not have authority to adopt a different interpretation or choose a competing construction from that of the arbitrator." *Pan Am. Airways Corp.*, 206 F. Supp. 2d at 19.

Moreover, to the extent the IBT alleges that the remedy imposed on the IBT fails to draw its essence from the Atlas CBA, the IBT is wrong. As the Supreme Court has made clear, an arbitrator's authority to craft a remedy is subject to substantial deference:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

*Enter. Wheel & Car Corp.*, 363 U.S. at 597. Thus, when a party breaches a CBA, and the remedy ordered by the arbitrator cures the breach, that remedy draws its essence from the CBA. *See Dexter Axle Co. v. Int'l. Ass'n. of Machinists Workers, Dist. 90, Lodge 1315,* 418 F.3d 762, 769 (7th Cir. 2005) ("It would make no sense for the arbitrator to be helpless to provide redress for the company's breach.").

Arbitrator Nicolau's remedy is soundly grounded in his interpretation of the Atlas CBA. At no point did Arbitrator Nicolau assert that the 45-day time frame for producing the ISL was a term to be added to the Atlas CBA, or that it was an implied or agreed-upon term of the Atlas CBA. Instead, Arbitrator Nicolau required the IBT to produce an ISL "promptly" as part of a reasonably-formulated remedy intended to rectify the IBT's persistent and long-standing breach

of the Atlas CBA. Arbitrator Nicolau rested his decision to define "promptly" as 45 days "based on the Chairman's experience in these matters and the particular circumstances of this situation, including the size of the pilot units and the time that has passed since the original announcement, the 45 day period is both timely and sufficient to deliver the ISL to the Company." (Decision and Award at 12.) Arbitrator Nicolau's remedy considered the particular facts before him and was a fair solution to the problem created by the IBT's persistent non-compliance with Section 1.F.2 of the Atlas CBA.

If the IBT were correct that Arbitrator Nicolau had no authority to fashion the remedy he did, then Section 1.F.2 of the Atlas CBA would be rendered meaningless and unenforceable. It is axiomatic that "as with all contracts, courts should attempt to read CBAs in such a way that no language is rendered superfluous." *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir. 2000). Here, that is what Arbitrator Nicolau did – he gave meaning to Section 1.F.2 of the Atlas CBA by requiring the IBT to comply with its terms.[7]

## II.   COUNT II MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

In Count II, the IBT alleges that the remedy for the Union's failure to comply with Section 1.F.2.b.iii, i.e., "directing the Union to complete and present an integrated seniority list to Atlas Air violates federal law, including the McCaskill-Bond statute and the Railway Labor Act." (Compl. ¶ 49.) This is because, the IBT asserts, "[t]o avoid conflicts of interest and

---

[7] In addition, contrary to the IBT's apparent claim (*see* Compl. at 2) that the Decision and Award "fails to meet due process requirements," the due process rights of the IBT and the pilots it represents have not been compromised. Arbitrator Nicolau, like Arbitrator Bloch in the Southern case, did not consider or decide the contractual rights of the pilots under the other carrier's CBA, and each group of pilots has had a full hearing and opportunity to argue their position regarding the meaning of its own CBA's merger provisions before its own duly constituted System Board of Adjustment.

potential breach(es) of its duty of fair representation such as are present here, where the Union

represents the pilot groups on both sides of a seniority integration, the affected work groups

themselves form their own seniority integration committees and then directly negotiate with each

other to attempt to reach an integrated list without resort to binding arbitration.  Those work

groups, however, have the federally-protected right to seek binding arbitration to resolve disputes

over the development of such an integrated seniority list."  (Compl. ¶ 42.)

  The IBT's allegation regarding the requirements of the McCaskill-Bond statute are not

correct.  Where, as here, the same union represents both pre-merger groups, McCaskill-Bond

expressly permits use of the union's own merger policy – in lieu of the Allegheny-Mohawk

procedures involving negotiation and interest arbitration between the pre-merger employee

groups – for integrating seniority lists.[8]  49 U.S.C. § 42112, Note 117(a)(1).  Consistent with that

statutory provision, the Atlas CBA itself expressly requires that where the same union represents

the pilots of both pre-merger carriers, "the Union's Merger Policy shall be utilized to integrate

the two seniority lists."[9]  (Decision and Award at 5 (quoting Atlas CBA §1.F.2.a.i).)

  Notably, not once during the arbitration hearing or in post-hearing briefing to Arbitrator

Nicolau did the IBT ever argue that the Allegheny-Mohawk process for formulating the ISL

must be followed, or that the Union did not have a policy that would allow for an expedited

---

[8] Sections 3 and 13 of the Allegheny-Mohawk labor-protective provisions require negotiation, and if needed. interest arbitration, between the two pre-merger employee groups with regard to formulation of an integrated seniority list.  *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 472 (2d Cir. 2016).

[9] Had the pilots of one of the carriers been represented by a different union, the Atlas CBA would have required use of "Allegheny-Mohawk Labor Protective Provisions, Sections 3 and 13 unless the two labor organizations mutually agree to utilize an alternative method."  (Janger Decl. ¶ 2, Ex A at 7 (CBA § 1.F.2.a.ii).)  But that section of the Atlas CBA is not applicable here.

formulation of the ISL.[10]   At the arbitration hearing, Dan Wells, President of IBT Local 1224,

expressly conceded that while the IBT Airline Division did not have a formal "written policy," it

did have a past practice whereby the IBT used a simple date-of-hire approach to integrate

seniority lists without application of the Allegheny-Mohawk procedures.  (Janger Decl. ¶ 3, Ex.

D at 670-72.)  Further, Arbitrator Nicolau heard unrebutted testimony that Mr. Wells told Atlas

representatives that if Atlas "were willing to forego Section 1.F" then "they believe[d] they could

produce a seniority list on very short order."[11]   (Janger Decl. ¶ 3, Ex. C at Tr. 282-83.)  Captain

Wells testified that there was available to him a "shortcut procedure," whereby the IBT could

"provide a sort of golden pathway forward that would enable me to bring a lot of those

[seniority] procedures together quickly and get it done."  (Janger Decl. ¶ 3, Ex. D at Tr. 710-11.)

 Thus, based on this evidence, it was entirely reasonable for Arbitrator Nicolau to

conclude that the IBT had the ability promptly to provide an ISL within a 45-day period, and that

---

[10] *See U. Steelworkers of Am. v. Smoke–Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981)
("Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and
then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before
the  arbitrator.  To rule otherwise would be to thwart the national labor policy of encouraging the
expeditious private arbitration of labor disputes without resort to the courts.") (internal citations
omitted); *Bhd. of Maint. of Way Employees v. Union Pac. R. Co.*, No. CIV.A. 303CV0417D,
2004 WL 2296952, at *8 (N.D. Tex. Oct. 6, 2004) ("Courts have held that a party's failure to
raise a defense at arbitration to a remedy considered by the arbitrator prevents the party from
later relying on the defense in an enforcement proceeding.").

[11] In addition, Arbitrator Nicolau heard testimony that in 2016, the Union told Atlas the
integrated seniority list was then "all but complete and that if we [Atlas] were willing to forego
and pursue a different path, that he believed they could put this seniority list together in short
order in about a couple of weeks."  (Janger Decl. ¶ 3, Ex. B at Tr. 196.)  Captain Wells went so
far as to tell Atlas' management that "he had the list, it would take a couple of days, two to three
days, but ***hell would freeze over before [Atlas] got it***."  (Janger Decl. ¶ 3, Ex. D at Tr. 567
(emphasis added).)

under the terms of the Atlas CBA, "Allegheny-Mohawk is not required in this case."[12]  (Decision

and Award at 12.)[13]

## III.    COUNT III MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

In Count III, the IBT alleges that "[t]he Union, as representative of the Southern pilot

group, and the Southern pilot group itself are not subject to the jurisdiction of the Atlas System

Board of Adjustment and the Atlas System Board's August 26, 2019 Decision and Award does

not apply to them with respect to their obligations under the 2012 Southern CBA."  (Compl.

¶ 51.)  In its Prayer for Relief, the IBT requests a declaration "that the Union in its capacity as

the exclusive representative of the Southern pilot group and the Southern pilot group itself,

legally need not abide by or implement the remedy set forth in the August 26, 2019 Atlas System

Board Decision and Award because the Atlas System Board of Adjustment does not have

---

[12] The IBT alleges that if the IBT complies with the Decision and Award by "institutionally construct[ing] a fairly and equitably integrated seniority list and imposed it on those two work groups, it would face a significant risk of liability for breaching its duty of fair representation to one or both groups."  (Compl. ¶ 41.)  Defendant is unaware of any precedent for imposing liability on a union for mere compliance with an arbitration award properly issued by a system board pursuant to the mandate of the RLA, 45 U.S.C. § 184.  Indeed, it is impossible to see how doing so would meet the legal standard for breach of a union's duty of fair representation.  *See Wright v. Nat'l R.R. Passenger Corp.,* 330 F. Supp. 3d 463, 474 (D.D.C. 2018) (breach of duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.") (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).  Moreover, the mere presentation of an ISL in order to initiate the JCBA process, as ordered by the Decision and Award, cannot possibly create a ripe DFR claim, given that the ISL could be subject to change during the JCBA formulation process well before its implementation.  *See Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (pilots' DFR claim based on union's seniority proposal was not ripe where matter presented "contingencies that could prevent effectuation" of the seniority proposal).

[13] The IBT alleges that Arbitrator Nicolau's statement regarding Allegheny-Mohawk constituted an interpretation of a federal statute and not the Atlas CBA.  That is not plausibly correct.  The meaning of the federal statute was not briefed or argued to Arbitrator Nicolau.  The testimony and record evidence focused exclusively on the terms of the Atlas CBA and the IBT's past practice – upon which Arbitrator Nicolau was commenting.

jurisdiction over the Southern pilot group with respect to their rights and obligations under the 2012 Southern CBA, and the August 26, 2019 Atlas System Board of Adjustment Decision and Award improperly imposes obligations on them that arise, if at all, only from their own collective bargaining agreement, i.e., the 2012 Southern CBA."  (Compl. Prayer for Relief ¶¶ C.)

The IBT's claims in this regard mischaracterize the limited scope of Arbitrator Nicolau's Decision and Award.  Arbitrator Nicolau did nothing more than order the IBT to comply with Section 1.F of the Atlas CBA – which he certainly had the authority and responsibility to do once he found that the IBT was obligated to comply with Section 1.F.2.b.iii and had refused to do so. *Brewery & Beverage Drivers Local 67 v. Canada Dry Potomac Corp.*, 628 F. Supp. 73, 75 (D.D.C. 1986) (where arbitrator finds breach of the CBA, "it is now the duty of the arbitrator to fashion an appropriate remedy").  Such compliance requires that the IBT present the ISL to Atlas within 45 days and commence a nine-month period for negotiation of the JCBA (plus an additional period for interest arbitration of any unresolved bargaining proposals).  At no point did Arbitrator Nicolau purport to resolve the merger issues under the Southern-IBT CBA, nor did he in any manner usurp the jurisdiction of the Southern System Board of Adjustment (chaired by Arbitrator Bloch) to resolve those issues.  Rather, the Southern System Board issued its own award requiring the IBT to participate in formulation of an ISL and a JCBA – "by way of remedy in response to the observed violation, [the Southern System Board] set[s] a time of 45 days for the Union to produce the integrated seniority list.  At that point, in accordance with these parties' agreement, the 9-month negotiation window will commence," to be followed by interest arbitration if necessary.  *See* Compl. Ex. 3, *Int'l Bhd. of Teamsters v. Southern Air, Inc.*, No. 1:19-cv-01948-CRC, Dkt. 1-3 (D.D.C. June 28, 2019).

Given that there is no plausible basis for concluding that Arbitrator Nicolau's Decision and Award exceeded the Atlas System Board's jurisdiction or infringed on the Southern pilots' rights, Count III must be dismissed for failure to state a claim upon which relief can be granted.

## IV.    COUNT IV MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

In Count IV, the IBT alleges that the Award, and any effort to enforce it, violates "RLA Section 204, 45, U.S.C. § 184, as well as the status quo provisions of RLA Sections 2, First, Seventh and Section 6 of the RLA, 45 U.S.C. § 152, First, 152, Seventh, and § 156.  The status quo violations at issue in this action include the arbitrary and frivolous addition, subtraction and amendment of substantive terms of the 2011 Atlas-Polar CBA, as well as the directive that the Union cease RLA Section 6 negotiations."  (Compl. ¶ 53.)  The complaint, however, does not plausibly present any facts to support that allegation.

Section 204 of the RLA requires the carrier and the union to, *inter alia,* "establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title." 45 U.S.C. § 184.  To the extent the IBT claims that the Decision and Award violates Section 204 because it usurps the jurisdiction of the Southern System Board, that is demonstrably not supported by the terms of the Decision and Award – as discussed in Section III above, Arbitrator Nicolau's remedy only imposes an obligation to comply with Section 1.F.2 of the Atlas CBA, and does nothing to interfere with the jurisdiction of the Southern System Board to interpret and apply the Southern CBA.  In fact, as noted above, Arbitrator Nicolau's enforcement of the merger provisions in the Atlas CBA is entirely consistent with the Southern System Board's enforcement of similar merger provisions in the Southern CBA, including a 45-day period for producing the ISL.

Moreover, the IBT has made no plausible allegation that Section 2, Seventh and Section 6 of the RLA have been violated by the Decision and Award.  Those sections of the RLA proscribe "[c]hange[s] in pay, rules, or working conditions contrary to agreement."  45 U.S.C. § 152, Seventh; *see also* 45 U.S.C. § 156 ("rates of pay, rules, or working conditions shall not be altered").  The Decision and Award, however, compels no such changes.  Rather, by its terms, the Decision and Award only compels the IBT to provide Atlas with an ISL within 45 days and commence negotiations for a JCBA in accordance with Section 1.F.2 of the Atlas CBA.  As discussed in Section I, above, this remedy is based soundly on Arbitrator Nicolau's determination regarding how to enforce the requirements of the CBA, and thus does not in any way modify the terms of the CBA.

Further, the Decision and Award does not plausibly violate the status quo provisions under the RLA by requiring the IBT to comply with its contractual obligation to formulate a JCBA through the process described in Section 1.F.2.b.iii of the Atlas CBA.  Section 2, Seventh of the RLA expressly provides that carriers and unions may reach "agreements" regarding the bargaining procedures to be used even if they differ from the normal procedures under Section 6 of the RLA, such as is provided in Section 1.F of the Atlas CBA:  "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed *in such agreements or in section 156 [Section 6] of this title*." 45 U.S.C. § 152, Seventh (emphasis added).  Therefore, courts routinely find collectively-bargained provisions that prescribe a different manner of achieving a collective bargaining agreement than traditional RLA Section 6 procedures to be valid.  *See, e.g., Seaboard World Airlines, Inc. v. TWU*, 443 F.2d 437, 439 (2d Cir. 1971) (CBA providing that agreement could only be reopened for negotiation after a certain date and only with respect to compensation

was valid under the RLA); *Trans Int'l Airlines, Inc. v. IBT*, 650 F.2d 949, 960-61 (9th Cir. 1980)

(enforcing contract provision prohibiting strikes even when permitted under the RLA because

"[t]he RLA does not . . . preclude the parties from adopting a different procedure by contract");

*ALPA v. Alaska Airlines, Inc.*, 2005 WL 2898140, at *1 (W.D. Wash. Oct. 28, 2005) ("The

[RLA] . . . allows parties to follow their own contractually negotiated procedures for amending

their [CBAs] in lieu of the lengthy procedures set forth in the statute.  For nearly thirty years,

ALPA and Alaska have engaged in interest arbitration concerning various issues they were

unable to resolve in direct negotiations.").

Moreover, contrary to the IBT's allegations, Section 1.F.2.b.iii of the Atlas CBA provides

no exception for a situation where, as here, the Union has sent RLA Section 6 notices to amend

the pre-merger CBA and  RLA Section 6 negotiations have commenced.[14]  While the IBT argued

for such an exception in the arbitration, Arbitrator Nicolau did not infer such an exception where

there was no evidence the parties even discussed, much less agreed to, such an exception while

bargaining for Section 1.F of the Atlas CBA.

In Count IV, the IBT also claims that as a result of these alleged violations of the RLA, it

is entitled to injunctive relief enjoining enforcement of the Decision and Award.  (Compl. ¶¶ 53-

57.)  Even if the current Motion to Dismiss is not granted, the IBT's claim for injunctive relief

must be denied because the IBT has failed to state a plausible claim for such injunctive relief.

To obtain a preliminary injunction in this Circuit, the Court must determine whether: "(1) the

plaintiff has a substantial likelihood of success on the merits; (2) the plaintiff would suffer

---

[14] AAWW's announcement of its acquisition of Southern came on the same day that Atlas and the IBT met for initial negotiations for an amended CBA pursuant to the CBA's early reopener provisions.  (Compl. ¶¶ 14, 15.)  Atlas did not receive a Section 6 notice from the IBT until March 7, 2016.  (Janger Decl. ¶ 3, Ex. B at Tr. 189-90.)

irreparable injury were an injunction not granted; (3) an injunction would substantially injure other interested parties; and (4) the grant of an injunction would further the public interest." *Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891, 893 (D.C. Cir. 2010) (citation omitted).  A permanent injunction requires a plaintiff to prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau,* 785 F.3d 684, 694 (D.C. Cir. 2015).  The IBT's allegations do not satisfy those legal standards.

First, as demonstrated in Sections I, II, and III above, the IBT does not have a substantial likelihood of success on the merits of its claim that the Decision and Award must be vacated. The Decision and Award draws its essence from the CBA, as made clear by the detailed description of the parties' arguments and finding that the trigger for  the IBT's obligations under Section 1.F.2.b.iii of the Atlas CBA had occurred.  The IBT's dissatisfaction with the result does nothing to undermine the validity of the Decision and Award.  *See Nat'l R.R. Passenger Corp.*, 855 F.3d at 338; *see also Nw. Airlines, Inc.*, 808 F.2d at 78.  As described above, Arbitrator Nicolau did not purport to resolve any issues under the Southern CBA, and his remedy vis-à-vis the IBT does not affect the pilots' terms and conditions of employment or due process rights. Rather, both the Atlas System Board and the Southern System Board, in the exercise of their jurisdiction under the RLA and their respective CBAs, have merely ordered that the IBT comply with their obligations under the respective CBAs.

Second, because the IBT has not plausibly alleged that the pilots' status quo terms and conditions of employment will be affected or altered by the IBT's compliance with the Decision

and Award, the traditional showing of irreparable injury must be made.  Irreparable injury has

not been adequately alleged here.  The Decision and Award only requires that the IBT provide an

ISL for the purpose of commencing a nine-month negotiation process, followed by an interest

arbitration if necessary.  The Decision and Award does not in any manner require the actual

implementation of the ISL, which will be subject to contingencies, i.e., the completion of the

JCBA process, including any possible revisions.  There will be ample time, therefore, for this

Court to assess the parties' respective positions vis-à-vis the IBT's Petitions to Vacate the two

System Board awards prior to implementation of a JCBA or an ISL.[15]

Third, contrary to the IBT's allegations (Compl. ¶¶ 54-55), an injunction is not needed to

prevent injury to the Atlas or Southern pilots.  The IBT alleges that "compelling the Union to

extinguish the contractual rights of the Atlas-Polar pilot group regarding a dispute with their

company over whether they are required to engage in contractual merger negotiations for a joint

collective bargaining agreement with the Southern pilot group and engage in seniority integration

negotiations with the Southern pilot group, [will] thereby undermin[e] the Union's status as both

pilot groups' collective bargaining representative and subject[] the Union to potential liability for

breaching its duty of fair representation to both pilot groups."  (Compl. ¶ 55.)  The IBT is not being

"compelled" to extinguish any contractual rights by virtue of the Decision and Award.  Rather, it

is being "compelled" to comply with the Atlas CBA, just as it was "compelled" to comply with

the Southern CBA by Arbitrator Bloch.  In such circumstances, there will be no loss of

contractual rights imposed on any pilot group by the IBT's compliance with the two outstanding

---

[15] The IBT alleges "irreparable injury to the statutory purposes and machinery of the RLA." (Compl. ¶ 54.)  Not only does the IBT state no basis for this claim, it is entirely irrelevant to the injunctive relief analysis.  For both a preliminary and permanent injunction, the only "irreparable injury" to be considered is that which would allegedly occur to *plaintiffs* in the absence of an injunction.  *Sottera*, 627 F.3d at 893; *Morgan Drexen,* 785 F.3d at 694.

awards, and no plausible basis for inferring that the IBT cannot fairly and equitably formulate an

ISL that meets its contractual obligations on a fair basis for each pilot group it represents.

Finally, an injunction will not plausibly benefit the public interest.  The IBT suggests that

an injunction will further the public interest in stable labor relations.  The opposite is true.  The

finality of statutorily-required arbitration awards is a central tenet of the RLA.  *See Air Line*

*Pilots*, 729 F. Supp. at 890; *see also, Sheehan*, 439 U.S. at 93-94.  Enjoining application of a

validly-issued award will do nothing more than undermine the RLA's very purposes in assuring

that stability.

## <u>CONCLUSION</u>

For these reasons, the IBT has failed to state a plausible claim.  Because its proposed

claims are deficient as a matter of law, amendment would be futile.  Atlas thus respectfully

requests that this Court dismiss the complaint with prejudice pursuant to Rule 12(b)(6).

Dated:   October 11, 2019               Respectfully submitted,
         Washington, D.C.

By:   ___/s/ Robert A. Siegel_____
    Robert A. Siegel
    (D.C. Bar #1004474)
    Rachel S. Janger
    (D.C. Bar #467142)

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
rsiegel@omm.com
rjanger@omm.com

*Attorneys for Defendant Atlas Air, Inc.*