**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF TEAMSTERS, AIRLINE DIVISION,** | ) | |
| **et al.,** | ) | |
| | ) | **CASE NO. 1:19-CV-02723-CRC** |
| **Plaintiffs,** | ) | |
| | ) | **JUDGE CHRISTOPHER R. COOPER** |
| **v.** | ) | |
| | ) | |
| **ATLAS AIR, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**

**TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.   INTRODUCTION .................................................................................................... 1

II.   THE COURT MUST DISREGARD THE EVIDENTIARY MATTERS OUTSIDE OF THE PLEADINGS ATTACHED TO DEFENDANT'S MOTION TO DISMISS AND DECIDE THE MOTION AS A MOTION TO DISMISS .......................................................... 2

III.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED .................................. 6

   A.   STANDARD OF REVIEW WITH RESPECT TO RULE 12(b)(6) MOTION ............... 6

   B.   STANDARD OF REVIEW FOR VACATION OF AN ARBITRATION AWARD ...... 7

   C.   THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' FIRST CLAIM BECAUSE PLAINTIFFS HAVE PROPERLY PLEADED THAT THE SBA EXCEEDED ITS JURISDICTION UNDER THE ARBITRAL SUBMISSION ................................................................................................... 8

   D.   THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' SECOND CLAIM BECAUSE PLAINTFFS HAVE PROPERLY PLEADED THAT THE AWARD IS CONTRARY TO FEDERAL LAW AND PUBLIC POLICY .......... 9

   E.   THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' THIRD CLAIM BECAUSE PLAINTIFFS HAVE PROPERLY PLEADED THAT THE AWARD EXCEEDED THE JURISDCTION OF THE SBA BY AFFECTING THE RIGHTS OF SOUTHERN AIR PILOTS OVER WHICH THE ATLAS SBA HAS NO AUTHORITY ................................................................................................. 10

   F.   THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' FOURTH CLAIM AS PLAINTIFFS HAVE PROPERLY PLEADED THAT THE AWARD VIOLATES THE RLA .................................................................. 13

   G.   DEFENDANT FAILED TO REFUTE PLAINTIFF'S CLAIM FOR PRELIMINARY AND INJUNCTIVE RELIEF ......................................................................... 19

IV.   CONCLUSION ..................................................................................................... 21

## **TABLE OF AUTHORITIES**

**CASES**

*ALPA v. Alaska Airlines, Inc.,* 2005 WL 2898140 (W.D. Wash. Oct. 28, 2005)…………...……17

*Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320 (1972)……………….…………3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………….………6,7

*In re APA Assessment Fee Litig.*, 862 F.Supp.2d 1 (D.D.C. 2012)…………………...………..4

*Atlas Air, Inc. v. International Brotherhood of Teamsters*, 280 F.Supp.3d 59 (D.D.C. 2017)…..20

*Bailey v. CitiMortgage, Inc.,* 13 F.Supp.3d 29 (D.D.C. 2014)…………………………...……..4

*Banneker Ventures, LLC v. Graham*, 798 F. 3d 1119 (D.C. Cir. 2015)……………...…………3,6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………...……..6,7

*Billups v. Laboratory Corporation of America*, 233 F.Supp.3d 20 (D.D.C. 2017)……...……..4

*Browning v. Clinton*, 292 F. 3d 235 (D.C. Cir. 2002)………………………………….………6

*Busby v. Capital One, N.A.,* 932 F. Supp. 2d 114 (D.D.C. 2013)………………………….……..4

*Consolidated Rail v. Railway Labor Execs.*' Ass'n, 491 U.S. 299 (1989)………………………20

*CSX Transportation, Inc. v. Williams*, 406 F. 3d 667 (D.C. Cir. 2005)…………………………20

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621 (D.C. Cir. 1997)……………………3

*Erickson v. Pardus*, 551 U.S. 89 (2007)…………………………………………….………..6

*Ghori-Ahmad v. U.S. Com'n on Intern. Religious Freedom*, 969 F.Supp.2d 1120 (D.D.C. 2013)
…………………………………………………………………………………...……..4

*Gottlieb v. Janney Montgomery Scott LLC*, 2007 WL 9701991, at *2 (S.D. Fla. 2007)…….……5

*Hinton v. Corr. Corp. of Am.,* 624 F. Supp. 2d 45 (D.D.C. 2009)…………………..……………5

*Kaempe v. Myers,* 367 F.3d 958 (D.C. Cir. 2004)…………………………………………3,5

*Libre By Nexus v. Buzzfeed, Inc.,* 311 F. Supp. 3d 149 (D.D.C. 2018)…………………………3,5

*Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 855 F.3d 335 (D.C. Cir. 2017)………………………………………………………………………………………8

*Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F. 2d 76 (D.C. Cir. 1987)……..……..7

*Prince George's Hosp. Ctr. v. Advantage Health Plan, Inc.,* 865 F.Supp.2d 47 (D.D.C.2012)..…4

*Seaboard World Airlines, Inc. v. TWU*, 443 F.2d 437 (2d Cir. 1971)………………...………17

*Sladek v. Nw. Airlines, Inc.,* 2001 WL 1640054, at *2 (D. Minn. 2001)…………………………5

*Smith v. Am. Eagle Airlines, Inc.*, 2008 WL 2600857, at *2 (E.D.N.Y. July 1, 2008)……………4

*S. Ry. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 337 F.2d 127 (D.C. Cir. 1964)…..….20

*Strumsky v. Washington Post Co.,* 842 F.Supp.2d 215 (D.D.C. 2012)…………………………4

*Trans Int'l Airlines, Inc. v. IBT,* 650 F.2d 949 (9th Cir. 1980)………………...………………17

*Trudeau v. FTC*, 456 F. 3d 178 (D.C. Cir. 2006)…………………………………...…………3

*Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89 (1978)………………………………………..7

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29 (1987)……………………………8

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004)………………………………..7

## STATUTES

Railway Labor Act, 45 U.S.C. §151, *et seq*………………………………………………*passim*

Railway Labor Act, 45 U.S.C. §152, Seventh…………………………………..…….13,14,15

Railway Labor Act, 45 U.S.C. §153, First (p) and (q)…………………………………………8

Railway Labor Act, 45 U.S.C. § 155……………………………………………….………15

Railway Labor Act, 45 U.S.C. §156…………………………..…………..13,14,15

Railway Labor Act, 45 U.S.C. § 184………………………………………...…………13,14

McCaskill-Bond Amendment, 49 U.S.C. §42112………………………………….1,9,13,17

## RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6)…………………………………..…….………..……………..3,9

Fed. R. Civ. P. 12(d)……………………………………….……….………………..3

## SECONDARY SOURCES

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004)…………………………………..…………………….7

**NOW COME** Plaintiffs International Brotherhood of Teamsters, Airline Division, International Brotherhood of Teamsters and International Brotherhood of Teamsters, Local 2750 (hereinafter "Plaintiffs"), by and through the undersigned counsel, and hereby file this Memorandum in Opposition to the Motion to Dismiss of Defendant Atlas Air, Inc. (hereinafter "Defendant"), filed October 11, 2019.  Doc. 7.

## I.   INTRODUCTION

On September 11, 2019, Plaintiffs International Brotherhood of Teamsters, Airline Division ("IBT") and Airline Professionals Association, Teamsters Local 1224 ("Local 1224") filed their Complaint in this action against Defendant Atlas Air, Inc. ("Atlas", "Company" or "Defendant"). Doc. 1.  On October 11, 2019, the IBT chartered IBT Local 2750 ("Local 2750") to represent Atlas pilots, removing responsibility for representing them from Local 1224.  On October 28, 2019, the IBT filed a motion to substitute Local 2750 as a party for Local 1224, and on October 31, 2019, the Court granted this motion.  Doc. 11. Thus, IBT and Local 2750 (collectively, the "Union") are Plaintiffs in this matter while Local 1224 is no longer a Plaintiff.

This case arises from a Decision and Award ("Award") issued by the Atlas Airlines System Board of Adjustment ("Atlas SBA"), an arbitration tribunal chaired by neutral Arbitrator George Nicolau, who was assisted by a Company-appointed and a Union-appointed SBA member. That Award issued on August 26, 2019 and was signed by Arbitrator Nicolau and the Company-appointed SBA member; the Union-appointed SBA member dissented. On its face, the Award contains a number of fatal flaws that cause it to violate the Railway Labor Act, 45 U.S.C. §151, *et seq.* ("RLA"), and the McCaskill-Bond Amendment, 49 U.S.C. §42112 ("McCaskill-Bond"), rendering it unenforceable.  Accordingly, Plaintiffs filed the instant action to vacate the

1

Award on or about September 11, 2019. Rather than filing an answer and/or counterclaim, on October 11, 2019, Defendant filed the instant motion to dismiss (the "Motion") under Fed. R. Civ. R. 12(b)(6).

On October 25, 2019, Defendant then filed its own complaint against Plaintiffs to enforce the Award in this case as well as a related case in which Plaintiffs challenged an arbitrator's award rendered by the Southern Air System Board of Adjustment regarding the integration of Atlas and Southern Air pilots. See *Atlas Air et al. v. International Brotherhood of Teamsters, Airline Division, et al.*, Case 1:19-cv-03223-CRC.  On October 31, 2019, Defendant moved for summary judgment in that case. The Court there stayed summary judgment briefing pending resolution of this Motion as well as the Defendant's Motion to Dismiss in the related case of *International Brotherhood of Teamsters, et al. v. Southern Air, Case No.* 1:19-cv-2723-CRC.

For the following reasons, Defendant's Motion should be denied.

## II.   THE COURT MUST DISREGARD THE EVIDENTIARY MATTERS OUTSIDE OF THE PLEADINGS ATTACHED TO DEFENDANT'S MOTION TO DISMISS AND DECIDE THE MOTION AS A MOTION TO DISMISS

Ironically here, Defendant asserts that Plaintiffs are attempting in their Complaint to "re-litigate" the arbitration, but it is not Plaintiffs who attached to their Complaint all the evidence and arguments made before the arbitrator, *e.g.*, the arbitration transcript, the arbitration exhibits and the parties' post-arbitration hearing briefs.  Doc. 7, P. 2 and Doc. 7-1, P. 6, Exs. A-G. Rather, as is appropriate in an action to vacate an arbitration award, Plaintiffs merely referenced and attached the documents this Court should use to determine the matter before it: the Teamsters Polar-Atlas collective bargaining agreement ("CBA") and the Award itself.  Doc. 1, Ex. A.

Inexplicably here, Defendant, filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss, although in most every other action to enforce or vacate an arbitration award a party files a complaint (or petition) to vacate; the other party files an answer, with a corresponding counter-claim for enforcement; and the court issues a scheduling order, including a schedule for dispositive motions, *i.e.,* motions for summary judgment (indeed, the Defendant filed a motion for summary judgment in the enforcement action it filed on or about October 25, 2019). See *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 325 (1972).

Since Defendant filed a motion to dismiss here, the Court must decide the Motion without re-litigating the arbitration and cannot consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). To be sure, "[i]n determining whether a complaint fails to state a claim under Rule 12(b)(6), a court 'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" *Trudeau v. FTC,* 456 F.3d 178, 183 (D.C. Cir. 2006) quoting *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 (D.C. Cir. 1997).

Plaintiffs agree with Defendant that in deciding a motion to dismiss a "court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims." Doc. 7-1, P. 10 citing Libre By *Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 153 (D.D.C. 2018) citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) and *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the contract itself...[b]ecause the contract is a legally operative document that is a necessary

element of the claim, the contract is "integral" to the plaintiff's claim—it 'form[s] the basis for a claim or part of a claim.'")(brackets in original, internal citation omitted); see, e.g., *Busby v. Capital One, N.A.* 932 F.Supp.2d 114 (D.D.C. 2013) (a promissory note was necessarily relied upon by a complainant in drafting a complaint); *Billups v. Laboratory Corporation of America*, 233 F.Supp.3d 20 (D.D.C. 2017) (a compensation plan was necessarily relied upon in a breach of the plan action); *Bailey v. CitiMortgage, Inc.* 13 F.Supp.3d 29 (D.D.C. 2014) (a real property sale contract was necessarily relied upon in a breach of contract action); *Ghori-Ahmad v. U.S. Com'n on Intern. Religious Freedom*, 969 F.Supp.2d 1120 (D.D.C. 2013) (the court declined to consider a scope of work and order documents attached to a motion to dismiss but not a complaint in a civil rights discrimination action) citing *Prince George's Hosp. Ctr. v. Advantage Health Plan, Inc.*, 865 F. Supp. 2d 47, 51 (D.D.C. 2012) (consideration of contractual documents that were "central to [plaintiff's] claims"); *In re APA Assessment Fee Litig.*, 862 F. Supp. 2d 1, 8 (D.D.C.2012) (consideration of membership bylaws where "plaintiffs' claim revolve[d] around whether payment of [a] special assessment was required for membership"); *Strumsky v. Washington Post Co.,* 842 F.Supp.2d 215, 218 (D.D. C.2012) reconsideration denied, 922 F.Supp.2d 96 (D.D.C.2013) (review of benefit plan documents where "plaintiff's entire complaint centers on the retirement benefits that he contends he is entitled to receive").

Here, the only matters referenced in and attached to Plaintiff's Complaint, and "integral" to that Complaint before the Court, are the CBA and Award.  But Defendant cites an Eastern District of New York District Court decision for the proposition that this Court may consider documents simply because those documents are attached to a party's motion and a non-moving party may have relied on the document in drafting its complaint.  Doc. 7-1, P. 11 citing *Smith v. Am. Eagle Airlines, Inc*., 2008 WL 2600857, at *2 (E.D.N.Y. July 1, 2008).  That decision, in

addition to not being binding or an authority in this Circuit, is contrary to the foregoing explicit

holding of this Circuit that a document must both be referenced in a complaint and integral to the

complaint to be considered in relation to a 12(b)(6) motion.  See *Libre By Nexus v. Buzzfeed,*

*Inc.*, 311 F. Supp. at 153 citing *Kaempe*, 367 F.3d at 965. The same is true of the Southern

District of Florida and a District of Minnesota cases cited by Defendant for the proposition that

this Court may, in the context of a 12(b)(6) motion, consider the arbitration transcript, exhibits in

the arbitration and the parties' post-arbitration hearing briefs.  Doc. 7-1, P. 11 citing *Gottlieb v.*

*Janney Montgomery Scott LLC,* 2007 WL 9701991, at *2 (S.D. Fla. 2007) and *Sladek v.*

*Northwest Airlines, Inc.,* 2001 WL 1640054, at *2 (D. Minn. 2001).  In fact, the circumstances in

*Gottlieb* are not as Defendant depicts in its Motion: the arbitration record considered in *Gottlieb*

did not involve transcripts, arbitration exhibits and post-arbitration hearing briefs as Defendant

proffer here, but rather, only the arbitration award itself.  *Gottlieb* at *2.  In *Sladek*, the court

found the arbitration transcript to be a "public record" and on that basis considered it in relation

to the motion to dismiss, but without explaining how it came to the conclusion that the transcript

was a public record. *Sladek* at *2. In the instant matter, the arbitration transcript is not a "public

record." This was a private labor arbitration before the parties SBA.

Finally, in its Motion Defendant cites this Court's case of *Hinton v. Corr. Corp. of Am.*,

624 F. Supp. 2d 45, 46 (D.D.C. 2009) for the proposition that the Court should consider the

arbitration file attached to its Motion.  Doc. 7-1, P. 10.  The Court's holding in *Hinton*, however,

does not support Defendant's attempt to style a motion for summary judgment as a motion to

dismiss. Indeed, the *Hinton* court did write that "matters that are not 'outside' the pleadings a

court may consider on a motion to dismiss include...documents upon which a plaintiff's

complaint *necessarily relies* even if the document is produced not by the plaintiff in the

complaint by the defendant in a motion to dismiss." *Id.* (emphasis added*)*; Doc. 7-1, P. 10.  But a review of the Complaint here makes it clear that Plaintiffs did not "necessarily rely" on the documents attached to Defendant's Motion. Rather, the documents relied on by Plaintiffs, and necessarily so in this action to vacate the Award, were the CBA and the Award.  Plaintiffs did not rely on the arbitration transcript, arbitration exhibits or the parties' post-hearing briefs in their Complaint, nor would it be necessary for Plaintiffs to do so to vacate the Award.

The Court should decide Defendant's Motion as a motion to dismiss, not as a motion for summary judgment and confine its consideration to the pleadings and the documents relied upon in the drafting of and integral to the Complaint: the Atlas CBA and the Award. By filing an improper motion to dismiss, Defendant has circumvented the process, depriving Plaintiffs of a responsive answer to their claims setting forth all of Defendant's defenses, which may be necessary for either discovery or actual summary judgment proceedings.

## III.   <u>DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED</u>
### A.  <u>STANDARD OF REVIEW WITH RESPECT TO RULE 12(b)(6) MOTION</u>

The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." See *Erickson v. Pardus*, 551 U.S. 89 (2007) citing Fed. R. Civ. Pro. 8(a)(2). This Circuit has further found that "[e]xcept for allegations of fraud or mistake ... we do not require 'detailed factual allegations' for a claim to survive a motion to dismiss." *Banneker Ventures, LLC* at 1129 quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion to dismiss thus "tests the legal sufficiency of a complaint." *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). In order to survive a motion to dismiss,

6

a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level*." Bell Atl. Corp.*, 550 U.S. at 555. Additionally, the facts alleged in the complaint must "state a claim to relief that is plausible on its face." Id. at 570. The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs and "must assume the truth of all well-pleaded allegations." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).

Finally, contrary to the posture presented by Defendant's Motion, a "motion [to dismiss] is not a procedure for resolving a contest .... [about] the substantive merits of the plaintiff's case." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). "[T]he purpose of a motion [to dismiss] under Federal Rule 12(b)(6) is [again] to test the formal sufficiency of the statement of the claim for relief..." *Id.*

## B. <u>STANDARD OF REVIEW FOR VACATION OF AN ARBITRATION AWARD</u>

Contrary to Defendant's contentions, the law does not require that Plaintiffs must prove something "extraordinary" to justify judicial review of the Award.  Doc. 7-1, P. 1 citing *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93-94 (1978) (per curiam); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 80 (D.C. Cir. 1987).  Rather, as Defendant concedes, while the Court's review of the Award is narrow, it is nonetheless not extraordinary. Under the RLA, the Award may be vacated for any of the following reasons:

    (a)  failure of a Board "to comply with the requirements" of the RLA;

    (b)  failure of a Board "to conform, or confine itself, to matters within the scope of its jurisdiction;" and

(c) "fraud or corruption" by a Board member.

*See* 45 U.S.C. § 153, First (q); Doc. 1, P.1; and Doc. 7-1, P. 5 citing *Sheehan*, 439 U.S. at 93-94.

Moreover, as a matter of case law rather than statute, the Award is also reviewable for compliance with law and public policy. Doc. 7-1, P. 5 citing *Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 855 F.3d 335, 338 (D.C. Cir. 2017) citing *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 42, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987).

### C.  **THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' FIRST CLAIM BECAUSE PLAINTIFFS HAVE PROPERLY PLEADED THAT THE SBA EXCEEDED ITS JURISDICTION UNDER THE ARBITRAL SUBMISSION**

Plaintiffs' Complaint first seeks to vacate the Award based in part on the Atlas SBA's consideration of a claim that Defendant failed to raise prior to the arbitration, in violation of the CBA as well as the parties' past practice. By considering a claim not submitted to arbitration before it, the SBA Award did thus not "confine itself" to the matters within the "scope of its jurisdiction."

In this regard, much of the Atlas SBA's ruling hinged upon the Defendant's claims based upon Section 1.F.2(ii) of the 2011 CBA. Plaintiffs allege in their Complaint that the Atlas CBA and past practice barred Defendant from raising claims under Section 1.F.2(ii) for the first time at arbitration because Defendant had not made the Union aware of its claim prior to the date of arbitration.  Plaintiffs further allege that the CBA and past practice required Defendant to make the Plaintiffs aware of its claim before the arbitration began. Defendant's grievance prior to the date of arbitration relied solely upon an argument that a different section was triggered and was

silent as to Section 1.F.2(ii). Paragraph 33 of the Complaint lays out Plaintiffs' jurisdictional claim:

> The 2011 Atlas-Polar CBA limits the jurisdiction of the Atlas System Boards of Adjustment to consider and address only the issue proffered in the written grievance itself, as well as any issue arising from the subsequent processing of the grievance. Management grievances involving disputes relating to Section 1 of the 2011 Atlas-Polar CBA, such as the Atlas Grievance, are not subject to 'subsequent processing' and are instead submitted directly to the System Board of Adjustment.

Not surprisingly, Defendant's Motion *ignores the Plaintiffs' allegations in Paragraph 33* of the Complaint, since acknowledging it would require Defendant to acknowledge that the substantive arbitrability issue of whether the Atlas SBA had jurisdiction to consider this claim under the CBA can only be resolved by interpreting the CBA here and inquiring into the parties' past practice regarding issues that may properly be raised at arbitration. As such, it is a claim that brings into play factual disputes that are not subject to resolution by means of a Fed. R. Civ. P. 12(b)(6) or 12(c) motion. This very basic question of whether the SBA exceeded its jurisdiction was properly pleaded in the Complaint and clearly provides a ground for relief as expressed in the RLA statute itself.

D. **THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' SECOND CLAIM BECAUSE PLAINTFFS HAVE PROPERLY PLEADED THAT THE AWARD IS CONTRARY TO FEDERAL LAW AND PUBLIC POLICY**

Plaintiffs also have a plausible claim that the SBA's Award violates their union members' rights under the McCaskill-Bond Amendment, 49 U.S.C. § 42112 (McCaskill-Bond"), by ordering Defendant to issue a seniority list within 45 days. But McCaskill-Bond calls for a process of negotiation and then arbitration to integrate seniority lists in a "fair and equitable" manner. Id. The Award, however, ordered the parties to create a list in a brief time period – 45

days -- that effectively precludes the two pilot groups from engaging in this a process that would include negotiation and if necessary, separate statutory arbitration. Doc. 1, Pp. 13-14, ¶ 36.

Defendant's arguments do not refute Plaintiffs' claim that the Award violates its members' substantive right to a deliberative process that permits them to engage in negotiation and arbitration to determine their ultimate seniority placement after merger.  Defendant claims instead that McCaskill-Bond allows a union's policies to apply to integrate a seniority list when merging groups are all represented by that union. First, Defendant references a formal IBT merger policy (which the IBT had determined did not apply here). Second, Defendant alleges and an "informal" IBT policy "based on a simple date-of-hire approach" as a supposed substitute for proceeding under McCaskill-Bond's negotiation and arbitration requirement. However, Defendant's citation to matters outside the pleadings require the Court to inquire into factual and legal questions about IBT policy and the application of McCaskill-Bond in prior seniority integration cases. These issues have not been developed before this Court and are not properly resolved by means of a motion to dismiss.

But it is enough here that the Plaintiffs have raised a plausible claim that the Award, and in particular the order that an ISL be produced within a very limited time period, violated McCaskill-Bond's substantive requirements and public policy – plainly a recognized ground for vacating an award under the RLA.

### E. THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' THIRD CLAIM BECAUSE PLAINTIFFS HAVE PROPERLY PLEADED THAT THE AWARD EXCEEDED THE JURISDCTION OF THE SBA BY AFFECTING THE RIGHTS OF SOUTHERN AIR PILOTS OVER WHICH THE ATLAS SBA HAS NO AUTHORITY

Plaintiffs also plausibly allege in their Complaint that the Atlas SBA, in ordering the Atlas pilots and necessarily the *Southern Air pilots* to integrate their seniority lists, acted beyond its jurisdiction again.

Section 21.B.1 of the Atlas CBA states as follows:

> As provided by the Railway Labor Act, as amended, the [System] Board [of Adjustment] shall have jurisdiction over all disputes between a Crewmember and the Company, or between the Company and the Union, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto.

Doc. 1, P. 5, ¶ 12. The term "Crewmember" does not include Southern pilots.

Defendant states in its Motion that the Atlas SBA could not have acted beyond its jurisdiction because it did not reference the Southern Air pilots, and also because, apparently, if the SBA did act beyond its jurisdiction there is no foul because the Southern Air SBA's actions in a prior decision complemented the actions of the Atlas SBA.  Doc. 7-1, P. 22.

First, Defendant's argument that the Award did not violate Southern Air pilots' rights by applying the Atlas CBA to them wholly ignores that the Union for the purposes of the Atlas CBA represents only Atlas Air pilots; the Union's representation of Southern pilots is dictated by the terms of the Southern CBA. The terms of the Southern CBA cannot be ruled upon by the Atlas SBA. Concededly, by combining the seniority list of both pilot groups into a binding seniority list with new relative seniority among all pilots, the rights of Southern pilots are necessarily affected – there cannot be a combined list without them. Plaintiffs in their Complaint explain this dichotomy and the issues the Award causes, (*e.g.,* issues in relation to the duty of fair representation) for the Union in its representation of each of the pilot groups.  Doc. 1, P. 15-17, ¶¶ 41, 42.

But Defendant ignores the fact that Atlas and Southern pilots' right to challenge the accuracy of their respective seniority lists was disregarded by the Award's dictate that a completed SLI list be provided by the Union before the period during which each pilot group could challenge their respective lists had ended. Further, the Defendant did not address the argument that the Award violates pilots' rights under their respective CBAs because Nicolau ordered the production of an integrated list even while Atlas and Polar pilots are still awaiting an arbitrator's resolution of a seniority list dispute involving their seniority list which will have an impact on the final SLI integration of Atlas, Polar and Southern crew members. Finally, contrary to Defendant's assertion, the issue is not whether an arbitrator has the authority to fashion a remedy – an arbitrator has that authority, albeit with limits as explained above – but rather is whether in exercising that authority the arbitrator acted beyond his authority, or jurisdiction. Doc. 7-1, P. 22.  Here, by ordering an unduly expedited production of an integrated seniority list contrary to McCaskill-Bond, the terms of the CBA regarding challenges to the seniority list, and the outstanding arbitral dispute regarding the Atlas-Polar seniority list, the Atlas SBA acted plainly beyond its jurisdiction.

Second, it is no answer that Arbitrator Nicolau, in ordering the Union to abide by his interpretation of  Section 1.F of the Atlas CBA did no more than complement the Southern Air SBA's Award; his Award essentially ordered the Union to apply the terms of Section 1.F of the Atlas CBA to Southern Air pilots, over whom as the Chairman of the Atlas SBA he had no jurisdiction.

Again, Plaintiffs have properly pleaded a ground for vacation of the Award – that the Atlas SBA exceeded its jurisdiction in ordering a draconian remedy to integrate the seniority lists contrary to the terms of McCaskill-Bond, public policy and against the contractual and statutory

12

rights of the Southern Air pilots, over which it concededly had absolutely no jurisdiction. Defendant motion to dismiss must be denied.

**F.  THE COURT SHOULD DENY DEFENDANT'S MOTION WITH RESPECT TO PLAINTIFFS' FOURTH CLAIM AS PLAINTIFFS HAVE PROPERLY PLEADED THAT THE AWARD VIOLATES THE RLA**

Plaintiffs further make the plausible claim that the Atlas SBA in ordering the Atlas pilots, and in effect the Southern Air pilots, to integrate their seniority lists, violated the requirements of the RLA. For, the SBA unilaterally ordered the union to abandon Section 6 bargaining for both pilot groups and inexplicably declared that the labor protective provision "Allegheny-Mohawk is not required in this case," extinguishing pilot rights under the McCaskill-Bond Amendment, 49 U.S.C. § 42112, which guarantees them the right to negotiate and arbitrate for a "fair and equitable" ISL, as stipulated in Sections 3 and 13 of the Allegheny-Mohawk labor protective provisions.

Suffice it to say, Section 204 of the RLA requires the carrier and the union to, inter alia, "establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title."  45 U.S.C. § 184.  Section 2, Seventh and Section 6 of the RLA proscribe "[c]hange[s] in pay, rules, or working conditions contrary to agreement." 45 U.S.C. § 152, Seventh; see also 45 U.S.C. § 156 ("rates of pay, rules, or working conditions shall not be altered"). It is hornbook law that an SBA does not have jurisdiction to interpret federal law, such as the RLA or McCaskill-Bond.

*1.  The Order to Abandon RLA Section 6 Bargaining Exceeds the Jurisdiction of the Atlas SBA*

As set pleaded in the Complaint, in November 2015, the Union notified Atlas, on behalf of the Atlas pilots, of its desire to negotiate amendments to the 2011 Atlas CBA pursuant to Section 6 of the RLA.  Doc. 1, P. 5, ¶ 14.  The parties met in December 2015 and January 2016 and scheduled further negotiation sessions in February and March 2016.  Id., Pp. 5-6, ¶ 14. AAWW announced the acquisition of Southern Air in January 2016.  Id., P. 6, ¶ 15.

The Union had also, in November 2015, notified Southern Air, on behalf of the Southern Air pilots, of its desire to negotiate amendments to the 2012 Southern Air CBA pursuant to Section 6 of the RLA.  Id., P. 6, ¶ 16.  The parties had scheduled, prior to the announcement of the acquisition, negotiation sessions to begin in early 2016.  *Id*. At the time of the announcement of the acquisition, AAWW demanded the cessation of the negotiations, pursuant Section 6 of the RLA, between Atlas and Southern Air and the Union, and thereafter in March and April 2016 Atlas and Southern Air, respectively, unilaterally ceased the negotiations.  Doc. 1, Pp. 7-8, ¶ 17.

In the Award, the Atlas SBA ordered "the Union to comply with the merger provisions of Section 1.F.2 of the CBA, including promptly submitting an ISL, negotiating for a JCBA, and submitting unresolved bargaining issues to binding interest arbitration if a JCBA has not been executed within nine (9) months.  Doc. 1-1. P. 12.  The Award in its addition, subtraction and amendment of the Atlas CBA and the directive the Union cease negotiations on behalf of the Atlas and Southern Air pilots violates Section 204 of the RLA, 45 U.S.C. § 184, and the status quo procedures of Section 2, First and Seventh, 45 U.S.C. § 152, and Section 6 of the RLA, 45 U.S.C. § 156.

Specifically, Plaintiffs' Complaint, and the referenced Award, plausibly set forth that the Atlas SBA acted beyond its jurisdiction, in violation of Section 204 of the RLA, 45 U.S.C. § 184 ("It shall be the duty of every carrier and of its employees, acting through their

representatives…to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may lawfully exercised by system, group or regional boards of adjustment, under the authority of section 153 [of the RLA].")   Doc. 7-1. P. 23.  The Atlas SBA was without jurisdiction to issue a remedy that orders the participation of the Southern Air pilots in the submission of an ISL with the Atlas pilots, the negotiation with the Atlas pilots of a JCBA and that the Southern Air pilots to submit any unresolved negotiation matters to interest arbitration. If there was such an order to Southern Air pilots, in accordance with Section 204 of the RLA, 45 U.S.C. § 184, that order must be issued by the Southern Air SBA, which has jurisdiction over the Southern Air pilots and the Southern Air CBA but conversely not the Atlas pilots and the Atlas CBA.  Further, it does not matter, contrary to the assertion of Defendant in its Motion, that the Award does not specifically reference the Southern Air pilots and Southern Air CBA – the remedy, in its order of an ISL and the negotiation of a JCBA, unavoidably implicates the Southern Air pilots and the Southern Air CBA – and that the Award may be consistent with the Southern Air CBA – the Atlas SBA has no jurisdiction over the Southern Air CBA.  Doc. 7-1, P. 23.

Plaintiffs' Complaint, and the references therein to the Award, additionally set forth a plausible claim for violation of the RLA's status quo provisions.  See Section 2, Seventh, 45 U.S.C. § 152 ("No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodies in agreements except in the manner prescribed in such agreement or in section 156 [of the RLA]."); and Section 6 of the RLA, 45 U.S.C. § 156 ("In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party…rates of pay, rules, or working condition shall not be altered by

the carrier until the controversy has been finally acted upon, as required by section 155 [of the RLA], by the Mediation Board…").

The Union, on behalf of the Atlas and Southern Air pilots, filed notice with their respective carriers, pursuant to Section 6 of the RLA, 45 U.S.C. § 156.  Doc. 1, P. 5-6, ¶¶ 14, 16.  The Union further, on behalf of the Atlas pilots, requested the services of the National Mediation Board in April 2016, pursuant to Section 5 of the RLA, 45 U.S.C. § 155.  Doc. 1, P. 8, ¶ 20.  Section 6 of the RLA dictates, because of the filing of the Section 6 notice with Atlas and the request for the services of the NMB, preservation of the status quo and that this matter be disposed of in accordance with the major dispute resolution procedures.  The Atlas SBA was without authority, and in violation of the RLA, in issuing its Award, as this matter is not a minor dispute.  This matter is not a matter of contract, contrary to the assertion of Defendant in its Motion, and whether the Atlas SBA had the authority to interpret a procedural provision in the Atlas CBA. Doc. 7-1, P. 25.  It is rather a matter of law, and whether the Atlas SBA had the legal authority to act in this matter, which it did not.

If, however, the Atlas SBA had authority to act in the matter, its remedy does in fact compel changes of "the rates of pay, rules, or working conditions" of the Atlas pilots in that it compels, first, with its order of an ISL, a change in the seniority of the Atlas pilots and the attendant provisions in the Atlas CBA, and second, with its order to negotiate a JCBA, a change in the "rates of pay, rules, or working conditions" of the Atlas pilots to account for the "rates of pay, rules, or working conditions" of the Southern Air pilots, or lastly, if not able to negotiate the amalgamation of the "rates of pay, rules, or working conditions" of Atlas and Southern Air pilots, an arbitrator in interest arbitration will compel the change.  The Award does not exist in isolation.  To assert otherwise is to be detached from reality.  Doc. 7-1, P. 24.

Finally, Defendant asserts in its Motion the Award is not violative of the RLA because the Atlas CBA provides for an alternative to the major dispute resolution procedures of the RLA. Doc. 7-1, P. 24. If, again, the Atlas SBA had the authority to interpret and enforce the alternative provisions in the Atlas CBA, this matter is distinguishable from the cases cited by Defendant. Doc. 7-1, Pp. 24-25. In this matter, the parties with respect to both the Atlas and Southern Air pilots were in Section 6 negotiations, and in relation to the Atlas negotiations the Union had requested the services of the NMB. In the cited cases, the parties had not entered into Section 6 negotiations, nor had a party requested the services of the NMB. *Seaboard World Airlines, Inc. v. TWU*, 443 F.2d 437, 439 (2d Cir. 1971); *Trans Int'l Airlines, Inc. v. IBT,* 650 F.2d 949, 960-61 (9th Cir. 1980); and *ALPA v. Alaska Airlines, Inc.,* 2005 WL 2898140, at *1 (W.D. Wash. Oct. 28, 2005). The parties' negotiations pursuant to Section 6 of the RLA triggered and made exclusively applicable the major dispute resolution procedures of the RLA. The Atlas SBA was therefore without authority to act in this matter, and by so acting, in violation of the RLA.

2. *The SBA Exceeded its Jurisdiction by Declaring that the Labor Protective Provisions of Section 3 and 13 of Allegheny-Mohawk are Inapplicable, Contrary to the Express Terms of McCaskill-Bond Amendment, 49 U.S.C. § 42112, which Guarantees Pilots the Right to Negotiate and Arbitrate for a "Fair and Equitable" ISL*

Plainly, the Atlas SBA exceeded its authority by declaring that the Labor Protective Provisions of Allegheny-Mohawk do not apply. The McCaskill-Bond Amendment provides:

With respect to any covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act (45 U.S.C. 151et seq.), sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers; except that—

"(1) if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's

internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section; and

. . .

*'(2) the requirements of any collective bargaining agreement that may be applicable to the terms of integration involving covered employees of a covered air carrier shall not be affected by the requirements of this section as to the employees covered by that agreement, so long as those provisions allow for the protections afforded by sections 3 and 13 of the Allegheny-Mohawk provisions. ...*

49 U.S.C. § 42112, Note § 117. (Emphasis added).

In 1972, the Civil Aeronautics Board established a set of Labor Protective Provisions in the *Allegheny-Mohawk* case. *Allegheny-Mohawk*, 59 C.A.B. 19, 45 (1972), App. B which have provided for fair and equitable standards and procedures in seniority list integrations in the airline industry. Sections of the Allegheny-Mohawk LPPs established the fair and equitable standard for seniority integration, stating:

> Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either part for adjustment in accordance with section 13.

> *Allegheny-Mohawk*, 59 C.A.B. at 45.

Section 13 mandates arbitration of disputes with employees that arose in this process or under any of the other provisions of the Allegheny-Mohawk LPPs. Section 13 provides:

> a. In the event that any dispute or controversy (except as to matters arising under section 9) arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking

names until only one remains, and he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) the organization or organizations representing employee or employees or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties.

b. The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of an arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure unless and until that alternative method or procedure shall have been agreed to by all parties.

On its face, the Atlas CBA does not extinguish any rights under Allegheny-Mohawk. It does not even mention it. Nor does the CBA mention McCaskill-Bond. But in one fell swoop the SBA extinguished the rights of pilots to a fair integration and to contest any seniority list through statutory McCaskill-Bond arbitration. This is true despite the fact that McCaskill-Bond expressly requires that Allegheny-Mohawk apply. Not only is this a complete rewrite of the CBA, but also it completely violates these federal standards for seniority integrations as a matter of law. This is completely contrary to public policy and subjects the parties to potentially limitless lawsuits by affected pilots. The SBA's construction of this federal law exceeded its jurisdiction, was patently erroneous, and therefore, the Plaintiffs have stated a valid claim in their Complaint to be sure.

## G. DEFENDANT FAILED TO REFUTE PLAINTIFF'S CLAIM FOR PRELIMINARY AND INJUNCTIVE RELIEF

The Union further sets forth a plausible claim for preliminary and permanent injunctive relief in this matter, to wit: an order prohibiting Atlas from enforcing the Award against the Southern Air pilots and the Union as the representative of the Southern Air pilots.  Doc. 1, P. 20, ¶¶ 57, 58.

With respect to an application for preliminary injunctive relief, a court must generally consider whether:

(1) the party seeking the injunction has a substantial likelihood of success on the merits;

(2) the party seeking the injunction will be irreparably injured if relief is withheld;

(3) an injunction will not substantially harm other parties; and

(4) an injunction would further the public interest.

*CSX Transportation, Inc. v. Williams*, 406 F. 3d 667, 670 (D.C. Cir. 2005).

An injunction under the RLA does not require evidence of irreparable injury. *Atlas Air, Inc. v. International Brotherhood of Teamsters*, 280 F.Supp.3d 59, 88 (D.D.C. 2017) citing Consolidated *Rail v. Railway Labor Execs*.' Ass'n, 491 U.S. 299, 303 (1989) ("The district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury."); see also *S. Ry. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 337 F.2d 127, 133–34 (D.C. Cir. 1964).

Pending this litigation, the Court should preserve the status quo and prevent Defendant from enforcing the Award, including seeking to abandon Section 6 negotiations and proceeding with interest arbitration. While Defendant may claim that it has a right to force the Atlas and Southern pilots into an interest arbitration over a JCBA, if it does so it will extinguish rights preserved by the RLA and McCaskill Bond Amendment, and potentially subject the parties to endless litigation.

In addition to the injury to the statutory purposes and machinery of the RLA, any attempted enforcement of the Atlas System Board's August 26, 2019 Decision and Award will injure the Union and the Atlas and Southern pilot groups it separately represents in ways that cannot be measured accurately in terms of money, either as to extent or amount.

Any effort to enforce the Atlas System Board's August 26, 2019 Award will have the proximate effect of compelling the Union to extinguish the contractual rights of the Atlas pilot group regarding a dispute with their company over whether they are required to engage in contractual merger negotiations for a joint collective bargaining agreement with the Southern pilot group and engage in seniority integration negotiations with the Southern pilot group, thereby undermining the Union's status as both pilot groups' collective bargaining representative and subjecting the Union to potential liability for breaching its duty of fair representation to both pilot groups. Any such effort to enforce the Atlas System Board's August 26, 2019 Award, moreover, is contrary to the public interest in stable labor relations and the maintenance of agreements.

The injury that would be suffered by the public, the Union and both the Atlas and Southern pilot groups would be irreparable and could not be recovered in an action at law or in administrative or contractual proceedings. Atlas Air will not be injured by the grant of injunctive relief in this case.

For all the foregoing reasons, Plaintiffs are without an adequate remedy at law and will suffer serious, substantial and irreparable injury unless enforcement of the Atlas System Board's August 26, 2019 Decision and Award is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

## IV.   <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons and for the reasons set forth in the Complaint, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: November 15, 2019                    Respectfully submitted,


                                            */s/ Nicolas M. Manicone*
                                            Nicolas M. Manicone
                                            DC Bar No. 461172
                                            Staff Attorney
                                            International Brotherhood of Teamsters
                                            25 Louisiana Avenue, NW
                                            Washington, DC 20001-2198
                                            Telephone: (202) 624-7470
                                            Facsimile: (202) 624-6884
                                            E-Mail: nmanicone@teamster.org

                                            */s/ James Petroff*
                                            James Petroff
                                            DC Bar No. OH0042
                                            Barkan Meizlish, LLP
                                            250 East Broad Street, 10th Floor
                                            Columbus, Ohio 43215
                                            Telephone: (614) 221-4221
                                            Facsimile: (614) 744-2300
                                            E-Mail: jpetroff@barkanmeizlish.com


                                            */s/Christopher S. Peifer*
                                            Christopher S. Peifer (OH Bar No. 0072637)
                                            *(Pro Hac Vice Pending)*
                                            BARKAN MEIZLISH, LLP
                                            250 East Broad Street, 10th Floor
                                            Columbus, Ohio 43215
                                            Phone: (614) 221-4221
                                            Fax: (614) 744-2300
                                            cpeifer@barkanmeizlish.com


                                            *Counsel for Plaintiffs International Brotherhood of*
                                            *Teamsters, Airline Division and International*
                                            *Brotherhood of Teamsters, Local 2750*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify I filed the foregoing Memorandum in Opposition with the Court of Clerk via the CM/ECF system on this 15th day of November, 2019, and as such the foregoing has been served on the following:

Robert A. Siegel
DC Bar No. 1004474
Rachel S. Janger
DC Bar No. 467142
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
E-Mail: rsiegel@omm.com
E-Mail: rjanger@omm.com

*Counsel for Defendant Atlas Air, Inc.*

*/s/ Nicolas M. Manicone*
Nicolas M. Manicone