**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION and INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 2750, | |
| Plaintiffs, | Civil Action No. 1:19-cv-02723-CRC |
| v. | |
| ATLAS AIR, INC., | |
| Defendant. | |

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
PETITION TO VACATE ARBITRATION AWARD**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

     I.     THE COURT MAY CONSIDER THE UNDISPUTEDLY AUTHENTIC
           DOCUMENTS ATTACHED TO THE MOTION TO DISMISS. ....................... 1

     II.    COUNT I SHOULD BE DISMISSED BECAUSE ARBITRATOR
           NICOLAU ACTED WITHIN THE SCOPE OF THE ATLAS SYSTEM
           BOARD'S JURISDICTION. .............................................................................. 5

     III.   COUNT II OF THE COMPLAINT SHOULD BE DISMISSED
           BECAUSE THE IBT DOES NOT PLAUSIBLY ALLEGE THAT THE
           DECISION AND AWARD VIOLATES MCCASKILL-BOND. ......................... 7

     IV.   COUNT III OF THE COMPLAINT SHOULD BE DISMISSED
           BECAUSE THE SOUTHERN PILOTS' RIGHTS ARE UNAFFECTED
           BY THE DECISION AND AWARD. .................................................................. 8

     V.    COUNT IV SHOULD BE DISMISSED BECAUSE IT DOES NOT
           PLAUSIBLY ALLEGE A VIOLATION OF THE RLA. .................................. 11

     VI.   THE IBT IS NOT ENTITLED TO INJUNCTIVE RELIEF. ............................. 14

CONCLUSION....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers,*
  *AFL-CIO v. United Techs. Corp., Pratt & Whitney,*
  230 F.3d 569 (2d Cir. 2000) ................................................................................. 9

*Air Line Pilots Ass'n v. Alaska Airlines, Inc.,*
  2005 WL 2898140 (W.D. Wash. Oct. 28, 2005) ....................................................... 11

*Air Line Pilots Ass'n v. Trans World Airlines, Inc.,*
  729 F. Supp. 888 (D.D.C. 1989) ........................................................................... 6

*Alexander v. Washington Gas Light Co.,*
  481 F. Supp. 2d 16, 27 n.5 (D.D.C. 2006) ............................................................. 2

*Am. Fed'n of R.R. Police v. Nat'l R.R. Passenger Corp.,*
  No. CV 86-4173 (RR), 1989 WL 32842 (E.D.N.Y. Mar. 27, 1989) ............................. 7

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters,*
  2019 WL 6204930 (2d Cir. Nov. 21, 2019) ....................................................... 10, 12

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters,*
  293 F. Supp. 3d 457 (S.D.N.Y. 2018) ................................................................. 12

*Bates v. Donley,*
  935 F. Supp. 2d 14 (D.D.C. 2013) ....................................................................... 5

*Belt Ry. Co. of Chicago v. United Transp. Union,*
  No. 11-CV-4710, 2012 WL 1118077 (N.D. Ill. Apr. 3, 2012) ............................... 3, 10

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.,*
  373 U.S. 33 (1963) ......................................................................................... 6, 8

*Brewery & Beverage Drivers Local 67 v. Canada Dry Potomac Corp.,*
  628 F. Supp. 73 (D.D.C. 1986) ........................................................................ 9, 13

*Elam v. Nat'l R.R. Passenger Corp.,*
  220 F. Supp. 3d 996 (N.D. Cal. 2016) ................................................................. 3

*Gottlieb v. Janney Montgomery Scott LLC,*
  No. 06-80941-CIV, 2007 WL 9701991 (S.D. Fla. Apr. 23, 2007) ............................. 3

*Indep. Ass'n of Cont'l Pilots v. Cont'l Airlines,*
  No. CIV. A. 96-389-SLR, 1997 WL 309438 (D. Del. Apr. 29, 1997) ......................... 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Transp. Div. v. Port Auth. Trans-Hudson Corp.*,
    No. 1:19 CV 228, 2019 WL 6117475 (N.D. Ohio Nov. 18, 2019) .......................................... 14

*Ironshore Specialty Ins. Co. v. United States*,
    871 F.3d 131 (1st Cir. 2017)................................................................................................. 2

*Libre By Nexus v. Buzzfeed, Inc.*,
    311 F. Supp. 3d 149, 153 (D.D.C. 2018) .............................................................................. 2

*Martino v. Metro N. Commuter R. Co.*,
    No. 3:10CV1816 JBA, 2013 WL 3208548 (D. Conn. June 24, 2013)...................................... 3

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
    785 F.3d 684 (D.C. Cir. 2015) .............................................................................................. 15

*Seaboard World Airlines, Inc. v. TWU*,
    443 F.2d 437 (2d Cir. 1971) ................................................................................................. 11

*Sladek v. Nw. Airlines, Inc.*,
    No. 01-70 JRT/FLN, 2001 WL 1640054 (D. Minn. Sept. 21, 2001) .................................... 3, 4

*Smith v. Corr. Corp. of Am.*,
    674 F. Supp. 2d 201 (D.D.C. 2009)....................................................................................... 2

*Sottera, Inc. v. Food & Drug Admin.*,
    627 F.3d 891 (D.C. Cir. 2010)............................................................................................... 15

*Trans Int'l Airlines, Inc. v. Int'l Bhd. of Teamsters*,
    650 F.2d 949 (9th Cir. 1980) ................................................................................................ 11

*United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*,
    950 F.2d 1340 (7th Cir. 1991) .......................................................................................... 4, 10

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Graphic Packaging Int'l, Inc.*,
    No. 06-C-1188, 2007 WL 2288069 (E.D. Wis. Aug. 4, 2007)................................................ 4

*Wichard v. Suggs*,
    95 F. Supp. 3d 934 (E.D. Va. 2015) ...................................................................................... 4

*Woods v. P.A.M. Transp. Inc.-L.U.*,
    440 F. App'x 265 (5th Cir. 2011) .......................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

45 U.S.C. § 184........................................................................................................... 5

45 U.S.C. §§ 151 *et seq*.............................................................................................. 5

49 U.S.C. § 42112.................................................................................................... 7, 13

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................. 1

## PRELIMINARY STATEMENT

In its opposition to Atlas' motion to dismiss, the IBT[1] incorrectly contends that the arbitration record cannot be considered on a motion to dismiss, makes new arguments it never raised during the arbitration, asks this Court to ignore or reject Arbitrator Nicolau's interpretation of the Atlas CBA in favor of its own, and makes the demonstrably inaccurate claim that Arbitrator Nicolau's remedy requires the IBT to violate the McCaskill-Bond Amendment.  None of these arguments undermine the conclusions that all aspects of Arbitrator Nicolau's Decision and Award draw their essence from the Atlas CBA, that the remedy ordered does not usurp the jurisdiction of the Southern System Board of Adjustment over a related arbitration, and that the remedy ordered does not conflict with applicable federal laws.

Accordingly, for the reasons set forth in Atlas' Opening Brief and below, the Court should dismiss the Complaint with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I.      THE COURT MAY CONSIDER THE UNDISPUTEDLY AUTHENTIC DOCUMENTS ATTACHED TO THE MOTION TO DISMISS.

As explained in Atlas' Opening Brief, "[m]atters that are not 'outside' the pleadings [which] a court may consider on a motion to dismiss include . . . documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted).  Courts routinely consider

---

[1] For the purposes of this Reply, Atlas uses the same abbreviations as in its Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint and Petition to Vacate Arbitration Award. (Dkt. 7-1.)  Atlas refers to its Memorandum of Law in Support of its Motion to Dismiss (Dkt. 7-1) as the "Opening Brief" or "Opening Br." and Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. 14) as "Opposition" or "Opp."

documents upon which a complaint necessarily relies, even if the complaint does not mention or

reference the document.  *See, e.g.*, *Hinton*, 624 F. Supp. 2d at 46 (considering contract not

referenced in complaint because "plaintiff's complaint necessarily rests on the contract, although

it did not incorporate the contract"); *Smith v. Corr. Corp. of Am.*, 674 F. Supp. 2d 201, 204 n.2

(D.D.C. 2009) (same); *see also Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135-

36 (1st Cir. 2017) ("Although Ironshore's complaint does not explicitly reference the contract . .

. [its] claims hinge upon the question of whether the FISHER qualifies as a public vessel.  That

question, in turn, requires an examination of the contractual relationship.").[2]

Here, Atlas attached the arbitration record to its motion to dismiss, including the

arbitration hearing transcript, exhibits and post-hearing briefs of the parties.  The IBT does not

dispute the authenticity of the documents attached to Atlas' motion to dismiss, but instead argues

that the very record underlying the arbitration decision it is seeking to vacate cannot be

considered by this Court upon a motion to dismiss.  (Opp. at 2-6.).  This is wrong.  The IBT's

complaint seeks to vacate Arbitrator Nicolau's Decision and Award and therefore the arbitration

---

[2] The IBT cites *Libre By Nexus v. Buzzfeed, Inc.* for the proposition that documents can be
considered only if they are "referenced in the complaint, and they are 'integral' to one or more of
plaintiff's claims."  *See Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 153 (D.D.C.
2018); (Opp. at 3.)  But the court in *Libre By Nexus* made no such holding.  Rather, the court
merely described the circumstances that warranted inclusion of the documents in that case.  *Libre
By Nexus*, 311 F. Supp. 3d at 153.  In doing so, the court did not purport to hold that all of the
factors in that case were required to justify use of a document in a motion to dismiss, but only
described those factors that were "relevant here."  *Id.*  Courts in this Circuit also consider, for
example, documents upon which the complaint necessarily relies (even if not referenced in the
complaint), public records, or matters subject to judicial notice.  *See Hinton*, 624 F. Supp. 2d at
46 (noting courts may also consider documents upon which "plaintiff's complaint necessarily
relies . . . although it did not incorporate [them]" or "matters about which the Court may take
judicial notice"); *Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 27 n.5 (D.D.C.
2006) (considering "Plaintiff's various filings in that [prior] case . . . which may be considered
matters of public record").  Here, as explained *infra*, the documents attached to Atlas' motion to
dismiss can be considered by the Court either because the Complaint necessarily relies on them,
they are integral to the claims, or because they are public records.

record underlying that decision is necessarily relied on and integral to the IBT's claims.  (*See,*

*e.g.*, Compl. ¶ 32 (alleging that Atlas "substantively changed" and "shifted" its position and issue

for resolution "[a]t the arbitration hearing," including Atlas' claim that a provision of the Atlas

CBA was a "red herring").)   Indeed, the *only* matters this Court may consider on a complaint to

vacate are evidence and arguments that were made before the System Board.  *See Elam v. Nat'l*

*R.R. Passenger Corp.*, 220 F. Supp. 3d 996, 1003 (N.D. Cal. 2016) ("The Court agrees that its

review is limited to the facts and documents that were before the Board."); *Belt Ry. Co. of*

*Chicago v. United Transp. Union*, No. 11-CV-4710, 2012 WL 1118077, at *7 (N.D. Ill. Apr. 3,

2012) ("Failure to present an issue before an arbitrator waives the issue.").   As such, courts

routinely consider arbitration transcripts, exhibits and post-hearing briefing in deciding petitions

to vacate.  *See also Martino v. Metro N. Commuter R. Co.*, No. 3:10CV1816 JBA, 2013 WL

3208548, at *6 n.4 (D. Conn. June 24, 2013) (considering arbitration transcript because "the

transcript of the disciplinary hearing is 'integral' to the Second Amended Complaint because the

allegations involve the hearing"); *Gottlieb v. Janney Montgomery Scott LLC*, No. 06-80941-CIV,

2007 WL 9701991, at *2 n.2 (S.D. Fla. Apr. 23, 2007) ("Courts have the authority to review the

underlying arbitration record in ruling on petitions to enforce or vacate awards."); *see also*

*Sladek v. Nw. Airlines, Inc.*, No. 01-70 JRT/FLN, 2001 WL 1640054, at *2 (D. Minn. Sept. 21,

2001).[3]  Moreover, three of the exhibits attached to Atlas' motion were pleadings and briefs filed

---

[3] The IBT's attempt to distinguish this authority fails.  The IBT claims "the arbitration record
considered in *Gottlieb* did not involve transcripts, arbitration exhibits and post-arbitration
hearing briefs as Defendant proffer here, but rather, only the arbitration award itself."  (Opp. at
5.)  But the Defendant in that case attached "witness testimony," "the transcript of the arbitration
hearing," and "arbitration exhibits."  *See* Mem. of Law in Support of Def.'s Mot. to Dismiss and
Pet. to Enforce Arbitration Award, *Gottlieb v. Janney Montgomery Scott LLC*, No. 06-80941-
CIV, Dkt. 13 at 2 n.1, 4 n.3 (S.D. Fla. Mar. 7, 2007).  And indeed, the court found there was
"sufficient evidence" for the arbitrator's award, despite the fact the arbitrator "did not make
specific findings of fact."  *Gottlieb*, 2007 WL 9701991, at *3.  The IBT's attempt to distinguish

in federal court in a prior litigation, and therefore were public records.  (*See* Janger Decl. ¶ 6, Exs. H, I, and J); *Alexander*, 481 F. Supp. 2d at 27 n.5 (considering "Plaintiff's various filings in that [prior] case . . . which may be considered matters of public record").

Further, there is no merit to the IBT's claim that by filing a motion to dismiss rather than a motion for summary judgment, Atlas has deprived the IBT of an opportunity for discovery, given that discovery is neither necessary nor appropriate for complaints to vacate arbitration awards.  (Opp. at 6); *Woods v. P.A.M. Transp. Inc.-L.U.*, 440 F. App'x 265, 268 (5th Cir. 2011) ("The loser in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery."); *Wichard v. Suggs*, 95 F. Supp. 3d 935, 948 (E.D. Va. 2015) ("Generally, discovery in post-arbitration review proceedings is typically limited, or not necessary at all, given the deference this Court owes the arbitrator's findings of fact and conclusions of law.").  The IBT has provided no reason why discovery is necessary here, nor could it when the parties and this Court are confined to review of the evidentiary record before the arbitrator.  *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Graphic Packaging Int'l, Inc.*, No. 06-C-1188, 2007 WL 2288069, at *2 (E.D. Wis. Aug. 4, 2007) ("[T]he long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award."); *United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1344 (7th Cir. 1991) ("If parties were allowed to withhold information during arbitration, and then use it to sandbag their

---

the *Sladek* court's consideration of an arbitration transcript as a "public record" is similarly inapposite given that the transcript was, as here, of a System Board of Adjustment hearing between two private parties.  *See Sladek*, 2001 WL 1640054, at *1.

opponents during enforcement proceedings, much of the efficiency and usefulness of arbitration would be lost.").

Therefore, this Court can and should consider the underlying transcript, exhibits and post-hearing briefing on Atlas' motion to dismiss.[4]

## II.     COUNT I SHOULD BE DISMISSED BECAUSE ARBITRATOR NICOLAU ACTED WITHIN THE SCOPE OF THE ATLAS SYSTEM BOARD'S JURISDICTION.

Atlas established in its Opening Brief that, contrary to the IBT's allegations in Paragraph 33 of the Complaint, Arbitrator Nicolau and the Atlas System Board had exclusive jurisdiction under the Atlas CBA, and the applicable federal law, the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq*.), to interpret and apply the trigger provisions of the CBA's merger procedures, including Section 1.F.2(ii).  45 U.S.C. § 184; (Janger Declaration ¶ 2, Ex. A at § 21.B.1); (*see also* Opening Br. at 2-3, 13-18.)  The IBT argued to Arbitrator Nicolau that Atlas' grievance waived Atlas' right to invoke the Section 1.F.2(ii) trigger for application of the Atlas CBA's merger procedures, and thus Atlas was only permitted to invoke a different trigger found in Section 1.F.2(i) of the Atlas CBA.  (*See* Janger Decl. ¶ 5, Ex. G at 61-66; Janger Decl. ¶ 3, Ex. B at 73:22-75:9, 112:1-114:6, 120:4-121:9.)  Arbitrator Nicolau considered and rejected this argument after hearing Atlas' evidence that its grievance broadly alleged a violation of the contractual merger procedures in Section 1.F.2.b.iii of the Atlas CBA without limiting which contractual trigger for those procedures was applicable.  (*See* Janger Decl. ¶ 5, Ex. F at 59-63.) This evidence included the pre-arbitration processing of the grievance, including federal court litigation to compel the IBT to submit the grievance to arbitration before the Atlas System Board,

---

[4] If this Court determines that it cannot consider these materials on a motion to dismiss, Atlas requests that the Court convert the motion into a motion for summary judgment. *See, e.g., Bates v. Donley*, 935 F. Supp. 2d 14, 17 (D.D.C. 2013).

where Atlas expressly cited to the Section 1.F.2(ii) trigger as a basis for its grievance.  (Janger
Decl. ¶ 6, Exs. H, I, J (Co. Exs. 60, 64 and 65).)  The arbitration record accordingly reflects that,
contrary to IBT's allegations, there were no surprises at the arbitration hearing regarding the
contractual basis for Atlas' grievance.  (*See* Opening Br. at 13-15.)

      In its Opposition, the IBT claims that this Court has authority to interpret the CBA and
past practice differently than Arbitrator Nicolau with regard to the alleged waiver of the Section
1.F.2(ii) trigger.[5]  (Opp. at 8-9 (claiming whether Atlas waived its argument "can only be
resolved by interpreting the CBA here and inquiring into the parties' past practice" because CBA
provisions required "Defendant to make the Plaintiffs [be] aware of [Atlas'] claim before the
arbitration began").)  But the IBT's argument is not correct—the issue of contract interpretation
identified by the IBT is for the exclusive arbitration jurisdiction of the Atlas System Board, and
cannot be re-litigated in this Court.  *See, e.g., Bhd. of Locomotive Eng'rs v. Louisville &
Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963) ("[T]his statutory grievance procedure is a
mandatory, exclusive, and comprehensive system for resolving grievance disputes."); *Air Line
Pilots Ass'n v. Trans World Airlines, Inc.*, 729 F. Supp. 888, 890 (D.D.C. 1989); *Indep. Ass'n of
Cont'l Pilots v. Cont'l Airlines*, No. CIV. A. 96-389-SLR, 1997 WL 309438, at *4 (D. Del. Apr.
29, 1997) ("Whether the parties have complied with the procedural requirements of the collective
bargaining agreement such that an arbitrator may address the merits of a dispute is a matter for
the arbitrator to decide.").  This principle applies here, where Arbitrator Nicolau expressly

---

[5] The IBT also falsely claims that Atlas ignored Paragraph 33.  (Opp. at 9.)  Atlas explicitly
addressed this paragraph, along with the IBT's general argument that Arbitrator Nicolau
exceeded his jurisdiction in issuing the Decision and Award.  (*See* Opening Br. at 2-3.)

considered and decided the CBA Section 1.F.2(ii) waiver issue raised by the IBT.[6]

### III.   COUNT II OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE IBT DOES NOT PLAUSIBLY ALLEGE THAT THE DECISION AND AWARD VIOLATES MCCASKILL-BOND.

The McCaskill-Bond Amendment does not require application of Sections 3 and 13 of the Allegheny-Mohawk labor-protective provisions where—as here—"the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers." *See* 49 U.S.C. § 42112, Note 117(a)(1).  Instead, in that circumstance, the union's "internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section."  *Id.*  As described in Atlas' Opening Brief, the factual record before Arbitrator Nicolau described an IBT past practice and policy whereby the IBT could promptly provide an ISL to Atlas, and Section 1.F.1.a of the Atlas CBA expressly stated that such policy should be used where, as here, the IBT represented both pre-merger pilot groups.  (Opening Br. at 18-21.) Having heard no argument from the IBT that the Allegheny-Mohawk process for formulating the ISL must be followed, or that the Union did not have a policy that would allow for an expedited formulation of the ISL, or that Section 1.F.1.a of the Atlas CBA was inapplicable, Arbitrator Nicolau accordingly concluded that under the Atlas CBA, the Allegheny-Mohawk process was "not required in this case."  (Decision and Award at 12.)

The IBT's Opposition makes no argument regarding this extensive record before Arbitrator Nicolau and effectively concedes that the evidence demonstrated the IBT could

---

[6] The IBT tries to downplay the extremely limited basis upon which this Court can overturn Arbitrator Nicolau's Decision and Award, but even the IBT concedes such review is "narrow." (Opp. at 7.)  In fact, "[j]udicial review of decisions made by Adjustment Boards or Public Law Boards under the RLA is extraordinarily limited, indeed, among the narrowest known to the law."  *Am. Fed'n of R.R. Police v. Nat'l R.R. Passenger Corp.*, No. CV 86-4173 (RR), 1989 WL 32842, at *4 (E.D.N.Y. Mar. 27, 1989) (internal quotation marks omitted).

produce an ISL in 45 days.  (Opp. at 9-10.)  Instead, the IBT merely argues that the Award

"ordered the parties to create a list in a brief time period" and thus the IBT would not have

sufficient time to comply with Allegheny-Mohawk procedures.  (*Id.* at 9-10.)  But the IBT's

argument does nothing to undermine Arbitrator Nicolau's ruling that the Atlas CBA did not

require application of Allegheny-Mohawk procedures.  (Decision and Award at 12.)  In this

regard, the IBT's claim that this Court will have to "inquire into factual and legal questions about

IBT policy" and past practice is not correct.  Pursuant to the exclusive jurisdiction of the Atlas

System Board, Arbitrator Nicolau already heard evidence and resolved that issue when he

determined that Allegheny-Mohawk is "not required in this case."  *See Bhd. of Locomotive

Eng'rs*, 373 U.S. at 36-38.

Moreover, as explained in Atlas' Opening Brief, the Decision and Award does not

require *implementation* of the ISL, but rather requires only that an ISL be produced in order to

trigger the Section 1.F bargaining process for a JCBA.  (Opening Br. at 27-28.)  Nothing in the

Award precludes revision of the ISL during the negotiation (and interest arbitration if needed) of

the JCBA pursuant to Section 1.F.  (*See* Opening Br. at 27.)  The IBT does not address this

argument.  If the IBT wishes to do so, it will have ample time to pursue any seniority integration

procedures it feels are warranted, including Allegheny-Mohawk—but only after it immediately

delivers an initial version of the ISL to Atlas in conformance with the Decision and Award.

## IV.   COUNT III OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE SOUTHERN PILOTS' RIGHTS ARE UNAFFECTED BY THE DECISION AND AWARD.

Arbitrator Nicolau's Decision and Award requiring the IBT to present the ISL to Atlas

within 45 days, and to commence a nine-month period for negotiation of the JCBA (plus an

additional period for interest arbitration of any unresolved bargaining proposals), did not infringe

on the Southern pilots' rights.  (*See* Opening Br. at 21-23.)  Arbitrator Nicolau had broad

discretion, indeed an obligation, to fashion an award that would give meaning to the parties'

agreement under Section 1.F.  *Brewery & Beverage Drivers Local 67 v. Canada Dry Potomac*

*Corp.*, 628 F. Supp. 73, 75 (D.D.C. 1986) (where arbitrator finds breach of the CBA, "it is now

the duty of the arbitrator to fashion an appropriate remedy").  Any other result would have

literally rendered Section 1.F unenforceable, contrary to the parties' written agreement and sound

precedent.  *See Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace*

*Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir. 2000)

("[A]s with all contracts, courts should attempt to read CBAs in such a way that no language is

rendered superfluous.").

      The IBT argues that by ordering the production of an ISL combining the Atlas and

Southern pilot seniority lists, Arbitrator Nicolau effectively ruled on the terms of the Southern

pilots' CBA.  (Opp. at 11.)  But that is not accurate.  Arbitrator Nicolau did nothing more than

interpret and apply Section 1.F of the Atlas CBA, including ordering the IBT to comply with its

terms, leaving the interpretation and application of similar terms in the Southern CBA to the

Southern System Board of Adjustment chaired by Arbitrator Bloch.  The Southern System Board

has in fact interpreted the Southern CBA to require the same JCBA process ordered by Arbitrator

Nicolau under the Atlas CBA.  (Compl. ¶ 26.)  As the Second Circuit Court of Appeals held on

November 21, 2019, affirming an order compelling arbitration of the Atlas and Southern

management grievances, "the Atlas Board and the Southern Board must make two independent

determinations as to whether the Union must negotiate a JCBA under Section 1.F of the Atlas

CBA and Section 1.B of the Southern CBA.  The Atlas Board will only decide whether the Atlas

CBA requires Atlas pilots to negotiate a JCBA, and the Southern Board will only decide whether

the Southern CBA requires Southern pilots to do so.  Nothing in the process of interpreting the

provisions of the two collective bargaining agreements purports to bind Atlas or Southern pilots to the terms of another existing collective bargaining agreement." *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 2019 WL 6204930, at *11 (2d Cir. Nov. 21, 2019).[7]

The IBT also claims that the Decision and Award deprives Atlas and Southern pilots of their rights "to challenge the accuracy of their respective seniority lists," and their "rights under their respective CBAs because [Arbitrator] Nicolau ordered the production of an integrated list even while Atlas and Polar pilots are still awaiting an arbitrator's resolution of a seniority list dispute." (Opp. at 12.)  The IBT never made these arguments to Arbitrator Nicolau and therefore cannot make them now.  *See Belt Ry. Co. of Chicago*, 2012 WL 1118077, at *7.  If it were otherwise, a party could simply reserve its arguments until it lost the underlying arbitration, and effectively re-litigate its case on a petition to vacate. *John Hofmeister & Son, Inc.*, 950 F.2d at 1344.  Regardless, the IBT's argument again ignores that it need not present the final ISL to Atlas to comply with Arbitrator Nicolau's award.  The IBT will have ample opportunity to revise the list over the nine-month negotiation and interest arbitration process.  (*See* Opening Br. at 27.)

The IBT's argument regarding Arbitrator Nicolau's remedy imposing a 45-day period to produce the ISL also ignores the extraordinary delay—for over three years—that has already occurred due to the IBT's demonstrably unlawful conduct.  As set forth in Atlas' Opening Brief, the record evidence before Arbitrator Nicolau established that the IBT flatly refused to comply with Section 1.F at the time of the merger (including production of an ISL to initiate the JCBA bargaining process), and then flatly refused to arbitrate over Atlas' grievance seeking compliance

---

[7] The Second Circuit's decision moots the IBT's claim made in its Complaint that "[i]f the Second Circuit reverses the district court's decision, then the two resulting, separate arbitrations discussed below that were conducted by the Southern and Atlas System Boards of Adjustment, as well as any and all rulings issued by the district court, will be null and void."  (Compl. ¶ 24.)

with Section 1.F, thereby forcing extended federal court litigation and an eventual order

compelling the IBT to arbitrate the grievance.  (Opening Br. at 8.)  The IBT has thus been on

notice of its obligation to produce an ISL for well longer than the 45 day period indicated in the

remedy imposed by Arbitrator Nicolau.

**V.     COUNT IV SHOULD BE DISMISSED BECAUSE IT DOES NOT PLAUSIBLY
         ALLEGE A VIOLATION OF THE RLA.**

Atlas established in its Opening Brief that Count IV should be dismissed because

Arbitrator Nicolau's award did not change any term of the CBA or violate the RLA.  (*See*

Opening Br. at 23-25.)  In response, the IBT repeats the allegations made in its Complaint,

claiming that Arbitrator Nicolau's Decision and Award infringed on the Atlas pilots' rights under

Section 6 of the RLA and McCaskill-Bond.  (Opp. at 13-19.)  Neither argument is correct.

First, Arbitrator Nicolau did not violate Atlas pilots' rights under Section 6 of the RLA.

It is well-established that the parties can agree to reach a collective bargaining agreement using

an alternate to traditional RLA Section 6 procedures.  *See, e.g., Seaboard World Airlines, Inc. v.

TWU*, 443 F.2d 437, 439 (2d Cir. 1971); *Air Line Pilots Ass'n v. Alaska Airlines, Inc.*, 2005 WL

2898140, at *1 (W.D. Wash. Oct. 28, 2005); *c.f., Trans Int'l Airlines, Inc. v. Int'l Bhd. of

Teamsters*, 650 F.2d 949, 960-61 (9th Cir. 1980) (enforcing CBA provision prohibiting strikes

even when permitted under the RLA because "[t]he RLA does not . . . preclude the parties from

adopting a different procedure by contract").

The IBT argues that this extensive case law is inapposite because "the parties had not

entered into Section 6 negotiations, nor had a party requested the services of the NMB."  (Opp. at

17.)  These purported differences in case posture, however, have no relevance to whether parties

to a CBA can agree to adopt alternatives to traditional RLA Section 6 procedures.  Moreover,

Judge Forrest in the Southern District of New York has already determined that even if the NMB

had asserted jurisdiction over Section 6 negotiations between the parties, the question of whether

Section 1.F of the Atlas CBA requires use of alternate bargaining procedures is a minor dispute

to be "resolved by the appropriate adjustment board(s)." *Atlas Air, Inc. v. Int'l Bhd. of

Teamsters*, 293 F. Supp. 3d 457, 468 (S.D.N.Y. 2018).  In affirming the District Court, the

Second Circuit agreed that "the management grievances do not involve a major dispute.  The

parties are subject to existing, albeit amendable, collective bargaining agreements that govern the

pay, rules, and working conditions of the Atlas and Southern pilots.  The disputes here relate to

whether the Union is in violation of those collective bargaining agreements by refusing to

negotiate a JCBA."  *Atlas Air, Inc.*, 2019 WL 6204930 at *6.  As such, the RLA's status quo

provisions upon which the IBT relies are inapplicable here.  (Opp. at 14.)  Whether the parties

were engaged in RLA Section 6 negotiations or had requested NMB mediation would only be

relevant if Atlas CBA Section 1.F provided for an exception in those circumstances.  (Opening

Br. at 25.)  As such, the only questions before Arbitrator Nicolau was whether Atlas CBA

Section 1.F. applied and, if so, did it include an exception for situations where RLA Section 6

negotiations had commenced.  His determination that Section 1.F applied without finding an

exception for Section 6 is final and binding on the parties.[8]  (Opening Br. at 24-25.)

The IBT next argues that Arbitrator Nicolau's remedy compels a change in the rates of

pay, rules, or working conditions of Atlas pilots because it compels (1) an ISL that changes the

seniority of the Atlas pilots and the Atlas CBA, and (2) negotiation and potential interest arbitration

[8] The IBT also argues that Arbitrator Nicolau infringed upon the Southern pilots' rights by requiring them to end Section 6 negotiations prematurely.  (Opp. at 14-15.)  As explained, *supra*, Arbitrator Nicolau's Decision and Award did not require the Southern pilots to take any action or purport to interpret the Southern CBA.  Southern pilots are only required to participate in this process because the Southern System Board, chaired by Arbitrator Bloch, came to the same fundamental conclusion as Arbitrator Nicolau in interpreting similar provisions of the Southern CBA.

of a JCBA that will lead to a change in the pilots' rates of pay, rules, or working conditions.  (Opp. at 16.)  Arbitrator Nicolau's remedy, however, did nothing more than compel compliance with Section 1.F.—which requires production of the ISL, along with negotiation and potential interest arbitration of a JCBA.  Arbitrator Nicolau was permitted, and in fact obligated, to order such a remedy in the face of the IBT's violation of Section 1.F.  *Brewery & Beverage Drivers Local 67*, 628 F. Supp. at 75.  Further, the Southern pilots are unaffected by the remedy ordered by Arbitrator Nicolau.  The mandate that Southern pilots comply with similar provisions of the Southern CBA was ordered by Arbitrator Bloch sitting with the Southern System Board.

Finally, the IBT argues that Arbitrator Nicolau improperly interpreted Atlas pilots' statutory rights to the Allegheny-Mohawk seniority integration procedures under McCaskill-Bond.  (*See* Opp. at 17-19; Janger Decl. ¶ 2, Ex A at 7 (CBA § 1.F.2.a.ii).)  This is not correct.  First, as demonstrated above, it is beyond dispute that McCaskill-Bond does not require the use of Allegheny-Mohawk procedures where, as here, the same union represents both pre-merger pilot groups.  49 U.S.C. § 42112, Note 117(a)(1).  Second, as explained in Atlas' Opening Brief, Arbitrator Nicolau's holding that "Allegheny-Mohawk is not required in this case" was not a statutory interpretation of McCaskill-Bond, but rather was a contractual interpretation of Section 1.F.2.a.i of the Atlas CBA, which expressly requires the use of the IBT's merger policy (and not Allegheny-Mohawk) in the Atlas-Southern merger—a merger policy that the testimony made clear "could produce a seniority list on very short order."  (*See* Opening Br. at 5.)  This point is made even more clear by the indisputable fact that the meaning and requirements of McCaskill-Bond were not even briefed to, let alone addressed by, Arbitrator Nicolau.  Arbitrator Nicolau's determination that Allegheny-Mohawk procedures were not required therefore drew its essence from the CBA, and thus is not subject to review.  (Opening Br. at 5); *see also Int'l Ass'n of Sheet*

*Metal, Air, Rail & Transp. Workers, Transp. Div. v. Port Auth. Trans-Hudson Corp.*, No. 1:19

CV 228, 2019 WL 6117475 (N.D. Ohio Nov. 18, 2019) ("Under the relevant standard of review,

there is only one question the reviewing court must ask: did the arbitrator appear to be engaged

in interpreting the agreement or agreements before him?  If so, the court's inquiry ends.  If it is

unclear, the court will presume that the arbitrator was doing just that.").

## VI.   THE IBT IS NOT ENTITLED TO INJUNCTIVE RELIEF.

Atlas explained in its Opening Brief that the IBT has failed to state a claim for injunctive

relief.  (*See* Opening Br. at 23-28.)  First, the IBT has not demonstrated a likelihood of success

on the merits.  (*Id.* at 26.)  Second, the Decision and Award does not affect the status quo under

the RLA, given that the IBT need only provide an ISL for the purpose of commencing

negotiations for a JCBA, and is free to modify the ISL until such time as the JCBA and ISL are

implemented.  (*Id.* at 27.)  Third, an injunction is unnecessary to protect Atlas or Southern pilots.

The IBT has been ordered to comply with its obligations under the Atlas CBA (as it was

compelled to comply with the Southern CBA by the Southern System Board).  As such,

compliance with the Decision and Award will only lead to compliance with the agreed-upon

terms of the CBA.  (*Id.* at 27-28.)  Finally, an injunction would not benefit the public interest

because enjoining application of a validly-issued arbitration award would undermine the finality

of statutorily-required arbitrations—a central tenet of the RLA.  (*Id.* at 28.)

The IBT does not address or rebut Atlas' arguments in its Opposition, but instead only

recites the allegations it made in its Complaint, claiming that Arbitrator Nicolau's Decision and

Award would "extinguish rights preserved by the RLA and McCaskill Bond Amendment,"

extinguish the Atlas pilots rights under the CBA, require the Union to breach its duty of fair

representation, and would be contrary to the public interest in stable labor relations.[9]  (Opp. at 20-21.)  As explaining in Atlas' Opening Brief, and in Sections I-V, *supra*, Arbitrator Nicolau's Decision and Award does not extinguish the rights of Atlas or Southern pilots.  The IBT has ample time to formulate an ISL on a fair basis for both pilot groups, particularly given that, after complying with the Decision and Award by producing the ISL and commencing the JCBA bargaining process, it will have months prior to implementation to revise the ISL, if the IBT wishes to do so.  (Opening Br. at 27-28.)  Finally, the IBT does not explain how enforcement of a valid arbitration award interpreting a mutually-agreed upon contractual provision would disrupt "stable labor relations."  (Opening Br. at 28.)  The IBT's conclusory assertion that it is entitled to injunctive relief must therefore be denied.

## **CONCLUSION**

For these reasons, the IBT has failed to state a plausible claim.  Because its proposed claims are deficient as a matter of law, amendment would be futile.  Atlas thus respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).  If the Court determines it is appropriate to do so, Atlas further respectfully requests that its Motion to Dismiss be converted to a Motion for Summary Judgment and decided on that basis.

Dated:   November 22, 2019                  Respectfully submitted,
         Washington, D.C.

                                            By:      /s/ Robert A. Siegel
                                                  Robert A. Siegel
                                                  (D.C. Bar #1004474)
                                                  Rachel S. Janger

---

[9] Inexplicably, the IBT continues to argue there would be irreparable injury "suffered by the public" even though, as Atlas established in its Opening Brief, for both a preliminary and permanent injunction, the only injury to be considered is that which would allegedly occur to *plaintiffs* in the absence of an injunction.  (Opening Br. at 27 n.15); *Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891, 893 (D.C. Cir. 2010); *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015).

(D.C. Bar #467142)

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
rsiegel@omm.com
rjanger@omm.com

*Attorneys for Defendant Atlas Air, Inc.*