**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION**, *et al.* |
| Plaintiffs, |
| v. |
| **ATLAS AIR, INC.,** |
| Defendant. |

Case No. 19-cv-2723 (CRC)

## <u>MEMORANDUM OPINION</u>

Two airlines, Southern Air and Atlas Air, have been in the midst of a merger since 2016. The union representing pilots from both carriers, the International Brotherhood of Teamsters, and the airlines disagree about the meaning of the merger provisions in each airlines' collective bargaining agreements. After the airlines successfully compelled the union to submit their disputes to arbitration, both the Southern and Atlas arbitration boards entered awards in favor of the airlines. The union filed separate petitions to vacate the awards. This case is before the Court on Atlas's motion to dismiss the union's petition to vacate the Atlas Board's award. Finding no plausible basis for vacating the award, the Court will grant the motion to dismiss.[1]

### I. Background

The International Brotherhood of Teamsters ("IBT" or the "Union") is the exclusive bargaining representative of pilots employed by and who fly aircraft for Atlas Air ("Atlas" or the

---

[1] The Court is simultaneously issuing an opinion granting Southern Air's motion to dismiss the union's petition to vacate the Southern Air arbitration board's award. <u>See</u> Int'l Bhd. of Teamsters v. Southern Air, Inc., No. 19-cv-1948.

"Company"), a world-wide air carrier.[2]  Compl. ¶¶ 4-6.  The operative collective bargaining

agreement between the Union and Atlas was signed in 2011 (the "Atlas CBA") and covers the

rates of pay, rules, and working conditions of IBT-represented pilots employed by Atlas.  Id. ¶ 7;

Def. Mot. Dis., ECF No. 7, Exh. A [hereinafter "Atlas CBA"].  In addition to establishing a

standard grievance and arbitration procedure for disputes arising out of the contract, see Compl.

¶¶ 11-12; Atlas CBA §§ 20-21, the Atlas CBA provides an expedited grievance and arbitration

procedure for certain disputes associated with a merger or acquisition, see Compl. ¶¶ 8-10; Atlas

CBA §§ 1.F & .H.

In January 2016, Atlas Air Worldwide Holdings ("AAWW") announced that it had

entered into an agreement to acquire Southern Air Holdings, Inc. ("SAHI").  The acquisition was

approved by each company's shareholders in April 2019.  Id. ¶ 15.  SAHI is the parent company

of Southern and another air carrier, Florida West International Airways.  Id.  AAWW is the

parent company of Atlas Air and Polar Air.  IBT also represents the Southern-employed pilots,

and IBT and Southern are parties to a separate collective bargaining agreement (the "Southern

CBA").  Id. ¶ 16.

Upon announcing its acquisition of SAHI, AAWW announced a plan to operationally

merge Southern into Atlas.  Id. ¶ 17.  The Atlas CBA provides for certain seniority list

integration and joint collective bargaining agreement negotiations procedures "(i) [i]n the event

the Company acquires another air carrier and decides there will be a complete operational merger

---

[2] In its October 31, 2019 Minute Order, the Court granted Plaintiffs' motion to substitute the Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 2750 as Plaintiff for Local Union No. 1224 based on the parties' representation that Local 2750 was now the exclusive bargaining representative for the Atlas pilots.  The Court will refer to IBT and Local 2750 collectively as the "Union."

between the Company and such other air carrier," or "(ii) in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier." Atlas CBA § 1.F.2. Should "a merged agreement . . . not be[] executed within nine (9) months from the date that the Union presents to the Company a merged seniority list," the CBA mandates that the parties "submit the outstanding issues to binding interest arbitration" and creates an expedited arbitration procedure for resolving such disputes that permits either "the Company or Union" to submit grievances "directly before the [Board]." Id. §§ 1.F.2.b.iii & H.1.

Invoking the merger provisions in both the Atlas and Southern CBAs,[3] AAWW demanded that the Southern and Atlas pilot groups begin negotiations to merge the two pre-existing CBAs into one and to integrate their seniority lists. Compl. ¶ 17. The Union and both pilot groups refused both demands. Id. ¶ 19.

In April 2016, Atlas filed a management grievance against the Union (the "Atlas Grievance") alleging that the Union had violated the Atlas CBA by refusing to present an integrated seniority list ("ISL") and to engage in joint collective bargaining agreement ("JCBA") negotiations. Id. ¶ 21. The Union responded that it was not required to arbitrate the grievance. Id. Southern purported to submit a similar grievance against the Union in January 2017 for refusing to engage in negotiations for a JCBA or submit an ISL (the "Southern Grievance"). Id. ¶ 22. The Union also refused to arbitrate the Southern Grievance. Id.

Southern and Atlas then brought suit against the Union in the United States District Court for the Southern District of New York to compel the Union to arbitrate their respective

---

[3] The collective bargaining agreement between Southern and IBT also provided similar procedures of the integration of seniority lists, negotiation of a joint collective bargaining agreement, and expedited arbitration of outstanding issues.

grievances. Id. ¶ 23. Judge Forrest granted the airlines' motion to compel arbitration of both

grievances in March 2018, Atlas Air, Inc. v. Int'l Bhd. of Teamsters, 293 F. Supp. 3d 457

(S.D.N.Y. 2018), which was affirmed by the Second Circuit in November 2019, Atlas Air, Inc. v.

Int'l Bhd. of Teamsters, 943 F.3d 568 (2d Cir. 2019).

The Atlas System Board of Arbitration (the "Board") heard the Atlas Grievance in

October 2018. Compl. ¶ 27. In August 2019, Chairman George Nicolau entered a Decision and

Award in Atlas's favor, concluding that the Union had violated Section 1.F.2.b.iii of the CBA by

refusing to engage in ISL or JCBA negotiations following the announcement of a complete

operational merger between Atlas and Southern. See Compl., Exh. A [hereinafter "Dec. &

Aw."]. The Board thus directed the Union to submit an ISL to Atlas within 45 days and to

engage in JCBA negotiations and, if necessary, submit outstanding issues to binding interest

arbitration. Id. at 12.[4]

The Union then filed suit in this Court to vacate the Atlas Board's Decision and Award.

The Union alleged that the Decision and Award failed to confine itself to matters within the

scope of the Board's jurisdiction, failed to draw its essence from the Atlas CBA, and violated

federal law and public policy. Compl. ¶¶ 43-45. Atlas filed a motion to dismiss. Finding no

plausible ground to vacate the arbitrator's award, the Court will grant Atlas's motion in full.

---

[4] The Southern System Board of Adjustment heard the Southern Grievance in October
2018. Compl. ¶ 25. Arbitrator Richard Bloch issued an Opinion and Award in favor of Southern
in June 2019. Id. ¶ 26. The Southern Board concluded that the Union had violated the merger
provisions of the Southern CBA by refusing to engage in JCBA or ISL negotiations. Id. The
Southern Board thus ordered the Union to submit an ISL to Southern within forty-five days and
to participate in JCBA negotiations. Id. The Union filed suit in this Court to vacate the Southern
Board's Opinion and Award, which, as mentioned, the Court will address in a separate opinion.
See Int'l Bhd. of Teamsters v. Southern Air Inc., No. 19-cv-1948.

## II. Legal Standards

The Railway Labor Act ("RLA") "provide[s] for the prompt and orderly settlement of all disputes" between air carriers and their employees.  Landers v. Nat'l R.R. Passengers Corp., 485 U.S. 652, 656 (1988) (quoting 45 U.S.C. § 151a(5)).  To that end, it requires carriers and employees to form collective bargaining agreements and creates two types of dispute resolution procedures, which vary based on whether the dispute is "major" or "minor."  See Consol. Rail Corp. v. Ry. Labor Exec. Ass'n, 491 U.S. 299, 302 (1989).

"[M]ajor disputes are those over the formation of collective agreements" affecting employees' rates of pay, rules, or working conditions "or efforts to secure them."  Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 72 n.1 (2009) (internal quotation marks omitted); 45 U.S.C. § 156.  Given the magnitude of the issues at stake, the RLA establishes a "rather elaborate machinery for negotiation, mediation, voluntary arbitration, and conciliation" that governs the resolution of major disputes.  Detroit & T. S. L. R. Co. v. United Transp. Union, 396 U.S. 142, 148-49 (1969) (citing Gen. Comm. of Adjustment v. Missouri-Kansas-Texas R.R. Co., 320 U.S. 323, 328-33 (1943)).  A central feature of this machinery is that "[u]ntil they have exhausted those procedures, the parties are obligated to maintain the status quo, and the employer may not implement the contested change in rates of pay, rules, or working conditions."  Consol. Rail, 491 U.S. at 302-03.

A minor dispute, by contrast, "involves a question about how to interpret an existing collective bargaining agreement, like the meaning of a term or whether the agreement permits a certain action."  Atlas Air, Inc. v. Int'l Bhd. of Teamsters, 928 F.3d 1102, 1108 (D.C. Cir. 2019) (citing Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945)).  The Second Circuit

determined that the Atlas Grievance constituted a minor dispute, and the parties do not contest that characterization. The framework for resolving a minor dispute is considerably less involved: disputes are first to be handled according to the grievance procedure agreed upon in the CBA and, if unsuccessful, are submitted to mandatory arbitration before the National Railroad Adjustment Board or, as here, a special board of adjustment established by the carrier and the union. Norfolk S. Ry. Co. v. Solis, 915 F. Supp. 2d 32, 36 (D.D.C. 2013); see also 45 U.S.C. § 153 First (i).

"Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." Union Pac. R. Co. v. Sheehan, 439 U.S. 89, 94 (1978). The RLA thus makes the mandatory arbitration process exclusive of all other remedies and an award issued by the board "final and binding." 45 U.S.C. § 153 First (m); see Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 322-24 (1972). Judicial review of such awards is available only on grounds of: (1) failure to comply with the requirements of the RLA; (2) failure to confine the decision to matters within the scope of the board's jurisdiction; (3) fraud or corruption; and (4) contravention of law and public policy. See 45 U.S.C. § 153 First (q); Sheehan, 439 U.S. at 93; Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189 Labor Comm., 855 F.3d 335, 338 (D.C. Cir. 2017).

To withstand Atlas's motion to dismiss, then, the Union's complaint must allege facts that support at least one of the above-mentioned grounds for judicial review. The Court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint's allegations do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making that determination, the Court "must

take all of the factual allegations in the complaint as true," save legal conclusions "couched as . . . factual allegation[s]." Id. (citing Twombly, 550 U.S. at 555). The Court may not consider materials outside the pleadings, except "documents attached as exhibits or incorporated by reference in the complaint," Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011), and documents attached to a motion to dismiss if their "authenticity is not disputed," "they are referred to in the complaint," and they "are integral to [the plaintiff's] claim[s]," Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) (citations omitted).[5]

## III. Analysis

### A. Count I: Challenges to the Board's Liability Finding

The Court begins with the question whether it must vacate the Board's conclusion that the Union violated the Atlas CBA by refusing to present an ISL or engage in JCBA negotiations. The Atlas CBA sets mandatory procedures governing seniority list integration and JCBA negotiations upon certain merger-related events. If, as is undisputed here, the same Union represents the employees of both airlines to be merged, "th[at] Union's Merger Policy shall be utilized to integrate the two seniority lists," Atlas CBA § 1.F.2.a.i, and "the parties shall on a

_____

[5] The parties dispute whether the Court may consider the various exhibits attached to Atlas's motion to dismiss. The Court concludes that it may—without converting Defendant's motion into one for summary judgment—consider the Atlas CBA, Def. Mot. Dis., Exh. A, the transcript of the arbitration hearing, id., Exhs. B-D, and the parties' submissions to the Board, id., Exhs. E-J. See, e.g., Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 47 (D.D.C. 2009) (considering a copy of a contract in a contract dispute); Marshall v. Honeywell Tech. Sols., Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008) ("Where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." (internal quotation marks omitted)); Sladek v. Northwest Airlines, Inc., No. 01-70 JRT/FLN, 2001 WL 1640054, at *2 (D. Minn. Sept. 21, 2001) (taking judicial notice of the RLA Board's hearing transcript as a public record); cf. Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (taking into consideration "the various letters and materials produced in the course of plaintiff's discharge proceeding").

timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement," id. § 1.F.2.b.iii. If "a merged agreement has not been executed within nine [] months from the date that the Union presents to the Company a merged seniority list that complies with [Section 1.F.2], the parties shall jointly submit the outstanding issues to binding interest arbitration." Id.

These mandatory provisions are only triggered, however, in two instances: if "(i) the Company acquires another air carrier and the Company decides there will be a complete operational merger between the Company and such other air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the respective carriers," or "(ii) in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the Company and an affiliated air carrier." Id. § 1.F.2. The CBA defines "complete operational merger" as "the combination of all or substantially all of the assets of the carriers." Id. § 1.F.3.

Despite disagreeing on the precise framing of the issue presented, both parties' submissions made clear that the basic dispute they were submitting to the Board was whether the Union's obligations under Section 1.F.2.b.iii to engage in JCBA negotiations had been triggered. See Dec. & Aw. 3. To resolve that question, the Board needed to determine whether either of that provision's triggers—delineated in Sections 1.F.2(i) and 1.F.2(ii)—had been satisfied. See Madison Hotel v. Hotel & Rest. Emps., Local 25, AFL-CIO, 144 F.3d 855, 857 (D.C. Cir. 1998)

8

("An arbitrator's view of the issues submitted to him for arbitration . . . receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement.").[6]

The Board concluded that the Union's obligations had been triggered by Atlas's decision to operationally merge Southern and Atlas. The Board pointed out that, following the official acquisition announcement by AAWW in January 2016, Atlas leadership met with IBT officials in February 2016 to make it clear that a complete operational merger between Atlas and Southern was intended. Following that meeting, Atlas sent IBT a letter in April 2016 confirming that Atlas was "proceeding to merge Southern Air, Inc. into Atlas Air, Inc." Dec. & Aw. 11. In the Board's view, therefore, Atlas had sufficiently "decide[d] [that] there w[ould] be a complete operational merger between Atlas and Southern" such that, pursuant to Section 1.F.2(ii), the Union's obligations under Section 1.F.2.b.iii had been triggered. Id. at 12. The Board thus granted the Atlas Grievance in its entirety and ordered the Union to fulfill its contractual obligations to promptly present an ISL and engage in JCBA negotiations and, if necessary, interest arbitration.

Count I of the complaint alleges that the Board, in reaching that conclusion, considered matters outside the scope of its authority. See Compl. ¶ 35. With respect to this ground for judicial review, the Court may vacate an award "only if it does not 'draw[] its essence' from the terms of the collective bargaining agreement." Howard Univ. v. Metro. Campus Police Officer's Union, 512 F.3d 716, 720 (D.C. Cir. 2008) (quoting United Steelworkers of Am. v. Enter. Wheel

_____

[6] "This question—the scope of the submission to the arbitrator—should not be confused with the question of arbitrability—whether the employer and the union agreed in the collective bargaining agreement to put a particular issue to arbitration. The latter question is reviewed by a federal court de novo." Madison Hotel, 144 F.3d at 857 n.1 (citing Williams v. E.F. Hutton & Co., 753 F.2d 117, 119 (D.C. Cir. 1985); Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 166-67 (D.C. Cir. 1981)). There is no allegation here that the disputes at issue were not arbitrable.

& Car Corp., 363 U.S. 593, 597 (1960)); see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 765 (1983) (noting that the "scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator"). This is a high bar; "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). The Court concludes that the Union has not cleared that high bar here.

### 1. Atlas's Waiver of Reliance on Section 1.F.2(ii)

As a threshold matter, the Union alleges that the Board erred by considering whether the Union's obligation to participate in ISL or JCBA negotiations was precipitated by an event in Section 1.F.2(ii)—as opposed to Section 1.F.2(i)—because Atlas purportedly "waived" its reliance on that provision by not raising it in its initial grievance. Compl. ¶¶ 28-33, 43-47.

In making this argument, the Union invokes a separate provision in the CBA that limits the Board's authority to considering only those issue(s) proffered in the initial written grievance and any issues arising from its subsequent processing. Id. ¶ 33; Atlas CBA § 21.B.3. The Union thus contends that, because Atlas's initial grievance alleged only that the triggering event in Section 1.F.2(i) had occurred, the Board exceeded its authority in considering Section 1.F.2(ii). Although the Board did not expressly address this argument, the Court concludes that the Board's rejection of it "drew its essence" from the CBA. See Republic of Argentina v. AWG Grp. LTD., 894 F.3d 327, 338 (D.C. Cir. 2018) ("[An arbitration] panel's decision may be upheld even if it offered no explanation at all."); Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 820 (D.C. Cir. 2007) (noting that "arbitrators are not required to

explain the basis for their award when the grounds can be gleaned from the record" (citing Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 532 (D.C. Cir. 1989)).

By its terms, the Atlas CBA's limitation of the Board's jurisdiction to matters delineated in the initial written grievance and its subsequent processing applies only to "cases arising under Section 20." Atlas CBA § 21.B.3. As the Union itself acknowledges, no such limitation applies to cases arising under Section 1; the CBA expressly provides that "[a]ny grievance filed by the Company or Union alleging a violation of Section 1 shall bypass the initial steps of the grievance process and shall be submitted, heard, and resolved through binding arbitration on an expedited basis directly before the [Board]." Id. § 1.H.1. The Board thus had a textual basis for concluding that its jurisdiction was not limited to matters set forth in the initial Company grievance or its subsequent processing.

In any event, the Atlas Grievance broadly alleged—without limiting its argument to a particular trigger—that the Union had not complied with its obligations under Section 1.F.2.b.iii to engage in JCBA negotiations, and its subsequent briefing before the Board and Judge Forrest expressly invoked Section 1.F.2(ii). See Compl. ¶ 31; Def. Mot. Dis., Exh. B at Tr. 101-04, 108-09, 129-32, Exh. F at 59-63, Exh. G at 66. The Court thus concludes that the Board's consideration of Section 1.F.2(ii) does not provide a basis for vacating the award.

### 2. Whether the Section 1.F.2(ii) Trigger Had Been Met

The Union next contends that the Board exceeded its authority in concluding that the Union's obligations to submit an ISL and to negotiate for a JCBA had been triggered by the events in Section 1.F.2(ii). The CBA requires the Union to engage in JCBA negotiations "in the event *the Company* decides there will be a complete operational merger between the Company and *an affiliated air carrier*, or if *the Company* notifies the Union of its intent to integrate the

Crewmember seniority lists of the Company and *an affiliated air carrier*." Atlas CBA § 1.F.2(ii)

(emphasis added). The Union argues that there was no basis in the CBA for concluding that

Southern was an "affiliated air carrier" or that Atlas, as the "Company," as opposed to AAWW,

had decided that there would be a complete operational merger between Atlas and Southern such

that Section 1.F.2(ii) had been met. The inquiry with respect to these questions "is not whether

the arbitrator's decision is wrong on the merits, but whether his decision draws its essence from

the parties' CBA." U.S. Postal Serv. v. Am. Postal Workers Union, 553 F.3d 686, 693 (D.C. Cir.

2009).

The Board's decision shows that it was interpreting the contractual term "affiliated air

carrier" in Section 1.F.2(ii), which was not defined in the Atlas CBA, when it concluded that

Southern so qualified. The Board presumably accepted Atlas's argument to it that the "plain and

ordinary meaning of 'affiliated air carrier' is . . . 'a company effectively controlled by another or

associated with others under common ownership or control'" and that Southern was, based on

the facts presented to it, such a carrier under that test. Dec. & Aw. 9-10; see Lessin, 481 F.3d at

820 ("[A]rbitrators are not required to explain the basis for their award when the grounds can be

gleaned from the record."). The Complaint does not plausibly allege that the Board "stray[ed]

from interpretation and application of the agreement" in so concluding. Major League Baseball

Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("[I]f an arbitrator is even arguably

construing or applying the contract and acting within the scope of his authority, the fact that a

court is convinced he committed serious error does not suffice to overturn his decision." (internal

quotation marks omitted)).

Nor is there any plausible basis for concluding that the Board was not interpreting the

CBA when it found that Atlas—as opposed to its parent company, AAWW—had decided to

operationally merge Atlas and Southern.  The CBA defined the "Company" to "collectively refer[] to" "Atlas Air, Inc. and Polar Air Cargo Worldwide, Inc.," "a single Air Carrier."  Atlas CBA § 1.A.1.  The Union contends that the Board strayed from this unambiguous provision in concluding that the decision by Atlas's parent company, AAWW—which could not, under any construction of the contract, be the "Company"—to completely operationally merge Atlas and Southern sufficed to satisfy Section 1.F.2(ii).  The Board expressly found that "AAWW's decision to merge the operations of the two carriers did not preclude *the Company from also deciding*, as it did in the labor context, that there would be a complete operational merger between the Company and Southern."  Dec. & Aw. 12 (emphasis added).  It is thus apparent that the Board understood the "Company" to mean Atlas, not AAWW.  The Board went on to find that evidence of Atlas leadership's communications with IBT leadership in February and April 2016 confirming the company's intent to completely operationally merge Southern and Atlas supplied a sufficient factual basis for its finding that Atlas had "decide[d] there w[ould] be a complete operational merger between the Company and an affiliated air carrier."  Atlas CBA § 1.F.2(ii).  There is no plausible basis for concluding that the Board was doing anything other than interpreting and applying the CBA in reaching that conclusion.  See Garvey, 532 U.S. at 509 ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." (citing United Paperworkers, 484 U.S. at 36)).

    B.  Challenges to the Board's Remedy

The Union also raises several objections to the specific remedies that the Board imposed based on its finding that the Union had violated the Atlas CBA—ordering the Union to submit an

ISL to the Company within 45 days and to negotiate a JCBA and, if necessary, submit outstanding issues to binding interest arbitration.  Dec. & Aw. 12.

### 1.  Count I: Whether the Remedy "Drew Its Essence" From the CBA

The Union contends that the Board exceeded its authority under the CBA by imposing a 45-day deadline for it to submit an ISL.  Compl. ¶ 37.  The Union points out, in this regard, that the CBA does not itself specify any such deadline.  See Enter. Wheel, 363 U.S. at 597 (noting that an arbitral "award is legitimate only so long as it draws its essence from the collective bargaining agreement").

The Atlas CBA provides that, following a triggering event, "the parties shall *on a timely basis* begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement" and that outstanding issues shall be submitted to binding interest arbitration should a merged agreement not "be[] executed within nine (9) months from the date that the Union presents to the Company a merged seniority list."  Atlas CBA § 1.F.2.b.iii (emphasis added).  The fact that the CBA does not identify a specific timeframe within which the Union is required to present an ISL to the Company does not mean that the Board dispensed its "own brand of industrial justice" in imposing a 45-day deadline for doing so.  Enter. Wheel, 363 U.S. at 597.  Reading these contractual provisions as a whole, the Board did not stray from the CBA's essence in rejecting the Union's interpretation that it could indefinitely forestall the JCBA negotiations and interest arbitration procedure by refusing to submit an ISL.  See Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union, 589 F.3d 437, 443 (D.C. Cir. 2009) ("The fact that an arbitrator relies on a substantive background principle of law or an established canon of construction—and does not follow the plain text of a contract—does not automatically mean the arbitrator has gone rogue.").

In crafting a remedy for the Union's prolonged refusal to comply with its obligations under Section 1.F.2, the Board permissibly drew upon the "Chairman's experience in these matters and the particular circumstances of this situation, including the size of the pilot units and the time that has passed since the original announcement" in concluding that "the 45 day period is both timely and sufficient to deliver the ISL to the Company." Dec. & Aw. 12; see, e.g., Enter. Wheel, 363 U.S. at 597 (noting the significant "flexibility" given to arbitrators "when it comes to formulating remedies," as "[t]he draftsmen [of CBAs] may never have thought of what specific remedy should be awarded to meet a particular contingency"); United Paperworkers, 484 U.S. at 38 ("[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect."). Accordingly, the Court concludes that the Complaint does not plausibly allege that the Board exceeded its authority under the CBA in imposing a 45-day deadline for the Union's submission of an ISL.

### 2. Count III: The Remedy's Effect on Southern Pilots

Count III alleges that the Award must be vacated because it imposed obligations on Southern pilots, over whom the Atlas Board had no jurisdiction, to participate in the creation of an ISL. See Compl. Prayer for Relief ¶ C; Opp. 11-12. To the extent that the Union's argument is premised on its contention that the Atlas Board erroneously rested its decision on the Southern CBA, "[n]othing in the process of interpreting the provisions of the two collective bargaining agreements purports to bind Atlas or Southern pilots to the terms of another existing collective bargaining agreement." Atlas Air, 943 F.3d at 585. Nothing in the record suggests that the Atlas Board did anything other than make an "independent determination[] as to . . . . whether the Atlas CBA requires Atlas pilots to negotiate a JCBA." Id. The fact that the Southern Board

independently interpreted the merger provisions in the Southern CBA to require the Union to submit an ISL to Southern within 45 days does not mean that the Atlas Board erroneously relied on the Southern CBA in ordering the Union to submit an ISL to Atlas within the same timeframe. Accordingly, the Court concludes that the Complaint does not plausibly allege that the Atlas Board exceeded its jurisdiction in imposing the 45-day deadline for the Union's submission of an ISL to Atlas.

### 3. Counts II and IV: The Remedy's Compliance with Federal Law

Counts II and IV allege that the Award must be vacated because it violates federal law, including the RLA, the McCaskill-Bond Amendment, and the NLRA. The Court concludes that none of these allegations provides a plausible basis for vacating the Award.

#### a. RLA Section 6

The Union first contends that the Award violated the RLA by effecting changes in the terms of pay, rules, and working conditions of Atlas pilots without giving the Union an opportunity to employ the Section 6 procedures in the RLA. The Complaint alleges that the Union had in November 2015 notified Atlas of its desire to negotiate amendments to the 2011 Atlas CBA under Section 6 of the RLA; the parties met in December 2015 and January 2016 and scheduled further negotiation sessions in February and March 2016. Compl. ¶¶ 14-15. Following AAWW's announcement in January 2016 that it was acquiring Southern, however, AAWW unilaterally ceased these negotiations. Id. ¶ 17.

In the Union's view, the Award violates the RLA because it compels a change in the rates of pay, rules or working conditions of Atlas pilots—namely, an ISL that changes the seniority of the Atlas pilots and a JCBA that will change the Atlas pilots' rates of pay, rules, or working conditions. Opp. at 16. However, the Union ignores the fact that the RLA prohibits a carrier

from "chang[ing] the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements *except in the manner prescribed in such agreements* or in section 156 of this title." 45 U.S.C. § 152 Seventh (emphasis added).

The 2011 Atlas CBA "prescribed" such an alternative procedure. As the Court has explained, the CBA mandated, upon certain merger-related events, that the parties engage in expedited negotiations for a new JCBA—including changes in the rates of pay, rules, or working conditions of Atlas employees—and that the parties submit outstanding issues to binding interest arbitration. Those provisions contained no exception for a situation where the Union had previously sent RLA Section 6 notices or RLA Section 6 negotiations had commenced. See Def. Mot. Dis. 25. The Award does nothing more than order the Union to comply with its obligations under the previously agreed upon merger provisions of the existing CBA to participate in JCBA negotiations (and, if necessary, interest arbitration), which the RLA expressly permits. See, e.g., Air Line Pilots Ass'n v. Alaska Airlines, Inc., No. C05-0897L, 2005 WL 2898140, at *1 (W.D. Wash. Oct. 28, 2005) ("The Railway Labor Act allows parties to follow their own contractually negotiated procedures for amending their collective bargaining agreements in lieu of the lengthy procedures set forth in the statute." (citations omitted)). The Award does not permit Atlas to unilaterally change the provisions of the existing CBA, nor does it purport to set the actual terms of the new JCBA. Accordingly, the Court concludes that the complaint does not plausibly allege that the Award violated the RLA.

### b. McCaskill-Bond Amendment

The Union also alleges that the Award was inconsistent with the McCaskill-Bond Amendment to the Federal Aviation Act. 49 U.S.C. § 42112 Note § 117, Pub. L. No. 110-161, div. K, § 117 (2007). That statute "requires carriers to observe sections 3 and 13 of the labor-

protective provisions ("LPPs") imposed by the Civil Aeronautics Board in the Allegheny–Mohawk [airline] merger" with respect to the integration of covered employees for certain mergers and acquisitions.  Flight Attendants in Reunion v. Am. Airlines, Inc., 813 F.3d 468, 472 (2d Cir. 2016) (citing 49 U.S.C. § 42112 Note § 117; Allegheny–Mohawk Merger Case, 59 C.A.B. 19, 45, 49 (1972)).  Section 3 of the LPPs requires that "provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected."  Allegheny–Mohawk Merger Case, 59 C.A.B. at 45.  "In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13," id., which establishes a default and alternative dispute resolution procedure. Addington v. U.S. Airline Pilots Ass'n, 791 F.3d 967, 978 n.5 (9th Cir. 2015) (citing Allegheny–Mohawk Merger Case, 59 C.A.B. at 45).

    The Union alleges that the Award, which expressly noted that "Allegheny-Mohawk is not required in this case," deprived the Atlas pilots of their rights under the McCaskill-Bond Amendment to utilize the Allegheny-Mohawk LPPs.  Dec. & Aw. 12; Compl. ¶¶ 40-42.  But, as Atlas points out, the McCaskill-Bond Amendment expressly provides that "if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section."  49 U.S.C. § 42112 Note § 117(1).  Consistent with that statutory directive, the Atlas CBA provides that "[i]f the Union represents the Crewmembers of the carrier to be merged with the Company then the Union's

Merger Policy shall be utilized to integrate the two seniority lists." Atlas CBA § 1.F.2.a.i.[7] The Board's conclusion that the Allegheny-Mohawk procedures were not required under the CBA for the seniority list integration was thus entirely consistent with the McCaskill-Bond Amendment. See, e.g., Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108, 863 F.3d 529, 540 (6th Cir. 2017), cert. denied, 138 S. Ct. 941 (2018) (noting that "as the collective bargaining agent for the pilots of both carriers, the Union's internal policies regarding integration supersede the requirements of McCaskill–Bond"). The Court thus concludes that the Complaint does not plausibly allege that the Award violated McCaskill-Bond.

The Union also alleges that "it is utterly impossible to complete a fair and equitable seniority integration of the Atlas-Polar and Southern pilots within the allotted 45-day period of time." Compl. ¶ 41. To the extent that the Union is arguing that the 45-day deadline makes it impossible for the pilot groups to utilize the Allegheny-Mohawk LPPs—and therefore violates the McCaskill-Bond Amendment—that argument provides no basis for vacating the Award. As the Court has explained, by its terms, the McCaskill-Bond Amendment does not give pilots the right to utilize such procedures where, as here, the same union represents both pilot groups.

To the extent that the Union is alleging that the 45-day deadline violates public policy, see Opp. 10, the Union does not identify any "well defined and dominant" public policy that compels that conclusion. W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Linoleum & Plastic Workers, 461 U.S. 757, 766 (1983) (noting that "public policy . . . is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of

---

[7] If that is not the case, the Atlas CBA provides, consistent with the McCaskill-Bond Amendment, that "the two lists shall be merged using Allegheny-Mohawk Labor Protective Provisions, Sections 3 and 13." Atlas CBA § 1.F.2.a.ii & iii.

supposed public interests'" (quoting <u>Muschany v. United States</u>, 324 U.S. 49, 66 (1945))).  The

Union does not identify—and the Court has not found—any statute or legal precedent suggesting

that a 45-day timeframe for integrating seniority lists is a "draconian remedy."  Opp. 12.  Nor

does the Court find convincing the Union's contention that the 45-day remedy extinguishes the

Atlas pilot group's right to contest the accuracy of their current seniority list.  Compl. ¶ 41.  As

Atlas points out, the Award does not require the immediate implementation of the ISL; issues

over the ISL may be ironed out during the nine-month JCBA negotiation process and any

subsequent interest arbitration.  The Court thus concludes that the Union's allegation that the 45-

day deadline for presenting an integrated seniority list violates public policy does not provide a

basis for vacating the award.[8]

### c.  Duty of Fair Representation Under the NLRA

The Union also contends that the Award puts it at risk of breaching its duty under the

National Labor Relations Act ("NLRA") of fair representation to one or both pilot groups.

Compl. ¶ 41.  "When a labor organization has been selected as the exclusive representative of the

employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as

---

[8] The Union contends that its ability to comply with the 45-day deadline for seniority list
integration raises "factual and legal questions about IBT policy and the application of MsCaskill-
Bond in prior seniority integration cases [that] . . . are not properly resolved by means of a
motion to dismiss."  Opp. 10.  The inquiry is not whether the Board correctly interpreted IBT's
merger policy with respect to seniority list integration in imposing the 45-day deadline, but
whether the Board was interpreting the CBA at all.  <u>See</u> <u>Nat'l Postal Mail</u>, 589 F.3d at 441 ("If
an arbitrator is even arguably construing or applying the contract . . . then a court may not
overturn his decision." (internal quotation marks omitted)).  The CBA provided that "[i]f the
Union represents the Crewmembers of the carrier to be merged with the Company then *the
Union's Merger Policy* shall be utilized to integrate the two seniority lists."  Atlas CBA
§ 1.F.2.a.i (emphasis added).  The specifics of the Union's Merger Policy—and any factual
disputes as to how long that policy would take to implement—simply do not bear on whether the
Board's order to the Union to comply with that contractual provision drew its essence from the
contract.

the exclusive representative of the employees in the unit, to represent all members fairly."

Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998). The Supreme Court has held that "a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Id. (citing Vaca v. Sipes, 386 U.S. 171, 190 (1967)).

The Union does not explain how its compliance with the Board's order to present an ISL or negotiate a JCBA in accordance with the Atlas CBA puts it at risk of breaching its duty of fair representation to either the Atlas or Southern pilots. Airline mergers frequently require a balancing of competing interests between two pilot groups, and courts have been reluctant to hold unions liable for violations of the duty of fair representation under such circumstances. See, e.g., Cunningham v. Air Line Pilots Ass'n, Int'l, 769 F.3d 539, 542-43 (7th Cir. 2014) (finding that union did not breach duty of fair representation by negotiating CBA with employer airline carrier regarding longevity of pilots following employer's merger with another carrier); Gorge v. Carey, 166 F.3d 1209 (4th Cir. 1998) (Table) (unpublished) (finding no breach of the duty of fair representation where the union used a method expressly authorized by the CBA to integrate seniority lists following a merger); cf. Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 81 (1991) (holding that "[a] rational compromise on the initial allocation of the positions [between striking and working pilots] was not invidious 'discrimination' of the kind prohibited by the duty

of fair representation").[9]  The Court thus concludes that the Award was not inconsistent with the Union's statutory duty of fair representation to either pilot group.[10]

C.  Injunctive Relief

In addition to asking the Court to vacate the Award and Decision, the Complaint also seeks preliminary and permanent injunctive relief to prevent Atlas from enforcing it.  The complaint does not identify any independent basis for such injunctive relief apart from its allegations for why the Court should vacate the Board's decision.  Because the Court has concluded that those allegations do not have merit, the Court will deny the requested injunctive relief.

IV.  **Conclusion**

For the foregoing reasons, the Court dismisses Plaintiffs' petition to vacate the arbitration award.  A separate order accompanies this memorandum opinion.

 

 

_____
CHRISTOPHER R. COOPER
Date: January 28, 2020                          United States District Judge

---

[9] This case can be distinguished from Bernard v. Air Line Pilots Ass'n, Int'l, AFL-CIO, 873 F.2d 213 (9th Cir. 1989), where the Ninth Circuit held that a union breached its duty of fair representation to a pilot group by refusing to permit them to participate in negotiations with the Company after a merger and by not complying with its own merger policy for merger with union-represented groups.  See id. at 216.  The Complaint does not allege that the Award compels the Union to do either.

[10] In any event, the Union does not explain how an *ex ante* risk of breaching its duty of fair representation under the NLRA provides a basis for vacating an arbitration award issued pursuant to the RLA.