## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION and AIRLINE PROFESSIONALS ASSOC. OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 2750, | Civil Action No. 1:19-cv-02723-CRC |
| Plaintiffs, | |
| v. | |
| ATLAS AIR, INC., | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

    I.    There Has Been No Intervening Change Of Controlling Law ............................. 6

    II.    The Union Has Provided No Newly Discovered Evidence To Support Reconsideration.................................................................................................... 6

    III.    The Union Identifies No Clear Error In This Court's Judgment ......................... 9

        A.    The Award Does Not Violate McCaskill-Bond...................................... 11

        B.    The Atlas System Board Did Not Exceed Its Jurisdiction...................... 13

        C.    The Union Could Have Timely Complied With The Award's Remedies.............................................................................................. 14

    IV.    The Union Has Identified No Manifest Injustice................................................ 15

CONCLUSION................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny-Mohawk*,
   59 C.A.B. 19 (1972) .................................................................................................. 13, 15

*Am. Train Dispatchers Ass'n v. Burlington N. R.R. Co.*,
   784 F. Supp. 899 (D.D.C. 1992) ..................................................................................... 14

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters*,
   293 F. Supp. 3d 457 (S.D.N.Y. 2018) .............................................................................. 3

*Bhd. of Maint. of Way Empl. v. Union Pac. R.R. Co.*,
   No. CIV.A. 303CV0417D, 2004 WL 2296952 (N.D. Tex. Oct. 6, 2004) ................................ 8

*Bond v. U.S. Dep't of Justice*,
   286 F.R.D. 16 (D.D.C. 2012) ........................................................................................ 10

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
   401 F. Supp. 3d 187 (D.D.C. 2019) ................................................................................. 9

*Elam v. Nat'l R.R. Passenger Corp.*,
   220 F. Supp. 3d 996 (N.D. Cal. 2016) ................................................................... 8, 14, 15

*Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*,
   863 F.3d 529 (6th Cir. 2017) ........................................................................................ 12

*Fresh Kist Produce, LLC v. Choi Corp.*,
   251 F. Supp. 2d 138 (D.D.C. 2003) ............................................................................... 10

*Gottlieb v. Janney Montgomery Scott LLC*,
   No. 06-80941-CIV, 2007 WL 9701991 (S.D. Fla. Apr. 23, 2007) ...................................... 16

*Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*,
   843 F.2d 546 (D.C. Cir. 1988) ...................................................................................... 16

*In re Motion of Burlodge Ltd.*,
   No. MISC.A. 08-525CKKJMF, 2009 WL 2868756 (D.D.C. Sept. 3, 2009) .......................... 15

*Int'l Painters & Allied Trades Indus. Pension Fund v. Design Techs.*,
   254 F.R.D. 13 (D.D.C. 2008) ................................................................................... 5, 6, 7

*Int'l Bhd. of Teamsters v. Atlas Air, Inc.*,
   No. 19-CV-2723 (CRC), 2020 WL 435353 (D.D.C. Jan. 28, 2020) ............................... passim

**TABLE OF AUTHORITIES**
(continued)

Pages

*Jung v. Ass'n of Am. Med. Colls.*,
    184 Fed. Appx. 9 (D.C. Cir. 2006) ............................................................................ 6

*Leidos, Inc. v. Hellenic Republic*,
    881 F.3d 213 (D.C. Cir. 2018) ................................................................................... 6

*Messina v. Krakower*,
    439 F.3d 755 (D.C. Cir. 2006) ................................................................................... 6

*Mobley v. Cent. Intelligence Agency*,
    No. CV 11-2072 (BAH), 2013 WL 12350573 (D.D.C. Aug. 7, 2013) ..................... 9

*Niedermeier v. Office of Max S. Baucus*,
    153 F. Supp. 2d 23 (D.D.C. 2001) ................................................................... 6, 7, 10

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,
    866 F.2d 228 (7th Cir. 1988) ..................................................................................... 9

*Piper v. U.S. Dep't of Justice*,
    312 F. Supp. 2d 17 (D.D.C. 2004) ......................................................................... 9, 12

*Slate v. Am. Broad. Companies, Inc.*,
    12 F. Supp. 3d 30 (D.D.C. 2013) .................................................................... 9, 15, 16

*Swedish Am. Hosp. v. Sebelius*,
    845 F. Supp. 2d 245 (D.D.C. 2012) ........................................................................... 6

*United Steelworkers of Am. v. Smoke–Craft, Inc.*,
    652 F.2d 1356 (9th Cir. 1981) ................................................................................... 8

*Union Pac. R. Co. v. Sheehan*,
    439 U.S. 89 (1978) ................................................................................................. 8, 14

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
    363 U.S. 593 (1960) ................................................................................................. 14

**Statutes**

45 U.S.C. § 184 ............................................................................................................... 4

**Treatises**

3 Moore's Federal Practice - Civil § 13.15 (2019) ...................................................... 16

## PRELIMINARY STATEMENT

Plaintiffs International Brotherhood of Teamsters, Airline Division and Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 2750 (collectively, the "Union") have moved this Court, pursuant to Federal Rule of Civil Procedure 59(e), to alter its judgment dismissing the Union's petition to vacate an arbitration award (the "Decision and Award") issued by the Atlas Air, Inc. ("Atlas") System Board of Adjustment. (Dkt. 23 at 2.)  This motion should be summarily denied.

Motions for reconsideration are disfavored, and motions to reconsider a judgment under Rule 59(e) are particularly suspect.  Such motions may only be granted in narrow circumstances: when a litigant demonstrates that there has been an intervening change of controlling law, there is newly-discovered evidence, or the need to correct clear error or prevent manifest injustice. Rule 59(e) motions are not a vehicle for a party to repeat an argument already made to the Court, nor to make arguments that could have been made earlier, in the hopes of obtaining a different result.

The Union does not identify in its motion which of the narrow grounds for reconsideration it believes apply here.  In fact, none do.  There has been no intervening change in law, the Union has presented no newly-discovered evidence, nor has it demonstrated any clear error in this Court's judgment.  Instead, the Union improperly resurrects its arguments claiming that the award conflicts with the McCaskill-Bond Amendment ("McCaskill-Bond") that the System Board exceeded its jurisdiction, and that the award is unworkable.  These arguments either have already been or could have been made by the Union, and regardless, provide no justification for altering this Court's judgment.  Finally, the Union cannot complain of any manifest injustice.  While it repeatedly protests that there is evidence it can only now bring to this Court's attention, the primary piece of evidence it relies on is testimony given at the Atlas

1

arbitration, which Atlas did introduce to support its motion to dismiss, and which this Court held it properly could consider on the motion to dismiss. Regardless, this purported additional evidence provides no basis for this Court to alter its judgment.

The Union's motion for reconsideration is a transparent tactic to extend this litigation once more and further delay compliance with Arbitrator Nicolau's award. Because the Union has presented no valid reason for this Court to reconsider its ruling, the Court should summarily deny it without allowing for further briefing or delay.

## STATEMENT OF FACTS

This matter arises from Atlas' multi-year attempt to obtain the Union's compliance with the merger provisions of the Atlas collective bargaining agreement ("CBA"). *See generally Int'l Bhd. of Teamsters v. Atlas Air, Inc.*, No. 19-CV-2723 (CRC), 2020 WL 435353 (D.D.C. Jan. 28, 2020). Atlas and the Union are parties to a CBA covering Union-represented pilots employed by Atlas and Polar Air Cargo Worldwide, Inc. (Complaint ("Compl.") ¶¶ 4, 7, 13; Decision and Award at 4.) Section 1.F.2.b(iii) provides that when Atlas merges with another carrier and where, as here, the pilots of the acquired carrier also are represented by the Union, "then the parties shall timely begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement." (Compl. ¶ 9; Decision and Award at 5-6.) Any unresolved collective bargaining issues must be submitted to "binding interest arbitration" within "nine (9) months from the date that the Union presents to the Company a merged seniority list that complies with the provisions of this paragraph F.2." (*Id.*)

AAWW is the parent corporation of Atlas. (Decision and Award at 1.) On January 19, 2016, AAWW "announced its agreement to acquire Southern Air Holdings, Inc. (SAHI), the parent company of Worldwide Air Logistics Group, which, in turn, owned two subsidiaries,

Southern Air, Inc. (Southern) and Florida West International Airways (Florida West)."
(Decision and Award at 1.)  Atlas informed the Union that Section 1.F had been triggered by this
merger.  (Decision and Award at 1-2.)  The Union refused to comply with the contractual merger
provisions, and on April 14, 2016 and January 24, 2017 respectively, Atlas and Southern Air,
Inc. ("Southern") grieved the Union's refusal to comply with the CBAs and sought arbitration of
the disputes before the System Boards of Adjustment at each carrier.  (Compl. ¶¶ 21-22.)  The
Union refused to arbitrate either grievance until it was ordered to do so by Judge Katherine B.
Forrest in the Southern District of New York.  *See Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 293
F. Supp. 3d 457 (S.D.N.Y. 2018).

The Atlas grievance was heard by the Atlas System Board of Adjustment, chaired by
Arbitrator George Nicolau, in October 2018.  (Compl. ¶ 27.)  During this arbitration, then-Local
1224 President Captain Daniel C. Wells was asked by Atlas' counsel to confirm that "the Union
airline division does not have a written merger, seniority merger policy comparable to the ALPA
merger policy, which requires interest arbitration on the seniority list if there's a merger," to
which Captain Wells responded "Right.  That is correct."  (*See* Dkt. 7-6 ("Atlas Tr.") at 670:10-
21.)  Captain Wells later confirmed that he was "sure" that the Union had utilized "a date-of-hire
approach to formulating an integrated seniority list" though he was unfamiliar with the specifics
of any one case.  (*See* Atlas Tr. 671:10-24.)  Finally, Captain Wells confirmed that there was
available to him a "shortcut procedure," whereby the Union could "provide a sort of golden
pathway forward that would enable me to bring a lot of those [seniority] procedures together
quickly and get it done."  (Atlas Tr. 710:12-711:10.)  In his decision and award, Arbitrator
Nicolau concluded that the Union was in violation of the merger provisions of the Atlas CBA,

and ordered the Union to provide the ISL to Atlas within 45 days.  *Atlas Air, Inc.*, 2020 WL
435353, at *2.

The Southern grievance was heard by the Southern System Board over three days also in
October 2018, before Arbitrator Richard I. Bloch.  (Compl. ¶ 25.)  On June 6, 2019, Arbitrator
Bloch issued his opinion and award ruling in favor of Southern, and, like Arbitrator Nicolau,
ordered the Union to produce an integrated seniority list combining the seniority lists of the
Southern pilots with those of Atlas within 45 days.  (*Id.* ¶ 26.)

The Union has not complied with either award and has stated it will not do so until this
Court requires compliance.  *See* Jt. Status Report, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters,
Airline Div.*, 1:19-cv-03223-CRC, Dkt. 18 at 4 (D.D.C. Jan. 31, 2020) (statement by the Union
that it "will comply with the arbitration awards if and when they become legally enforceable").

On September 11, 2019, the Union filed this lawsuit to vacate Arbitrator Nicolau's
award.  (*See generally* Compl.)  Atlas moved to dismiss the Union's petition to vacate on
October 11, 2019.  (*See* Dkt. 7-1.)  The Union opposed dismissal, in part by arguing that the
award must be vacated because it "violates their union members' rights under the McCaskill-
Bond Amendment . . . by ordering Defendant to issue a seniority list within 45 days."  (Dkt. 14 at
9-10.)  It further argued that "Plaintiffs' Complaint, and the referenced Award, plausibly set forth
that the Atlas SBA acted beyond its jurisdiction, in violation of Section 204 of the RLA, 45
U.S.C. § 184."  (*Id.* at 14.)  Moreover, it argued that it did not have enough time to comply with
the award, as "Atlas and Southern pilots' right to challenge the accuracy of their respective
seniority lists was disregarded by the Award's dictate that a completed SLI [ISL] list be provided
by the Union before the period during which each pilot group could challenge their respective
lists had ended."  (*Id.* at 12.)  This Court rejected these arguments, ruled for Atlas on all issues,

and dismissed the petition to vacate on January 28, 2020.  *See Atlas Air, Inc.*, 2020 WL 435353, at *2.

On October 25, 2019, Atlas and Southern filed a complaint to enforce their respective arbitration awards.  *See* Compl., *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 1:19-cv-03223-CRC, Dkt. 1 (D.D.C. Oct. 25, 2019).  They then moved for summary judgment  (*See* Pls.' Mot. for Summary Judgment, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 1:19-cv-03223-CRC, Dkt. 9 (D.D.C. Oct. 31, 2019)), which the Union opposed on February 7, 2020.  In its opposition, the Union also purported to file a cross-motion for partial summary judgment in its favor.  *See* Defs.' Opp. in Part to Pls.' Mot. for Summary Judgment and Mot. for Partial Summary Judgment, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 1:19-cv-03223-CRC, Dkt. 21 (D.D.C. Feb. 7, 2020) ("Enforcement Opp.").  On February 14, 2020, Atlas and Southern filed a reply in support of their motion for summary judgment and opposition to the Union's partial motion for summary judgment.  *See* Reply in Support of Pls.' Mot. for Summary Judgment, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 1:19-cv-03223-CRC, Dkt. 23 (D.D.C. Feb. 14, 2020) ("Enforcement Reply").

The Union filed a motion for reconsideration of this Court's decision dismissing its petition on February 7, 2020, *see generally* Dkt. 23, arguing yet again that the Atlas System Board's award violates McCaskill-Bond and exceeds its jurisdiction under the Atlas CBA, and complaining that the award is "unworkable."  (*Id.* at 2.)

## ARGUMENT

Motions for reconsideration are disfavored in this Circuit, and the relief requested in such motions is rarely granted.  *See Int'l Painters & Allied Trades Indus. Pension Fund v. Design Techs.*, 254 F.R.D. 13, 18 (D.D.C. 2008); *Swedish Am. Hosp. v. Sebelius*, 845 F. Supp. 2d 245,

250 (D.D.C. 2012) ("the reconsideration and amendment of a previous order is an unusual

measure"); *see also Jung v. Ass'n of Am. Med. Colls.*, 184 Fed. Appx. 9, 13 (D.C. Cir. 2006)

(noting "the high standard for relief under Rule 59(e)"); *Niedermeier v. Office of Max S. Baucus*,

153 F. Supp. 2d 23, 28 (D.D.C. 2001) ("Motions under [Rule 59(e)] are disfavored and relief

from judgment is granted only when the moving party establishes extraordinary

circumstances.").  As the Union admits, a motion for reconsideration under Federal Rule of Civil

Procedure 59(e) is "not a second opportunity to present argument upon which the Court has

already ruled, nor is it a means to bring before the Court theories or arguments that could have

been advanced earlier."  *Int'l Painters,* 254 F.R.D. at 18; *see also Leidos, Inc. v. Hellenic

Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (same); (*see also* Dkt. 23 at 2.).

Motions for reconsideration should not be granted absent a Court finding that there is "an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'"  *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir.

2006) (quotation omitted).  The Union agrees that this standard applies, but it fails to assert

which ground it believes is applicable.  (*See* Dkt. 23 at 2.)  As demonstrated below, none of these

grounds apply here.

## I.     There Has Been No Intervening Change Of Controlling Law

The Union identifies no intervening change of controlling law since this Court issued its

judgment on January 28, 2020.  (*See generally* Dkt. 23.)  Nor could it.  Therefore, this ground

provides no justification for altering the Court's judgment.

## II.    The Union Has Provided No Newly Discovered Evidence To Support Reconsideration

The Union also does not identify any newly-discovered evidence that supports

reconsideration.  "[A]mendments post-judgment on the basis of new evidence are restricted to

6

evidence that is newly discovered or previously unavailable despite the exercise of due diligence.
. . . Courts routinely deny Rule 59(e) motions where all relevant facts were known by the party
prior to the entry of judgment and the party failed to present those facts." *Niedermeier*, 153 F.
Supp. 2d at 29; *see also Int'l Painters*, 254 F.R.D. at 19 ("Put simply, the evidence offered by
Plaintiff is not 'new' evidence, but information that could have been timely provided to the
Court.  Having failed to provide the evidence the first time around, Plaintiff cannot now use a
Rule 59(e) motion to take a second bite at the apple.").

　　　The Union provides no such new evidence here, but rather relies principally upon the
purported "uncontroverted testimony of Local 1224 President Dan Wells" that was already
before the Court, and whose testimony the Union claims showed "no internal [Union] seniority
policy that applies to the Atlas-Southern transaction."  (*See* Dkt. 23 at 3.)  But Captain Wells
gave this testimony during the Atlas arbitration on October 26, 2018—an arbitration in which the
Union fully participated.  The transcript was produced on November 29, 2018, Atlas submitted
that transcript with its motion to dismiss, and cited to the very language that the Union now
appears to assert is "newly-discovered evidence." (*See* Atlas Tr. at 670-672 (language cited to by
the Union); 719 (date transcript was produced); Dkt. 7-6 (transcript submitted alongside Atlas'
motion); *see also* Dkt. 7-1 at 20 (Atlas' memorandum of law citing to Captain Wells'
testimony).)  The Union cannot claim that it has brought additional evidence to the Court's
attention when that evidence was the subject of briefing on the underlying motion, and the Union
simply failed to make any arguments arising out of the testimony.

　　　The Union also presents this Court with purported "newly-available" evidence regarding
the history of Section 1.F, which it claims shows that Atlas proposed and argued in favor of the
seniority integration provisions of Section 1.F.2.a, and that this history somehow is relevant to

the Union's claim that the award's remedy improperly added to those provisions.  (*See* Dkt. 23 at 4.)  This argument and evidence regarding the meaning of Section 1.F was not presented to Arbitrator Nicolau, and the Union cannot rely on arguments and evidence that was not before the Atlas System Board.  *See United Steelworkers of Am. v. Smoke–Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981) ("Parties to arbitration proceedings cannot . . . attack the award collaterally on grounds not raised before the arbitrator") (internal citations omitted); *Bhd. of Maint. of Way Emps. v. Union Pac. R. Co.*, No. CIV.A. 303CV0417D, 2004 WL 2296952, at *8 (N.D. Tex. Oct. 6, 2004) ("[A] party's failure to raise a defense at arbitration to a remedy considered by the arbitrator prevents the party from later relying on the defense in an enforcement proceeding."); *Elam v. Nat'l R.R. Passenger Corp.*, 220 F. Supp. 3d 996, 1003 (N.D. Cal. 2016) ("Defendant argues that such exhibits and declarations should be stricken from the record because the Court's review is limited only to the documents and matters that were before the Board. . . . The Court agrees that its review is limited to the facts and documents that were before the Board.").  Nor does this Court have jurisdiction to consider this evidence and apply and interpret the language and history of the Atlas CBA.  *See Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 95 (1978) ("Congress considered it essential to keep these so-called 'minor' disputes within the [System Board of Adjustment] and out of the courts").  If the Union wanted to rely upon this evidence, it had ample opportunity to present it during the Atlas arbitration.  It cannot now collaterally attack that award using such external evidence.

Thus, the Union cannot establish that there is any newly-available evidence in this case justifying reconsideration.  And moreover, even if this evidence were admissible as "newly available" evidence, it does not warrant any alteration or amendment of the Court's judgment as demonstrated in Section III, below.

### III.    The Union Identifies No Clear Error In This Court's Judgment

Nor does the Union identify any "clear error" in this Court's judgment.  "[C]lear error should conform to a very exacting standard. . . . [A] final judgment must be 'dead wrong' to constitute clear error."  *Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 21 (D.D.C. 2004) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).  "Hence, a fortiori, [m]ere disagreement does not support a Rule 59(e) motion."  *Slate v. Am. Broad. Comps., Inc.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (internal quotation marks and citations omitted).  Indeed, courts in this Circuit have stated that to meet this standard "a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *Mobley v. Cent. Intelligence Agency*, No. CV 11-2072 (BAH), 2013 WL 12350573, at *3 (D.D.C. Aug. 7, 2013); *see also Cable News Network, Inc. v. Fed. Bureau of Investigation*, 401 F. Supp. 3d 187, 193 (D.D.C. 2019).  The Union cannot meet this exacting standard.

The Union identifies three potential reasons this Court's decision dismissing the complaint and petition to vacate was incorrect, although it provides detail for only two of them.  (*See* Dkt. 23 at 2.)  First, it claims that McCaskill-Bond applies and requires the Union to comply with Allegheny-Mohawk's lengthy seniority integration and arbitration provisions, which it cannot implement in 45 days.  (*Id.*)  It further claims that McCaskill-Bond's exception to these procedures – which applies where, as here, the pre-merger employee groups at both carriers are represented by the same union which can use its own seniority integration policy – is inapplicable because the Union does not have a seniority integration policy applicable to this merger.  (*Id.*)  Second, it claims that the System Board exceeded its jurisdiction by issuing an

award that required compliance in 45 days.  (*Id.*)  Finally, it claims the System Board's award is unworkable because it will take more than 45 days to create an ISL.  (*Id.*)

None of these arguments should be considered because the Union could have asserted them in its initial complaint or briefing on Atlas' motion to dismiss.  *See Niedermeier*, 153 F. Supp. 2d at 28 ("It is well established that plaintiff cannot resuscitate her case post-dismissal by alleging facts or legal theories that were available to her at the inception of her case."); *see also Jung*, 226 F.R.D. at 9 (same); *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 20 (D.D.C. 2012) ("Re-litigating arguments or legal theories, that could have been raised earlier, do not qualify as an 'extraordinary circumstance' under Rule 59(e).").  Indeed, in its Opposition to Atlas' Motion to Dismiss, the Union did argue that McCaskill-Bond required that the award be vacated, that the System Board exceeded its jurisdiction in issuing the award, and that the remedy would not allow the pilots to achieve a fair and equitable resolution of their seniority dispute.  (*See* Dkt. 14 at 9-10, 12, 14.)

The Union effectively admits this, justifying its repeated or dilatory assertion of its arguments by citing a single case that considered a single new argument on a Rule 59(e) motion in "the interests of justice and fairness."  *See Fresh Kist Produce, LLC v. Choi Corp.*, 251 F. Supp. 2d 138, 141 (D.D.C. 2003).  There, the Court was faced with the relatively minor issue of whether a party that already been awarded damages by the Court was *also* entitled to approximately a year of pre-judgment interest.  *Id*.  While the Court considered the party's request for such interest, it "disapprove[d] of parties raising arguments that they could have advanced earlier."  *Id.*  Here, the Union is seeking reconsideration of a final judgment that resolved this entire case.  It provides no explanation as to why "the interests of justice and

fairness" allow it to sit on such arguments until after this Court has made such a critically-important ruling and further delay resolution of this long-pending dispute.

As explained in more detail in Atlas and Southern's reply in support of their Motion for Summary Judgment in related Case No. 1:19-cv-03223, each of the Union's arguments are wrong on the merits.  (*See generally* Enforcement Reply.)  Therefore, they do not demonstrate that this Court's decision was wrongly decided – let alone in "clear error."

### A.    The Award Does Not Violate McCaskill-Bond

The Union argues that McCaskill-Bond's exception – allowing for application of a Union's "internal policies regarding integration" in instances where, as here, "the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers" – does not apply here because the "uncontroverted testimony of former Local 1224 President Dan Wells" showed "that no internal IBT seniority policy applied to the Atlas-Southern transaction." (Dkt. 23 at 3.)  The Union claims this "establishes the conflict between the System Board Award remedy and federal law under the McCaskill-Bond Amendment."  (*Id.* at 3.)

This argument is factually and legally wrong.  (*See* Enforcement Reply at 6-10.)  While the Union argues that its assertion that "no internal Teamster policy applies to the Atlas-Southern transaction" is supported by testimony in the Atlas arbitration from Captain Daniel C. Wells, then-President of Local 1224, that is not accurate.  Captain Wells only testified in the Atlas arbitration that it is "correct" that the Union "does not have a ***written merger***, seniority merger policy ***comparable to the ALPA merger policy, which requires interest arbitration on the seniority list if there's a merger***."  (Atlas Tr. at 670:10-19 (emphasis added).)  After testifying that the Union did not have a written merger policy comparable to ALPA's, Captain Wells then testified that he was "sure" the Union previously had used a simple date of hire policy to

integrate seniority lists and that there was a "golden pathway" and "shortcut" procedure the Union could use if it wanted to craft an ISL quickly.  (*See* Atlas Tr. 671:8-17; 710:12-711:10.) There is no requirement in McCaskill-Bond that an internal union policy be formal, and Captain Wells' description of an informal unwritten policy available to the Union satisfies the McCaskill-Bond exception.  *See Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 537 (6th Cir. 2017) (finding union was relieved from complying with McCaskill-Bond when using "its unwritten internal merger policy in creating the ISL").  Without more, this evidence does not demonstrate that the Union has no internal seniority integration policy, and most certainly does not meet the standard of showing that this Court's decision was "dead wrong." *See Piper*, 312 F. Supp. 2d at 21.

In any event, even if the Union did not have a policy applicable to the Atlas-Southern merger, under McCaskill-Bond, the Union may apply a current policy retroactively, implement a one-off policy just for this transaction, or rely on an unwritten policy.  *See Atlas Air, Inc.*, 2020 WL 435353, at *9 ("[T]o the extent that the Union is arguing that the 45-day deadline makes it impossible for the pilot groups to utilize the Allegheny-Mohawk LPPs—and therefore violates the McCaskill-Bond Amendment—that argument provides no basis for vacating the award.  As the Court has explained, by its terms, the McCaskill-Bond Amendment does not give pilots the right to utilize such procedures where, as here, the same union represents both pilot groups.").  Moreover, as this Court already found, there is no need for the Union to provide a ***final*** ISL for implementation in 45 days.  *See Atlas Air, Inc*., 2020 WL 435353, at *9 ("As Atlas points out, the Award does not require the immediate implementation of the ISL; issues over the ISL may be ironed out during the nine-month JCBA negotiation process and any subsequent interest arbitration.").  The Union will have ample time to implement whatever seniority integration

procedure it or the pilots might desire in formulating the final ISL for implementation with the joint CBA ("JCBA"). The award only requires that it provide an initial version of the ISL now in order to trigger the contractually required bargaining process for a post-merger JCBA.

Furthermore, there is nothing in Allegheny-Mohawk that requires use of the arbitration proceedings described in Section 13(a). Allegheny-Mohawk Section 13(b) allows the parties instead to mutually agree that "an alternative method for dispute settlement . . . is appropriate in their particular dispute." *See Allegheny-Mohawk*, 59 C.A.B. 19, 49 (1972) (text of Allegheny-Mohawk Section 13). Because the Union has at its disposal the authority under Allegheny-Mohawk to use an alternative method for creating an ISL that complies with the award's deadlines, there is no basis to the Union's claim that it is legally obligated to engage in a protracted ISL arbitration proceeding. In fact, a speedier Section 13(b) "method for dispute settlement . . . is appropriate in [this] particular dispute" because of the Union's significant delay and the award's deadlines for the Union's production of an ISL. *See Allegheny-Mohawk*, 59 C.A.B. at 49.

### B.     The Atlas System Board Did Not Exceed Its Jurisdiction

The Union also asserts that "the remedy violates the jurisdiction of the System Board in adding to the seniority integration procedures established under Section 1.F.2.a. of the Atlas pilot contract." (Dkt. 23 at 2.) The Union justifies this argument in part on its recitation of the bargaining history of Section 1.F.  (*Id.* at 4.)

This argument is demonstrably incorrect. (Enforcement Reply at 13-17.) In issuing his award, Arbitrator Nicolau did not create a new dispute resolution procedure in Section 1.F.2.a., but rather set a deadline for compliance based on an interpretation of Section 1.F.2.a.i of the Atlas CBA, which expressly specifies use of the IBT's merger policy – a process that the IBT's

witness conceded during the arbitration could "provide a sort of golden pathway forward that would enable me to bring a lot of those [seniority] procedures together quickly and get it done." (Atlas Tr. 711:5-8.)  While the Union claims that there is no "unforeseen gap in the [Section 1.F] provision," Arbitrator Nicolau was not filling any gap but was simply enforcing the plain language of the CBA as written.  (Dkt. 23 at 4.)  Further, the Union was obligated to present this argument to Arbitrator Nicolau to preserve it.  Having failed to do so, this Court has no jurisdiction to hear it.  *See Elam*, 220 F. Supp. 3d at 1003; *Sheehan*, 439 U.S. at 94.

The Supreme Court has been clear that an arbitrator's informed application of a CBA's terms is expected and appropriate.  *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *see Int'l Bhd. of Teamsters v. S. Air, Inc.*, No. 19-CV-1948 (CRC), 2020 WL 435428, at *9 (D.D.C. Jan. 28, 2020) (arbitrators have substantial flexibility "when it comes to formulating remedies").  Where, as here, Arbitrator Nicolau properly exercised that discretion to require the Union to produce an ISL as a trigger for a nine-month period of bargaining, it is appropriate for the Court to conclude he followed that jurisdictional mandate.  *See Am. Train Dispatchers Ass'n v. Burlington N. R.R. Co.*, 784 F. Supp. 899, 905 (D.D.C. 1992) ("[W]here two interpretations of arbitrators' decisions are possible, one within their clear discretion, and one that could be predicated on another theory, the Supreme Court has indicated that the proper approach is to credit the arbitrators' exercise of discretion.") (citation omitted).

### C.    The Union Could Have Timely Complied With The Award's Remedies

The Union claims that the award's "remedy is also unworkable to achieve a fair and equitable resolution of the pilots' seniority dispute."  (Dkt. 23 at 2.)  This assertion provides no basis for the Court to alter its judgment.  (Enforcement Reply at 17-19.)  As noted above, the

Union has already had, and still will have, significantly longer than 45 days to formulate the final ISL prior to implementation. *Atlas Air, Inc.*, 2020 WL 435353, at *7.

To the extent the Union relies on the declaration of Daniel M. Katz submitted in support of its opposition to Atlas and Southern's motion for summary judgment in the related case, that declaration, which was never presented to Arbitrator Nicolau, cannot be considered now.[1]  *See, e.g.*, *Elam*, 220 F. Supp. 3d at 1003.  Moreover, this declaration inaccurately presupposes that McCaskill-Bond is applicable to this seniority integration.  (*See* Enforcement Opp. at 22 ("Given this clear history, Mr. Katz concludes that the remedies imposed by the System Boards in this case conflict irreconcilably with the employee rights granted under McCaskill-Bond.").)  But as explained *supra*, and in this Court's decisions, McCaskill-Bond is not applicable and, even if it were, the parties may reach agreement on an "alternative method for dispute settlement" under Allegheny-Mohawk Section 13(b) that does not require the type of arbitration described by Mr. Katz.  Therefore, Mr. Katz's declaration is simply inapposite.  *See Allegheny-Mohawk*, 59 C.A.B. at 49.

## IV.    The Union Has Identified No Manifest Injustice

The Union has failed to show that altering this Court's judgment is necessary to prevent any manifest injustice.  "[I]t is clear that 'manifest injustice' is an exceptionally narrow concept in the context of a Rule 59(e) motion." *Slate*, 12 F. Supp. 3d at 35; *see also In re Motion of Burlodge Ltd.*, No. MISC.A. 08-525CKKJMF, 2009 WL 2868756, at *7 (D.D.C. Sept. 3, 2009)

---

[1] Mr. Katz's declaration submitted in support of the Union's opposition to Atlas and Southern's motion for summary judgment consists of little more than a historical recap of certain seniority integration processes, which the Union could have submitted at any time.  *See generally* Declaration of Daniel M. Katz, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 1:19-cv-03223-CRC, Dkt. 21-7 (D.D.C. Feb. 7, 2020).  The only documents submitted with this declaration that were created after the Union filed its opposition are two letters Mr. Katz sent to Arbitrator Nicolau consisting solely of legal argument.  *See id.* at ¶ 2.

("The standard of proving manifest injustice is a high one.") (internal citation omitted).  "[A]

manifest injustice does not result merely because a harm may go unremedied. . . . Instead,

'manifest injustice' must entail more than just a clear and certain prejudice to the moving party,

but also a result that is fundamentally unfair in light of governing law."  *Slate*, 12 F. Supp. 3d at

35-36.

The Union claims that "[t]he Court could not consider the evidence underlying the Union

Defendants' arguments on summary judgment in ruling on Atlas Air's Fed. R. Civ. P. 12(b)(6)

motion to dismiss" and therefore reconsideration is necessary "in order to give the Plaintiffs

a fair opportunity to present relevant evidence and argument on that issue that they

could not advance earlier."[2]  (Dkt. 23 at 2-3.)  But this Court has already held that it ***could***

consider the transcript containing Captain Wells' testimony on a motion to dismiss.  *See Atlas*

*Air, Inc.*, 2020 WL 435353, at *4 n.5 ("The parties dispute whether the Court may consider the

various exhibits attached to Atlas's motion to dismiss. The Court concludes that it may—without

converting Defendant's motion into one for summary judgment—consider . . . the transcript of

the arbitration hearing.").  This holding is plainly correct.  *See, e.g.*, *Gottlieb v. Janney*

*Montgomery Scott LLC*, No. 06-80941-CIV, 2007 WL 9701991, at *2 (S.D. Fla. Apr. 23, 2007)

("Courts have the authority to review the underlying arbitration record in ruling on petitions to

---

[2] The Union also asserts that it is now appropriate to consider this claim "because Atlas Air brought its claim to enforce the System Board's award not as a mandatory counterclaim as plainly required by Fed. Civ. P. 13(a), but in a separate action."  (Dkt. 23 at 3.)  This assertion is an unequivocal misrepresentation of the law.  The D.C. Circuit has held for decades that "Rule 13(a)'s compulsory counterclaim requirement never [becomes] relevant" when a party "merely filed a motion to dismiss, which under Fed. R. Civ. P. 12(b)(6) is not such a responsive pleading" that requires the assertion of compulsory counterclaims. *See Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546 (D.C. Cir. 1988).  In fact, "[f]ederal courts ruling on the issue have uniformly held that a motion to dismiss pursuant to Rule 12 is not a responsive pleading" that requires the assertion of compulsory counterclaims.  3 Moore's Federal Practice - Civil § 13.15 (2019).

enforce or vacate awards."). The Union's incorrect subjective belief that it could not introduce

or rely on this transcript (which Atlas had already put into the Court record) does not justify its

failure to make any arguments regarding it. Moreover, as explained *supra* in Section III, Captain

Wells' testimony simply does not support what the Union claims, and even if the Union did not

currently have a policy applicable to this transaction, it would not matter because McCaskill-

Bond grants it the authority to adopt a policy other than Allegheny-Mohawk at any time, and

Allegheny-Mohawk itself also permits the parties to use their own alternate process.

Furthermore, as has been demonstrated, there is certainly no manifest injustice here

because, following compliance with the award's 45-day remedy period, the Union will have

ample time to formulate a final version of the ISL during the nine-month period of negotiations

for a JCBA. Nor is the Union prejudiced by its failure to introduce bargaining history regarding

Section 1.F of the Atlas CBA because, as explained *supra* in Section II, the Union waived any

right to raise such arguments without first putting them before Arbitrator Nicolau, and

regardless, this Court has no jurisdiction to consider the bargaining history of and interpret

Section 1.F.

## CONCLUSION

The Union's motion for reconsideration provides no sound basis for this Court to alter or

amend its judgment. The Court should summarily deny it without allowing for further briefing

or opportunity for the Union to delay further its compliance with the award.

Dated:   February 14, 2020                                  Respectfully submitted,
         Washington, D.C.


                                                   By:   ___ /s/ Robert A. Siegel _____
                                                         Robert A. Siegel
                                                         (D.C. Bar #1004474)
                                                         Rachel S. Janger

(D.C. Bar #467142)

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
rsiegel@omm.com
rjanger@omm.com

*Attorneys for Defendant Atlas Air, Inc.*