UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION, et al.<br><br>   Plaintiffs,<br>v.<br><br>ATLAS AIR, INC.,<br><br>   Defendant. | Civil Action No. 1:19-cv-02723-CRC |

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

Plaintiffs ("Plaintiffs" or "the Union") submit their LCvR 7(d) reply in support of their motion to alter or amend the Court's January 28, 2020 judgment.

I. **The Court's Judgment Upholding the System Board Remedy Works a Manifest Injustice to the Seniority Rights of Atlas Air Pilots and to the Union as Their Representative by Denying the Pilots' Rights Under McCaskill-Bond and Denying Plaintiffs' Procedural Rights In This Action.**

  *A. The Judgment Works a Manifest Injustice to the Seniority Rights of Atlas Pilots and to the Union as Their Representative.*

As Plaintiffs detailed in their opposition to Atlas Air's motion for summary judgment in Case No. 19-3223 (ECF 21), it is the pilots of Atlas and Southern Air whose rights under McCaskill-Bond are denied by the remedy created by the Atlas Air System Board. (ECF 21, pp. 10-13). The Board's remedy foreclosed their right to the default process under Allegheny-Mohawk Section 13(a), including arbitration of unresolved seniority issues between the pilot groups, and their right to negotiate an alternative dispute resolution procedure under Section 13(b) through their seniority

1

representatives. *See Addington v. US Airline Pilots Association,* 791 F.3d 967, 979, n. 5 (9th Cir. 2015)("Section 13(a) of the Allegheny-Mohawk LPPs establishes a resolution procedure for seniority integration disputes. . . . Subsection (b) states that the parties may agree on an alternative method for dispute settlement or arbitrator selection, but no party is excused from compliance with the default procedure unless all the parties agree on an alternative."). *See also, Bakos v. American Airlines,* 266 F. Supp. 3d 729, 748 (E.D. Pa. 2017)(noting that Section 13(a) establishes default arbitration procedures and Section 13(b) allows all parties to agree on alternative procedures).[1]

Atlas does not dispute the extensive testimony presented by Mr. Katz that pilot seniority integration proceedings invariably take months, even years, to resolve. Arbitration proceedings have taken months following a hearing to even produce a final integrated seniority list. The Atlas System Board remedy precludes the pilot groups' right to arbitration of their seniority dispute since there is no conceivable way arbitration could be conducted in the timeframe permitted by the remedy. Contrary to Atlas' assertions, Section 13(a) is a default timeline and Section 13(b) only permits

---

[1] Atlas' counsel represented American Airlines in both *Addington* and *Bakos.* The court in *Bakos* noted that American negotiated a Section 13(b) agreement with the pilot unions to govern the seniority integration process. *Bakos,* 266 F. Supp.3d at 739. It also noted the three pilot groups' single bargaining representative fulfilled its duty of fair representation by designating separate pilot committees to represent each group. *Id.* at 739, 750 ("The integrated seniority list at issue was developed by a neutral arbitration panel before which Plaintiffs had independent representation by a dedicated merger committee.") Atlas' unsubstantiated assertion that separate committees representing the pilot groups in the seniority integration process, rather than the bargaining representative, is not an established practice for pilot seniority list integration proceedings is simply wrong and contrary to its own counsel's experience. *See, e.g.,* Katz Declaration ¶ 4 (discussing *Northeast Master Executive Council v. Civil Aeronautics Board,* 506 F.2d 97, 103 (D.C. Cir. 1974)).

2

all parties, including the air carriers, to agree on an alternative timeline. Atlas concedes the System Board remedy overrides the pilots' rights under Section 13 when it asserts that alternative agreed procedures under Section 13(b) can only be used to deny pilots access to arbitration under Section 13(a). Defendant's Opposition at 13.

Atlas' assertion that the Union could submit a faulty and erroneous integrated list to satisfy the 45-day period illustrates the manifest injustice to Atlas pilots created by enforcement of the System Board remedy. They are denied procedural rights and may have their seniority rights mishandled in order to satisfy the System Board's manufactured timeline. And, as noted below, Section V *infra,* the Court has no jurisdiction to interpret the contract and System Board remedy to conclude that a "preliminary" integrated seniority list satisfies Section 1.F.2.

These facts also illustrate the manifest injustice to the Union created by the System Board's denial of the pilots' rights under McCaskill-Bond. The Union is put in the position of avoiding potential contempt under an enforcement order that works against the pilots' right to a fair and equitable seniority integration process. The suggestion that the Union could resort to quickly creating a draft, "shortcut" integrated list that could be wrong—that is, wrongly reflect the seniority interests of the pilots—shows how the System Board's remedy prejudices the Union's representational duty to the pilots.

*B. The Judgment Denied Procedural Rights to Plaintiffs by Improperly Resolving Disputed Facts Under Rule 12(b)(6) and Failing to Convert the Motion to One Under Rule 56(c) with Notice to Plaintiffs as Required by Fed. R. Civ. P. 12(d).*

The Court's January 28, 2020 order also works a procedural injustice to the Union and pilots in this action by resolving disputed facts concerning the existence of an internal Union seniority policy applicable to the Atlas-Southern transaction. The Union's opposition to Atlas' motion for summary judgment demonstrates the existence of genuine disputes of material fact on that issue, which require further development of the evidentiary record. A court may not resolve factual disputes under a Rule 12(b)(6) motion. *Caires v. FDIC*, 298 F. Supp. 3d 79, 83 (D.D.C. 2018)(contrasting court's authority under Rule 12(b)(1) to resolve disputed facts concerning its jurisdiction with the Rule 12(b)(6) standard that "the factual allegations presented in [the complaint] must be presumed true and should be liberally construed in the plaintiff's favor… a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely"). Paragraphs 37-42 of Plaintiffs' complaint were entitled to this presumption and liberal construction. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)(Rule 8(a)(2) requires only a "a short and plain statement of the claim showing that the pleader is entitled to relief; it encourages brevity while giving defendant fair notice of the claim"). Paragraphs 38-39 alleged facts establishing the dispute was subject to McCaskill-Bond due to the absence of an internal union policy covering the Atlas-Southern transaction.

The Court improperly considered matters outside the pleadings without converting Defendant's Rule 12(b)(6) motion to one under Rule 56(c) and giving

Plaintiffs their right to present evidentiary material, as required under Fed. R. Civ. P. 12(d). *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011)("District courts may refer to materials outside the pleadings in resolving a 12(b)(6) motion. But when they do, they must also convert the motion to dismiss into one for summary judgment. In converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions.")(internal citations omitted). The Court's reliance on *Sladek v. Northwest Airlines, Inc.*, 2001 WL 1640054, at *2 (D. Minn. Sept. 21, 2001), and *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), to deny Plaintiffs these procedural rights was erroneous since both predate Rule 12(d).[2]

This denial of the Union's right to develop a sufficient evidentiary record on disputed facts was also created by permitting Atlas to improperly file its Rule 13(a) mandatory counterclaim to enforce the System Board Award as a separate action and then seek summary judgment under Rule 56(c) on its claim even as it moved to dismiss the Union's complaint in this action under Rule 12(b)(6). *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002)(affirming dismissal of action under Rule 13(a)); Fed R. Civ. P. 13, n. 7 ("If the action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred."). This created a splitting of

---

[2] Atlas ignores Rule 12(d) in arguing the Plaintiffs could have presented the evidence submitted in opposition to Atlas' motion for summary judgment in their opposition to Atlas' Rule 12(b)(6) motion. Atlas Response, pp. 16-17. Plaintiffs objected to consideration of matters outside the pleadings in deciding that motion and did not submit evidence in opposing the motion.

5

claims and misalignment of purportedly separate actions, which are in fact one action under Rule 13(a).

## II. Plaintiffs' Rule 59(e) Motion Suspends the Finality of the January 28, 2020 Judgment in this Court.

The Court's January 28, 2020 order dismissing this action is suspended in the district court upon Plaintiffs' timely filing of their Rule 59(e) motion. *Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 205 (D.D.C. 2007). *See also Agrocomplect, AD v. Republic of Iraq*, 262 F.R.D. 18, 21 (D.D.C. 2009). That order is therefore not a final judgment for purposes of appeal or preclusion until Plaintiffs' Rule 59(e) motion is resolved. *Nattah v. Bush,* 770 F. Supp. 2d 193, 200 (D.D.C. 2009)(a prior valid and final judgment is a necessary element of collateral estoppel).[3]

## III. The Court Clearly Erred in Resolving the Parties' Dispute of Fact Over the Existence of an Internal Union Seniority Integration Policy Applicable to the Atlas-Southern Transaction.

As Plaintiffs presented in their Rule 59(e) motion and opposition to Atlas-Southern's motion for summary judgment, the testimony of former Local 1224 President Dan Wells in the Atlas arbitration was conclusive that no internal IBT seniority integration policy applies to the Atlas-Southern transaction. Defendants' Opposition to Motion for Summary Judgment (ECF 21), pp. 5-10. That testimony confirms the obvious error in the Court's January 28, 2020 holding that McCaskill-Bond does not apply to the Atlas-Southern transaction.

---

[3]  Atlas relies upon its reply brief in support of its summary judgment motion in 19-cv-3223 to oppose Plaintiffs' Rule 59(e) motion. Atlas Opposition at 11. While Plaintiffs object to the Court ruling on Atlas-Southern's motion for clarification of the briefing schedule in 19-cv-3223 without permitting them to respond, Atlas' reliance on its summary judgment briefing to oppose Plaintiffs' Rule 59(e) motion brings that pleading within the scope of this reply.

6

But the parties at least have a dispute of material fact concerning that determinative issue for application of the McCaskill-Bond Amendment to this dispute. Atlas argues inferences drawn from Wells' testimony. It parses statements he made concerning other IBT seniority integration situations and whether "shortcuts" existed for creating an integrated seniority list. Defendants' Opposition at 11-12. Wells testified he had no personal knowledge of these other instances and his testimony therefore lacked foundation. Defendants' Opposition to Motion for Summary Judgment (ECF 21), p. 6. The parties' factual dispute concerning the existence of an IBT seniority integration policy covering the Atlas-Southern transaction precludes the Court's conclusion in its January 28, 2020 order that Section 117(a)(1) of McCaskill-Bond removed the transaction from the requirements of McCaskill-Bond.[4]

Indeed, the Court is required to deny Atlas' motion for summary judgment in 19-cv-3223 because Rule 56(c) mandates that all reasonable inferences from the evidence must be drawn in the nonmovant's favor and a court may not resolve factual disputes. *See, e.g., Rodway v. Dept. of Agriculture,* 428 F.2d 722, 727 (D.C. Cir. 1973)("a party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the evidence. The court may not weigh or resolve issues of fact."). That the Court may not resolve this dispute of fact under Rule 56(c) shows its clear error in resolving that crucial dispute of fact on Defendant's Rule 12(b)(6) motion.

---

[4] This conclusion is separately erroneous concerning the Southern pilot contract since it states that Sections 3 and 13 apply to all transactions involving Southern and has no separate provision for an internal union seniority integration policy.

7

Finally, the Court plainly misread McCaskill-Bond when it concluded, "As the Court has explained, by its terms, the McCaskill-Bond Amendment does not give pilots the right to utilize such procedures where, as here, the same union represents both pilot groups." January 28, 2020 Opinion at 19.[5] That is not what Section 117(a)(1) says. Rather, it clearly reads: "if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, *if any*, will not be affected by and will supersede the requirements of this section." 49 U.S.C. § 42112, Note 117(a)(1)(emphasis added). A plain construction of the language shows that the subject of the provision's exception is a "collective bargaining agent's internal policies regarding integration." The reference to a single collective bargaining agent is a clause limiting application of the exception to that instance. It is the internal policy regarding seniority integration that supersedes McCaskill-Bond's Sections 3 and 13 requirements, not the mere fact of the covered employees being represented by the same collective bargaining agent.[6] Since the statute qualifies the provision's reference

---

[5] Plaintiffs describe Section 117(a)(1) as a savings clause for union internal seniority policies rather than an exception to the statute in order to properly characterize the limited effect of the provision, which only allows an internal policy to supersede McCaskill-Bond's "requirements," that is, the Sections 3 and 13 procedures. Section 117(a)(1) is not an exception to the statute that removes transactions involving a single representative with an internal seniority policy from McCaskill-Bond's coverage.

[6] Atlas' assertion that Section 117(a)(1) allows the Union to create an after-the-fact, one-off seniority policy covering this transaction or apply a policy retroactively to a past transaction or apply an "informal policy" that deprives the pilots of Sections 3 and 13 is unsupported by any authority. Atlas Opposition at 12. None of the courts that have interpreted the statute have said that 117(a)(1) may be so interpreted. Nor has any commentator interpreted that provision in that manner

8

to internal policies by stating "if any", it plainly contemplates that a union may not have a policy to displace the Sections 3 and 13 procedures.

IV. **Flight Options v. Teamsters Local 1108 Held That the Union's Contract Gave the Pilots the Protections of Sections 3 and 13, So McCaskill-Bond Did Not Give Flight Options Standing to Participate in the Seniority Process; That Decision Gives No Support to the Court's Holding.**

*Flight Options, LLC v. Teamsters Local 1108,* 863 F.3d 529 (6th Cir. 2015), does not support the assertion that employees lose their rights under McCaskill-Bond if the same union represents them or if that union applies an "informal policy" covering seniority integration. January 28, 2020 Opinion at 19. Rather, the Sixth Circuit noted that the collective bargaining agreement in question provided for application of a Teamsters Merger Policy where the union represented both covered employee groups and Sections 3 and 13 where it did not. 863 F.3d at 534-35. It also noted the air carrier alleged the IBT had no internal policy covering the transaction. *Id.* at 537. In evaluating Flight Options' argument that McCaskill-Bond gave it a right to participate in the seniority integration process, the court of appeals noted that both the exception under McCaskill-Bond for internal union policies and its 117(a)(2) exception where the pre-transaction collective bargaining agreements include labor

---

even when extensively discussing internal union seniority policies. *See, e.g.,* Tom Jerman and Aparna Joshi, Seniority Integration and The McCaskill-Bond Statute, Jones Day (2012)(discussing at length Section 117(a)(1) and internal union policy exception) https://www.mondaq.com/unitedstates/Transport/164186/Seniority-Integration-And-The-Mccaskill-Bond-Statute And that argument conflicts with 117(a)(1)'s "if any" qualifier acknowledging that a union may or may not have a policy to supersede Sections 3 and 13 when a covered transaction occurs. The statute's requirements are determined at the time of a transaction. *See, e.g., Comm. of Concerned Midwest Flight Attendants v. Teamsters,* 662 F.3d 954, 957-58 (7th Cir. 2011)(finding that Midwest Airlines was a covered air carrier and its flight attendants covered employees "when the transaction closed").

protections equivalent to Sections 3 and 13 applied to the transaction through Section 1.5.C of the IBT contract. *Id.* at 540. It held that the union's internal policies superseded McCaskill-Bond's requirements and that the 2010 IBT contract controlled the dispute because its seniority procedures conformed to Sections 3 and 13. *Id.* "Nothing in the CBA denies the protections afforded by sections 3 and 13 of Allegheny-Mohawk…the protections are afforded for the benefit of the covered employees." *Id.* The Sixth Circuit therefore held "because the 2010 CBA commits the integration process to the Union *and continues to allow employees the protections of sections 3 and 13 of Allegheny Mohawk,* the district court properly concluded that the Carriers do not have a distinct McCaskill-Bond obligation." *Id.* at 540-41 (emphasis added). Its ruling that McCaskill-Bond's procedures did not apply was based on the language of the IBT contract, not the terms of any internal union policy. The court of appeals ultimately held, "we **AFFIRM** the district court's determination that the CBA pilot-integration provision is not in conflict with McCaskill-Bond." *Id.* at 545 (emphasis in original).

The court of appeals' discussion whether IBT had an "informal policy" covering the seniority integration concerned the union's counterclaim under the RLA that Flight Options' refusal to accept the integrated seniority list was a major dispute. *Id.* at 541-544. It analyzed if IBT had a policy within the meaning of Section 1.5(C)(1) of the contract. It concluded that the plain meaning of the contract was simply a merger policy the Teamsters claimed to apply, noting the contract did not define the term. *Id.* at 543 ("it is the *Teamsters'* merger policy")(emphasis in original). The Sixth Circuit

10

affirmed the district court's finding that the contract did not arguably justify Flight Options' argument that IBT had no merger policy within the meaning of Section 1.5(C).[7]

The *Flight Options* decision addressed the air carrier's claim to independent standing under McCaskill-Bond to participate in the seniority integration process. It did not evaluate whether the covered employees had enforceable rights under McCaskill-Bond. In assessing Flight Options' claim, the court of appeals did not review the actual procedures applied by the union in integrating the pilot groups' seniority lists. Rather, it analyzed the contract's seniority integration provisions and held that McCaskill-Bond did not create a separate obligation on Flight Options because the contractual procedures "continue to allow employees the protections of sections 3 and 13 of Allegheny-Mohawk."[8] The Atlas System Board remedy, by contrast, plainly fails the Sixth Circuit's test that McCaskill-Bond is superseded only if the contractual seniority procedures in question afford employees the Sections 3 and 13 protections.

---

[7] The *Flight Options* decision also shows that separate pilot committees are an essential trait of an internal seniority policy covering pilot seniority integration. 863 F.3d at 543 ("In any case, appointing autonomous merger committees pursuant to Union rules, and entrusting the creation of the ISL to those committees, effected a merger policy.")

[8] Contrary to Atlas' assertions that the Wells' testimony established the Teamsters Union has used an informal date-of-hire methodology to integrate pilot seniority lists, Atlas Opposition at 11-12, IBT did not use date of hire to integrate the seniority lists of the Flight Options and FlexJet pilots because that would have produced an unfair result. 863 F.3d at 535.

11

## V. Atlas Does Not Dispute the Union's Evidence Showing the Atlas System Board Remedy Precludes a Fair Seniority Integration Process; Instead It Improperly Asks the Court to Interpret the Contract and the Award.

As noted above, Atlas does not dispute Plaintiffs' evidence presented through Mr. Katz that the System Board remedy precludes a fair seniority integration process. Instead, it resorts to attacking Plaintiffs and complaining they should have started the seniority integration process while the parties' litigation was ongoing. Atlas' "banging the table" attacks on Plaintiffs amply illustrate the absence of law or fact in support of its arguments. It ignores that it has always conceded the Union had an arguably justified position under the contract that Section 1.F.2 had not been triggered. Atlas never asserted the Union's position was frivolous and so the parties' dispute was "major" under the Railway Labor Act. Its position throughout litigation was that the parties had a "minor" dispute over their conflicting, plausible interpretations of the contract. *See Consolidated Rail Corp v. Railway Labor Executives' Assn.,* 491 U.S. 299, 305 (1989)(holding that a dispute is "minor" if the complained-of action is "arguably justified" by a collective bargaining agreement, while "major disputes" occur when such justification is "frivolous or obviously insubstantial").

But apparently now Atlas claims the Union was obligated to abandon its arguably justified contract position and moot its claims under the RLA by conducting a seniority integration process prior to resolution of their dispute. No party is obligated to moot its claims to satisfy the desires of an opposing party. And no court has ever held that a union violates its Railway Labor Act duty to make and maintain

agreements by acting on its contractual position pending resolution of the minor dispute before an adjustment board. That contention conflicts with the well-established principle under the RLA that the statute's "status quo" requirement does not apply to minor disputes and so a party does not violate its RLA duties by acting in compliance with its contractual interpretation. *IBT/HERE Employees Representatives' Council v. Gate Gourmet,* 377 F. Supp. 2d 54, 59 (D.D.C. 2005), quoting *Air Line Pilots Ass'n, Intern. v. Eastern Air Lines, Inc.*, 869 F.2d 1518, 1519-20, 276 U.S. App. D.C. 199 (D.C. Cir. 1989)("The parties are 'free to act under [their] interpretation of the collective bargaining agreement until the arbitrator rules otherwise[.]'"). The Union has not violated any RLA or contractual duty by acting under its contractual interpretation that the seniority integration and collective bargaining provisions of Section 1.F.2 were not triggered by the Atlas-Southern transaction.

Since it cannot justify how a fair and equitable seniority integration process can be conducted under the System Board's remedy, Atlas resorts to reliance on the Court's observation that the Union could submit a draft integrated list within the 45 day-period and later correct that draft list over the course of months while joint collective bargaining occurs. Memorandum Opinion at 20; Atlas Opposition at 14-15. This argument impermissibly asks the Court to interpret the System Board Award to establish the requirements for an integrated seniority list. What it means for the Union to present an integrated seniority list "that complies with the provisions of this paragraph F.2" is a minor dispute subject to the exclusive jurisdiction of the Atlas

13

System Board. *Conrail* , 491 U.S. at 303-304; *Air Line Pilots Ass'n v. Federal Express,* 139 F.Supp 3d. 320, 327 (D.D.C. 2015). The Court may not interpret the contract or the Award to hold that a stop-gap integrated list can be submitted, even if it is erroneous, to satisfy the Award's requirements. *Federal Express,* 139 F. Supp.3d at 327 ("If an arbitral award raises bona fide interpretation questions in the wake of post arbitration conduct, those inquiries must be satisfied by the appropriate adjustment board, not by a district court."). This restriction on the Court's jurisdiction also prohibits it from modifying the Award's 45-day time period or interpreting Section 1.F.2 to establish when the nine-month bargaining period commences.

## CONCLUSION

Plaintiffs respectfully request that their Rule 59(e) motion be granted.

Dated: February 21, 2020.	Respectfully submitted,

By: /s/ William R. Wilder
William R. Wilder, D.C. Bar #450083
BAPTISTE & WILDER, P.C.
1150 Connecticut Avenue, NW, Suite 315
Washington, DC 20036
Counsel for IBT Local 2750
(202) 223-0723/(202) 223-9677
wwilder@bapwild.com

Counsel for Teamsters Local Union 2750

Nicolas M. Manicone, D.C. Bar #461172
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, NW
Washington DC 20001
(202) 624-6948/(202) 624-6884
nmanicone@teamster.org

Counsel for International Brotherhood of
Teamsters, Airline Division

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on counsel for Defendant via the Court's Electronic Case Filing System on February 21, 2020.

/s/William R. Wilder
William R. Wilder